1  **COHELAN KHOURY & SINGER**
Michael D. Singer (SBN 115301)
2  Diana M. Khoury (SBN 128643)
Jeff Geraci (SBN 151519)
3  605 C Street, Suite 200
San Diego, California 92101
4  Phone: (619) 595-3001 / Fax: (619) 595-3000

5  **LAW OFFICES OF OLIVIA SANDERS**
Olivia Sanders (SBN 208266)
6  3415 South Sepulveda Boulevard, Suite 660
Los Angeles, CA 90034
7  Phone: (310) 641-9001 / Fax: (310) 641-9007

8  **LAW OFFICE OF CATHERINE STARR**
Catherine Starr (SBN 183382)
9  5770 East Appaloosa Avenue
Clovis, CA  93619
10  Phone: (310) 972-9291

11  Attorneys for Plaintiffs and the Putative Class

12  *[Additional Class Counsel, next page]*

13              **UNITED STATES DISTRICT COURT**

14          **FOR THE EASTERN DISTRICT OF CALIFORNIA**

15  JEANNETTE COOKS, an individual; and      ) CASE NO.  2:16-CV-01160-KJM-AC
ALWENA FRAZIER, an individual;  for        ) CASE NO.  2:16-CV-02113-KJM-AC
16  themselves and on behalf of all others    ) *[Consolidated on August 8, 2018]*
similarly situated                           )
17                                             )
                   Plaintiffs,                 ) **CLASS ACTION**
18                                             )
              v.                               )
19                                             ) **DECLARATION OF MICHAEL D.**
                                               ) **SINGER IN SUPPORT OF MOTION FOR**
20  TNG GP, a Delaware General Partnership;   ) **ORDER GRANTING PRELIMINARY**
THE NEWS GROUP, INC., a Delaware            ) **APPROVAL OF CLASS ACTION**
Corporation; SELECT MEDIA SERVICES,         ) **SETTLEMENT, APPROVAL OF CLASS**
21  L.L.C., a Delaware Limited Liability       ) **NOTICE, AND SETTING OF FINAL**
Company, and, DOES 1 through 10,            ) **APPROVAL HEARING**
22  inclusive,                                 )
                                               )
23                 Defendants                  ) Date:      December 20, 2019
                                               ) Time:      10:00 a.m.
24                                             ) Dept:      Courtroom 3, 15th Floor
                                               ) Judge:     Hon. Kimberly J. Mueller
25                                             )
                                               ) Action Filed:  April 14, 2016
26                                             ) Trial date:    None set
                                               )
27  _____ )

28

---

Decl. of Michael D. Singer ISO Motion for Order Granting Preliminary Approval
Case No. 2:16-CV-01160-KJM-AC

**GAINES & GAINES, APLC**
Daniel F. Gaines, (SBN 251488)
Alex P. Katofsky (SBN 202754)
Miriam L. Schimmel (SBN 185089)
27200 Agoura Road, Suite 101
Calabasas, CA 91301
Phone: (818) 703-8985 / Fax: (818)703-8984

Attorneys for Plaintiffs and the Putative Class

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

I, Michael D. Singer, declare as follows:

1.     I am Managing Partner with the law firm of Cohelan Khoury & Singer, counsel of record for Plaintiff. I have been an attorney on this case since its inception. The following facts are within my personal knowledge and if called to testify I could and would competently testify to them.

2.     I am a 1984 Hastings graduate, admitted to the California State Bar in 1984 and the Colorado State Bar in 2001. I have been admitted to practice before the following courts: U.S. Supreme Court; Ninth Circuit Court of Appeals; Southern, Central, Northern, and Eastern Districts of California; and all California State Courts.

3.     In 1981, Timothy D. Cohelan and Isam C. Khoury formed Cohelan & Khoury, a Partnership of Professional Law Corporations, and within a few years began to focus on class actions. I joined Cohelan & Khoury in 2000 and was named partner in 2003. In 2009, Cohelan & Khoury became Cohelan Khoury & Singer. Our firm represents plaintiffs in complex, class and representative action litigation, including wage and hour, labor and employment, antitrust, consumer protection, construction defect and other public interest class and representative actions.  Attached as Exhibit B is a true and correct copy of our firm's Resume.

4.     Cohelan Khoury & Singer has been certified by the State Bar of California to provide the Mandatory Continuing Legal Education activity entitled "Litigating California Class Actions" and has conducted MCLE certified seminars on this topic. Senior Partner, Timothy D. Cohelan, is the author of Cohelan on California Class Actions (1997-2019), part of Thomson Reuters Expert Series updated annually. I am a contributing author on the CEB publication California Wage and Hour Law: Compliance and Litigation (2010-2019, updated annually), in which I wrote the opening chapter overview on California Wage and Hour laws, including the public policy underpinnings for those laws, and the PAGA Claim chapter. I have served as a columnist for the California State Bar, Litigation Section on wage and hour litigation and contributed articles on wage and hour and class action issues through the years to numerous California publications. I typically lecture several times per year for continuing education courses on wage and hour and class action issues at events in San Diego, Orange County, Los Angeles, and San Francisco. For over twelve years, I served as wage and hour amicus co-chair and liaison for the California Employment Lawyers Association, drafting,

reviewing, and coordinating amicus filings on wage and hour issues in the California Supreme Court and Courts of Appeal. I have been engaged in the practice of labor and employment law since 2000, handling well over 200 wage and hour class actions and several individual labor cases, and has litigated several types of employment actions, including complex ERISA employee welfare benefit plan cases, as well as wage and hour class actions before Federal and State Courts in California. In 2014, I tried a wage and hour class action involving claims for illegally deducted wages and unreimbursed expenses in the matter of *Dilts v Penske Logistics LLC, Inc*. I successfully appealed the trial court ruling in *Dilts* finding state laws preempted by the FAAAA for truck drivers. I have participated in over 50 appellate cases and argued writs and appeals before several California District Courts of Appeal, arguing for plaintiffs on rehearing in *Brinker International Inc. v. Superior Court* before the Fourth District Court of Appeal, as well as federal appeals in the Second, Third, and Ninth Circuit Courts of Appeals. In addition, I have drafted numerous appellate briefs as the appellant, respondent, or amicus curiae in employment class and individual actions. As co-Class Counsel in *Brinker Restaurant Corp. v. Superior Court* [formerly reported at (2008)165 Cal.App.4th 25], I argued before the Fourth District Court of Appeal in May 2008 on transfer from the California Supreme Court, and co-authored the successful Petition for Review. My firm has successfully tried class cases, obtained appellate reversals of class certification denials *(Hicks v. Kaufman and Broad,* (2001) 89 Cal.App.4th 908), and certified multiple wage and hour class.

5.      As a part of our overall firm philosophy lawyers perform community service and pro bono work. Firm volunteer work includes service through the Legal Aid at Work, San Diego Volunteer Lawyer Program, the San Diego County Bar Foundation and Consumer Attorneys of San Diego. I have served on the Legal Aid at Work Board of Directors since 2011. Mr. Cohelan served as the Chair of the San Diego Volunteer Lawyers Program from 2015-2018, and currently sits on the Board as past Chair. He completed 24 years of volunteer judicial service as a Judge Pro Tem of the San Diego Superior Court. Since admission to the California Bar, Partner Diana M. Khoury has been a member of the San Diego County Bar Association, Consumer Attorneys of San Diego, Consumer Attorneys of California, and American Association for Justice serving on numerous committees through the years for these organizations. For six years from 2010 through 2015, Ms. Khoury served

Decl. of Michael D. Singer ISO Motion for Order Granting Preliminary Approval
Case No. 2:16-CV-01160-KJM-AC

on the Board of Directors for Consumer Attorneys of San Diego. Since 2013, Ms. Khoury has served on the Board of Directors for the San Diego County Bar Foundation, the 501(c)(3) charitable arm of the San Diego County Bar Association. Our firm's recent pro bono victories include a settlement prohibiting the City of San Diego from targeting homeless people for illegal lodging tickets under Penal Code Section 467(j). (*Spencer v. City of San Diego*, USDC Case No 04CV-2314 BEN (WMC).) The *Spencer* settlement had the effect of increasing the number of available shelter beds in the City of San Diego.

6.    Cohelan Khoury & Singer has been appointed certified Class Counsel in the following contested proceedings: *Aguilar v. Atlantic Richfield, et al.,* San Diego Superior Court Case No. 00700810; *Andino v. Kaiser Foundation Hospitals*, Alameda Superior Court Case No. RG11580548; *Arellano, et al. v. Container Connection of Southern California, Inc.*, Los Angeles Superior Court Case No. BC500675; *BANK OF AMERICA WAGE AND HOUR EMPLOYMENT PRACTICES LITIGATION*, United States District Court, District of Kansas MDL Case No. 2138 (FLSA Condition Certification); *Czuchaj v. Conair Corporation*, United States District Court, Southern District of California Case No. 13CV1901; *Dilts, et al. v. Penske Logistics, L.L.C., et al.,* United States District Court, Southern District of California Case No. 08CV0318; *Englert, et al. v. AT&T Wireless Services, Inc., et al.,* Circuit Court of the Second Circuit, State of Hawaii Case No. 02-1-0074; *Evans v. Washington Mutual Bank,* Orange County Superior Court Case No. 02CC15415; *Filion v. Ethan Allen Retail Inc.,* United States District Court, Southern District of California Case No. 05CV2340; *Gerard v. Les Schwab Tire Centers of California, Inc.,* Sacramento Superior Court Case No. 2007-30000003; *Grana, et al. v. PICO Enterprises, Inc. dba Phyle Inventory Control Specialist and PICS* L.A.S.C. Case No. BC472891; *Gutierrez v. Save Mart Supermarkets* San Mateo Superior Case No. CIV530955; *Wilcox v Albertsons,* San Diego Superior Court Case No. GIC833922; *Gonzalez, et al. v. Freedom Communications, Inc. d/b/a The Orange County Register,* Orange County Superior Court Case No. 03CC08756; *Graham, et al. v. Overland Solutions, Inc.,* United States District Court, Southern District of California Case No. 10CV0672 (FLSA Conditional Certification); *Hicks v. Kaufman and Broad Home Corp.,* Los Angeles Superior Court Case No. B198414; *Hohnbaum, et al. v. Brinker Restaurant Corporation, et al.,* San Diego Superior Court Case No. GIC834348; *KEMP, et*

*al. v. CSEA, et al.,* Circuit Court of the First Circuit, State of Hawaii Case No. 98-3815-08; *LIBERTY MUTUAL OVERTIME CASES*, Los Angeles Superior Court Case No. JCCP 4234; *Mitchell, et al. v. Acosta, Inc., dba Acosta Sales and Marketing Company,* United States District Court, Central District of California Case No.11CV07196 (FLSA Conditional Certification); *Santana v. Rady Children's Hospital-San Diego*, San Diego Superior Court Case No. 37-2014-00022411; *Schaffer v. Rady Children's Hospital-San Diego*, San Diego Superior Court Case No. 337-2015-00022978; *Schneider, et al. v. Catholic Healthcare West*, San Francisco Superior Court Case No. CGC-10-506243; *Salucci v. Amada Senior Care, Inc.*, Orange County Superior Court Case No. 37-2015-00778081; *Smith v. California Pizza Kitchen,* San Diego Superior Court Case No. 37-2008-00083992; STEROID HORMONE PRODUCT CASES, Los Angeles Superior Court Case No. JCCP 4363; *Stevenson Aibangbee v. Victoria Apartments, et al.,* Los Angeles County Superior Court Case No. BC299498; *Swift v. Liebert Corp.,* Orange County Superior Court Case No. 00CC04588; *Sylvia, et al. v. Wells Fargo Home Mortgage, Inc.,* Orange County Superior Co Case No. 03CC05747; *Vaquero v. Ashley Furniture Industries, Inc., et al.,* United States District Court, Central District of California Case No. 12CV8590; *Vaquero v. Stoneledge Furniture LLC*, Los Angeles Superior Court Case No. BC522676; *Vazquez v. Kraft Heinz Foods Company*, Unites States District Court, Southern District of California Case No. 16-CV-02749; *Watson v. Raytheon Company,* United States District Court, Southern District of California Case No. 1OCV0634; and *Weigele v. FedEx Ground Package System, Inc.,* United States District Court, Southern District of California Case No. 06CV1330, among others, as well as being appointed Class Counsel in connection with well over 1,750 class action settlements.

7.     As Class Counsel, Cohelan Khoury & Singer has actively commenced, prosecuted and concluded numerous state and federal class actions. Since 2016, Cohelan Khoury & Singer has played a central role in the resolution of the following class action cases which have received final court approval: (a) *Arellano, et al. v. Container Connection of Southern California, Inc.*, Los Angeles Superior Court, Case No. BC500675, Hon. Anne I. Jones; (b) *Castro v. Home Depot U.S.A., Inc.*, Los Angeles County Superior Court, Case No. BC577885, Hon. Elihu M. Berle; (c) *Czuchaj v. Conair Corporation*, United States District Court, Southern District of California, Case No. 13-CV-1901 BEN, Hon. Roger T. Benitez; (d) *Gardiner v. TSYS*, United States District Court, Central District of

California, Case No. 18-cv-00415, Hon. David O. Carter; (e) *Grana v. PICO Enterprises, Inc.*, Los Angeles County Superior Court, Case No. BC472891, Hon. Stephanie M. Bowick; (f) *Gutierrez v. Save Mart Supermarkets*, San Mateo County Superior Court, Case No. CIV530955, Hon. Marie S. Weiner; (g) *Hernandez v. Workforce Enterprises WFE, Inc.*, Los Angeles County Superior Court Case No. BC590913, Hon. Elihu M. Berle; (h) *Hicks v. Poway Academy of Hair Design, Inc.*, San Diego County Superior Court, Case No. 2014-00026517, Hon. Ronald L. Styn; (i) *Klein v. Loomis Armored US, LLC*, San Bernardino County Superior Court, Case No. CIVDS1704547, Hon. David Cohn; (j) *Laureano v. The Art of Shaving*, Los Angeles Superior Court, Case No. BC550093, Hon. Amy D. Hogue; (k) *Magdaleno v. Shelly Automotive, LLC*, Orange County Superior Court Case No. 2013-0043958, Hon. Kim. G. Dunning; (l) *McGrath, et al. v. Wyndham Resort Development Corporation, et al.*, United States District Court, Southern District of California, Case. No. 15-CV-1631 JM, Hon. Jeffrey T. Miller; (m) *Mena v. Wolfgang Puck Catering*, Los Angeles County Superior Court Case No. BC582743, Hon. John Shepard Wiley, Jr.; (n) *Morales v. The Los Angeles Country Club*, Los Angeles Superior Court, Case No. BC566493, Hon. William F. Highberger; (o) *Nijmeh v. Bon Appetit Management Company, Inc.*, Santa Clara County Superior Court, Case No. 16CV294127, Hon. Thomas E. Kuhnle; (p) *Plascencia v. Aramark Services, Inc.*, Santa Clara County Superior Court, Case No. 2015-1-CV-288310, Hon. Brian C. Walsh; (q) *Plimpton v. Gordon Trucking, Inc.*, San Bernardino County Superior Court, Case No. CIV-DS-1511918, Hon. Donald Alvarez; (r) *Raya v. Amazon*, United States District Court, Northern District of California, Case No. 15-CV-02005 MMC, Hon. Maxine M. Chesney; (s) *Rivas v. ESA Management*, United States District Court, Central District of California, Case No. 14-CV-5767, Hon. Dale S. Fischer; (t) *Rodriguez v Healthcare Partner Medical Group, Inc.*, Los Angeles Superior Court, Case No. BC541313, Hon. Kenneth Freeman; (u) *Ryan v. Dignity Health*, Sacramento County Superior Court Case No. 2013-00147371, Honorable Alan G. Perkins; (v) *Santana v. Rady Children's Hospital-San Diego*, San Diego Superior Court Case No. 37-2014-00022411, Hon. Joel R. Wohlfeil; (w) *Schaffer v. Rady Children's Hospital-San Diego*, San Diego Superior Court Case No. 337-2015-00022978; Hon. Joel R. Wohlfeil; (x) *Schneider v. Catholic Healthcare West*, San Francisco Superior Court, Case No. CGC-10-506243, Hon. Angela Bradstreet; (y) *Schwartz v Bank of the West*, San Francisco Superior

Court, Case No. CGC-14-538955, Hon. Harold E. Kahn; (z) *Syed v. M.I. Swaco*, United States District Court, Eastern District of California, Case No. 12-CV-01718 DAD, Hon. Dale A. Drozd; (aa) *Vaquero, et al. v. Stoneledge Furniture, LLC*, Los Angeles Superior Court Case No. BC522676, Hon. Elihu M. Berle; (bb) *Walsh v. Cedars-Sinai Medical Center*, Los Angeles County Superior Court Case No. BC487290, Hon. William F. Highberger; among others.

8.     We are experienced and qualified to evaluate Class claims and viability of the defenses. That experience and those qualifications allowed our firm to assist in achieving an efficient resolution of the claims in this matter.

## **LITIGATION, INVESTIGATION, AND MEDIATION**

9.     Plaintiffs' counsel conducted a lengthy and thorough investigation into the merits of Plaintiffs' claims and Defendants' asserted defenses before entering the Settlement Agreement. The Parties made initial and supplemental FRCP Rule 26 disclosures. During multiple rounds of discovery Defendant produced nearly 3,000 pages of documents, including Plaintiffs' personnel files, handbooks, training materials and videos, compensation and reimbursement policies, payroll records and wage statements, lists of supervisors, employees, and customers, and emails. Defendants provided electronic data for class members, including dates worked, customers serviced, and time spent at each location.

10.     Plaintiffs obtained class contact information and employees provided Plaintiffs' counsel with information about their work experiences. All documents and discovery responses were reviewed and summarized. The Parties met and conferred extensively, by phone and email, and further information and documents were obtained, and explanations provided for previously produced documents.

11.     In addition to written discovery and document production, on January 31, 2019, Plaintiffs' counsel took a day-long Rule 30(b)(6) deposition of Select Media Services, through Garrett Hamlin, Regional Vice President.

12.     Merchandising for TNG is flexible, part-time work. Class members do not generally have a set time to arrive at a store, rather a store is visited a certain number of times per week or

Decl. of Michael D. Singer ISO Motion for Order Granting Preliminary Approval
Case No. 2:16-CV-01160-KJM-AC

1  month based on a contract between TNG and the store. Merchandisers are not expected to remain in a

2  store for a particular amount of time.

3       13.    Based on TNG data analyzed by Plaintiffs' consultants, on average, Class members

4  earned $10.37 per hour, worked about three shifts of about four hours per shift each week and

5  serviced an average of 2.4 stores per shift during the Class Period.

6       14.    Class members drove their own cars from store-to-store to provide merchandising

7  services to TNG's retail clients. Merchandisers clocked-in by phone when arriving at a store, later an

8  "app," stocked and organized products, and when a store was complete, they clocked-out, clocked-in

9  to "Drive Time," drove to the next store, clocked-out of "Drive Time" and clocked-in, and repeated

10  the process.

11       15.    Class members were required to have access to a computer, internet, and email to

12  communicate with supervisors and a smart phone to take and upload photos. Class members needed

13  these tools to perform "administrative" work such as reviewing emails, printing paperwork,

14  completing surveys, training, and communicating with supervisors.

15       16.    In addition to hourly wages, TNG automatically paid a "flat rate" of one to two minutes

16  per assigned store each week for administrative work, in the event a Merchandiser performed those

17  duties when not clocked-in.

18       17.    In preparation for mediation Defendants provided over 2.5 million lines of class member

19  time and pay data from the start of the Class Period through February 14, 2017. Plaintiffs' consultants

20  formatted and analyzed multiple datasets, and prepared a damage model.

21       18.    On March 28, 2017, the Parties attended a full day mediation with Lisa Klerman, Esq.

22  an experienced neutral, but were unable to resolve the case. The Parties, through Ms. Klerman,

23  continued exchanging several demands and offers over the next seven months, but finally agreed it

24  was necessary to litigate further.

25       19.    On May 30, 2019, after serving written discovery, authenticating documents produced

26  for mediation, obtaining additional documents and data, and preparing a new damage model, the

27  Parties attended mediation with Louis M. Marlin, Esq. a well-regarded wage and hour mediator with

28

Decl. of Michael D. Singer ISO Motion for Order Granting Preliminary Approval
Case No. 2:16-CV-01160-KJM-AC

JAMS. The Parties did not reach agreement by days end, but Mr. Marlin continued working and on June 6, 2019, a mediator's proposal was accepted.

20.     The Parties then negotiated the detailed terms contained in the Settlement Agreement. Although an agreement in principle was reached in June, the Settlement Agreement was not fully completed until October. These negotiations were prolonged and intense and, at all times at arm's length. Attached as Exhibit A is the Joint Stipulation of Class Action and PAGA Settlement, ("Settlement Agreement").

## SETTLEMENT

21.     The Parties agreed, subject to Court approval, the Actions may be settled for the Maximum Settlement Amount of $3,750,000 ("MSA"), no part of which may revert to TNG under any circumstances. The MSA includes: (a) attorneys' fees up to $1,250,000 (one-third of the MSA) to compensate Plaintiffs' Counsel for work performed and all work remaining to be performed in documenting and administrating the Settlement and securing final Court approval; (b) Class Counsel's litigation expenses estimated at $56,000; (c) Class Representative Service Payments of $7,500 each to the three Plaintiffs in consideration of their initiation and prosecution of the Actions, representation of the Class, work performed, and risks undertaken for payment of costs in the event the case had not concluded successfully, benefits conferred on absent class members, and general releases of all claims; (d) administration fees to CPT estimated at $36,500; (e) employer payroll taxes estimated at $37,560; and, (f) payment to the California Labor and Workplace Development Agency of $37,500 (75% of $50,000) for PAGA civil penalties.

22.     Plaintiffs seek preliminary approval of a non-reversionary, wage and hour class action and Private Attorneys' General Act Settlement of $3,750,000 with Defendants TNG, GP, The News Group, Inc., and Select Media Services, L.L.C., (collectively "TNG") on behalf of the 4,347 current and former hourly non-exempt employees who worked for TNG as Merchandisers in California at any time from April 12, 2012 through October 3, 2019 ("Putative Class Members").

23.     After all Court-approved deductions from the MSA, the remaining Net Settlement Amount ("NSA") estimated at $2,309,940 will be distributed to Participating Class members based on the number of shifts each worked, divided by seven ("Compensable Workweeks") in relation to

the Class' total Compensable Workweeks. An average of $531 per Class member is available for distribution ($2,309,940/4,347 class members); an estimated average $16.18 per Compensable Workweek, ($2,309,940/142,766 Compensable Workweeks).

24. Class member's number of shifts is readily available from TNG's records, and the Administrator can apply the formula in a fair and transparent manner. This method allocates the funds based on amount of time worked and represents the fairest method of distribution and does not grant preferential treatment to any Class members.

25. Following Final Approval and the Effective Date of Settlement, each Class member not requesting exclusion will be mailed their share of the NSA, without the need to submit a claim form.

26. The Settlement is non-reversionary which assures the entire NSA will be distributed to Participating Class members. After 180 days, 50% of uncashed Settlement Payments will be sent to Legal Aid at Work, a California non-profit group providing legal counseling and representation to workers in California, www.legalaidatwork.org, and 50% will be sent to No Kid Hungry, a non-profit organization providing child hunger relief programs.

27. The Administrator, CPT Group, Inc. ("CPT"), will use the National Change of Address database to update addresses, and mail Notice of Class Action Settlement ("Notice"), Change of Address form, and pre-printed return envelope (collectively, "Notice Packet") to each Class member.

28. The proposed Notices advise the Class of their right to, and the manner and timing to: (1) participate in the Settlement without submitting a claim; (2) exclude themselves from the Settlement; (3) object to the Settlement; and, (4) dispute the information upon which their Individual Settlement Payment is based. The Notice also informs each Class member of the estimated amount of their individual payment, that the Administrator must have a current address to send the payment, the release of claims to be given, the date set for a Final Approval hearing, and how to obtain additional information, including through the Administrator's toll-free number and website.

29. The Claims Released by Participating Class Members are defined as all causes of action and factual or legal theories that were alleged in the operative Class and PAGA Complaints or reasonably could have been alleged based on the facts and legal theories contained in the operative complaint, including all of the following claims for relief: (a) failure to pay all regular wages,

minimum wages and overtime wages due; (b) failure to provide proper meal periods, and to properly provide premium pay in lieu thereof; (c)  failure to provide proper rest periods, and to properly provide premium pay in lieu thereof; (d) failure to reimburse business expenses; (e) failure to provide complete, accurate or properly formatted wage statements; (f) waiting time penalties that could have been premised on the claims, causes of action or legal theories of relief described above or any of the claims, causes of action or legal theories of relief pleaded in the operative complaint; (g) unfair business practices that could have been premised on the claims, causes of action or legal theories of relief described above or any of the claims, causes of action or legal theories of relief pleaded in the operative complaint; (h) all claims under the California Labor Code Private Attorneys General Act of 2004 that could have been premised on the claims, causes of action or legal theories described above or any of the claims, causes of action or legal theories of relief pleaded in the operative complaint; (i) any other claims or penalties under the wage and hour laws pleaded in the Action; and (j) all damages, penalties, interest and other amounts recoverable under said claims, causes of action or legal theories of relief.

30.     In addition to the Released Claims, Plaintiffs Cooks, Frazier, and Brown will give general releases of all claims.

31.     Plaintiffs recognized and considered the inherent risks and uncertainty of litigation, including: (i) denial of  certification; (ii) if certified, decertification may be granted; (iii) a grant of summary judgment or summary adjudication; (iv) the need for a unanimous jury; (v) the possibility of an unfavorable, or less favorable, result at trial; (vi) the possibility post-trial motions may result in an unfavorable, or less favorable, result than trial; and, (vii) the possibility of an unfavorable, or less favorable result on appeal, and the certainty that process would be lengthy.

32.     Continued litigation would take substantial time, create a significant risk of no recovery and possibly confer no benefit upon the Class. By contrast, the proposed Settlement will yield a prompt, certain, and substantial Class recovery, without additional time or judicial resources.

33.     Class Counsel Cohelan, Khoury & Singer and Gaines & Gaines have significant wage and hour class action experience and have obtained certification and settlement approval in many cases.

34.    Defendants' counsel, Anthony DeCristoforo and Michael Nader of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and Jerome L. Rubin, Esq. of Williams Kastner, are very experienced in wage and hour law and class action litigation.

35.    Class Counsel believe the proposed Settlement is in the Class' best interest based on detailed knowledge of the factual and legal issues present. Counsel considered, among other risks, an adverse class certification, decertification, or summary judgment ruling, loss or lesser outcome at trial, post-trial, and appeal, and other perils of litigation that affect the value of all claims, in reaching the proposed Settlement.

36.    Plaintiffs analyzed over 2.5 million lines of time and pay data covering every employee for five years of the class period and, with additional TNG data extrapolated damages through the second mediation, May 30, 2019. TNG confirmed there are 999,358 total shifts in the Class Period. Plaintiffs consultants assumed 949,378 shifts for their damage model.

37.    Plaintiffs estimate the value of the expense reimbursement at $2,331,502 for cell phone and internet usage ($30 per month assumed for $2,510,926 less $179,423 actually reimbursed).

38.    Plaintiffs estimate the Class was due $1,128,194 for mileage (average IRS rate of .55 cents per mile, and assumed average of 10.67 miles driven between stores, for $4,605,665 less $3,477,471 actually reimbursed by TNG).

39.    Mileage reimbursement is only available when traveling <u>between</u> stores; travel from home to the first store and to home from the last store is a non-compensable commute. With an average of 2.4 stores visited per shift, compensable miles were limited. TNG challenged Plaintiffs' assumptions, retained a well-known consultant who analyzed mileage and driving time, and advised the consultant was prepared to offer testimony Plaintiffs' claims were overstated and any potential exposure was nominal.

40.    While Plaintiffs believed they had strong arguments, TNG's position was bolstered by its reimbursement of some expenses, including over 75% of total mileage. Plaintiff estimates the probability of prevailing at trial on the total expense reimbursement claim of $3,477,771, at 60%, for realistic maximum exposure for settlement purposes of approximately $2,086,483 based on these risks.

- 11 -

41.     Plaintiffs estimate Class members were owed $3,588,167, for administrative work in addition to amounts TNG paid automatically, by assuming 10 minutes of off-the-clock work was performed for every store visit, including such things as sending and receiving emails, printing materials, checking schedules, supervisor calls, completing surveys, and uploading photos. TNG presented evidence, including through its corporate witness, not all administrative tasks were required, or performed for each store visit, and, perhaps more significantly, a number of tasks were intended to be, and were performed, while clocked-in.

42.     Plaintiffs estimate Class members were owed $605,876 for time spent driving between stores when not clocked-in to "Drive Time." This was based on shifts visiting more than one store, with no "Drive Time" shown, and assumed 16 unpaid minutes, based on the median amount of Drive-Time shown in the records.

43.     Plaintiffs estimate Class members were owed $63,289 in overtime wages based on the addition of the assumed off-the-clock hours to the very few overtime qualifying shifts.

44.     Plaintiffs estimated damages of $405,980 for "gaps" of 10 minutes or less between clocking out of a store and into "Drive Time," because employees would, for example, gather their belongings, walk from a store, through a parking lot, and should be considered under TNG's control. Merchandisers sometimes serviced two separate accounts in the same store, for example, one for books and one for snacks, and would clock-out of one and in to the other. Plaintiffs estimated damages of $87,120 based on gaps of 10 minutes or less between clocking out of one and into another in the same store, assuming again Merchandisers remained under TNG's control. TNG credibly argued certification was unlikely as Merchandisers were free to, and did, perform personal errands while clocked-out.

45.     The theories based on "gap time" were ultimately completely discounted. Plaintiff estimates the probability of prevailing on the remaining $4,257,332 in off-the-clock claims at 50%, for a realistic maximum exposure for settlement purposes of $2,128,666.

46.     TNG's rest period policy states, "Non-exempt employees are permitted a 10-minute rest break for each four hours of work." This does not strictly comply with California law, and because Merchandisers rarely spend four hours in a store, Plaintiffs argued the policy leads Merchandiser's to

- 12 -

believe "rest breaks" are the time after clocking-out of a store and before clocking into "Drive Time," or that "breaks" are when they walk from the store to their cars, use the restroom, or drive between stores. Based on this, Plaintiffs assumed a 100% violation rate for every shift over 3.5 hours, and estimated damages of $5,432,837.

47.     Given the aggressive violation rate assumption, and the difficulty in certifying and proving this claim, Plaintiff estimated the probability of prevailing at trial at 40%, for a realistic maximum exposure for settlement purposes of approximately $2,173,135 based on these risks.

48.     TNG's meal period policy states non-exempt employees are "encouraged" to take a 30-minute meal break after "at least five consecutive hours," and that California requires a mandatory meal break of "30 minutes for six hour workday." This does not strictly comply with California law, and because Merchandisers almost never work "five consecutive hours" in one store, but clock in and out of stores, or Drive Time, this policy does not make clear when or how Merchandisers become eligible for meal breaks. Because these part-time workers only occasionally worked qualifying shifts TNG's time keeping system did not show meal periods, arguably a violation in shifts over five hours. The time records do show a number of gaps of 30 minutes or longer between stores which would qualify as meal periods.

49.     Based on records showing periods of time which may qualify as meal periods, Plaintiffs assumed a 25% violation rate in shifts over five hours for estimated damages of $821,779, after TNG's credit for 1,718 meal period premiums paid.

50.     TNG contended, to the extent some time records could be construed as violations, Merchandisers were not discouraged from compliant meal periods, but chose to take them between stores or skip them. Plaintiff estimated the probability of prevailing at trial at 40%, for a realistic maximum exposure for settlement purposes of approximately $328,712.

51.     Plaintiffs estimate penalties of $4,192,150 (83,843 pay periods x $50). TNG correctly argued if Plaintiffs' other claims were not certified, the derivative claims could not be. TNG also argued its conduct could not be found "knowing and intentional," given that any inaccuracies were the result of other alleged, but disputed violations. Plaintiff estimated the probability of prevailing at trial at 50%, for a realistic maximum exposure for settlement of approximately $2,096,075.

52.     California Labor Code 203 penalty was estimated to be $3,571,951 (2,842 former employees x 30 days x 4.04 hours per day x $10.37). As with the wage statement claim, because of its derivative nature and the potential TNG may establish a good faith defense, Plaintiff estimated the probability of prevailing at trial at 50%, for a realistic maximum exposure for settlement of approximately $1,785,976.

53.     PAGA penalties are estimated at a maximum of $31,551,250 for four underlying violations: Sec. 558 -$3,892,000; Sec. 2802-$7,780,400, Sec. 226.3 - $19,736,750; Sec. 203- $142,100. This estimate recognizes unpaid wages cannot be recovered as a PAGA penalty. Plaintiffs discounted the value of the PAGA penalties for settlement purposes by 90% to $3,155,125.

54.     Class Counsel will file a motion for reimbursement of litigation expenses of up to $56,000 and an award of fees not to exceed $1,250,000 (33.33% of MSA). The motion will detail hours expended and litigation expenses advanced.

55.     In light of all the information provided, the proposed Settlement reflects an excellent recovery for the Class and is well within the "ballpark" of reasonableness and should be granted preliminary approval.

56.     On the same date the Motion for Preliminary Approval is filed with the Court, it will be served upon Defendant and provided to the Labor and Workforce Development Agency ("LWDA") electronically through the LWDA's website, https://www.dir.ca.gov/Private-Attorneys-General-Act/Private-Attorneys-General-Act.html, using the appropriate intake form.

I declare under the penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct and that this declaration is executed on October 28, 2019, in San Diego, California.

_____
Michael D. Singer

Decl. of Michael D. Singer ISO Motion for Order Granting Preliminary Approval
Case No. 2:16-CV-01160-KJM-AC

# EXHIBIT A

ANTHONY J. DECRISTOFORO, SBN 166171
  anthony.decristoforo@ogletree.com
MICHAEL J. NADER, SBN 200425
  michael.nader@ogletree.com
**OGLETREE, DEAKINS, NASH,**
**SMOAK & STEWART, P.C.**
500 Capitol Mall, Suite 2500
Sacramento, CA 95814
Tel: (916) 840-3150 / Fax: (916) 840-3159

JEROME L. RUBIN, Admitted Pro Hac Vice
  jrubin@williamskastner.com
**WILLIAMS KASTNER**
601 Union Street, Suite 4100
Seattle, WA 98101
Telephone: 206-628-6600 / Facsimile: 206-628-6611

*Attorneys for* Defendants

 [*Additional Counsel listed on the following page*]

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEANNETTE COOKS, an individual; ALWENA FRAZIER, an individual; AUDREY L. BROWN, an individual for themselves and on behalf of all others similarly situated, <br>          Plaintiffs, <br>    v. <br><br> TNG GP, a Delaware General Partnership; THE NEWS GROUP, INC., a Delaware Corporation; THE NEWS GROUP, L.P., a Delaware partnership; SELECT MEDIA SERVICES, L.L.C., a Delaware Limited Liability Company, and DOES 1 through 10, inclusive, <br><br>          Defendants. | Case No.: 2:16-CV-01160-KJM-AC <br><br> Case No. 2:16-CV-02113-KJM-AC <br><br> Honorable Kimberly J. Mueller <br> Courtroom 3, 15th Floor <br><br> **JOINT STIPULATION OF CLASS ACTION AND PAGA SETTLEMENT** <br><br> Complaint Filed:   February 1, 2018 <br> FAC Filed:        March 2, 2018 <br> Trial Date:       None Set <br><br> **EXHIBITS:** <br><br> **1:  Class Notice** <br> **2:  Change of Address Form** |

EXHIBIT A, PAGE 1

MICHAEL D. SINGER, SBN 115301
    msinger@ckslaw.com
DIANA M. KHOURY, SBN 128643
    dkhoury@ckslaw.com
JEFF GERACI,  SBN 151519
    jgeraci@ckslaw.com
**COHELAN KHOURY & SINGER**
605 C Street, Suite 200
San Diego, CA  92101
Telephone:     619-595-3001 / Facsimile: 619-595-3000

DANIEL F. GAINES, SBN 251488
    daniel@gaineslawfirm.com
ALEX P. KATOFSKY (SBN 202754)
alex@gaineslawfirm.com
MIRIAM L. SCHIMMEL (SBN 185089)
miriam@gaineslawfirm.com
**GAINES & GAINES, APLC**
27200 Agoura Road, Suite 101
Calabasas, CA 91301
Telephone: 818-703-8985 / Facsimile:   818-703-8984

OLIVIA SANDERS, SBN 208266
    sanderslaw@sbcglobal.net
**LAW OFFICES OF OLIVIA SANDERS**
3415 South Sepulveda Blvd, Suite 660
Los Angeles, CA 90034
Telephone: 310-641-9001 / Facsimile: 310-641-9007

CATHERINE STARR, SBN183382
rymaranch@gmail.com
5770 East Appaloosa Avenue
Clovis, CA 93619
Telephone:  310-972-9291

Attorneys for Plaintiffs and the Proposed Class

EXHIBIT A, PAGE 2

This Joint Stipulation of Class Action and PAGA Settlement ("Agreement" or "Settlement Agreement") is entered into between Named Plaintiffs Jeannette Cooks, Alwena Frazier, and Audrey L. Brown (and on behalf of themselves and the Settlement Class, as defined below), and defendants TNG GP, The News Group, Inc., The News Group, L.P., and Select Media Services, L.L.C.  Named Plaintiffs and Defendants (collectively, the "Parties") enter into this Agreement to effect a full and final settlement and dismissal of all claims brought against Defendants in the following two cases: (1) *Jeannette Cooks, Alwena Frazier, and Audrey L. Brown, v. TNG GP, The News Group, Inc., The News Group, L.P., and Select Media Services, L.L.C.*, United States District Court Eastern District of California, Case No.: 2:16-cv-01160-KJM-AC (the "Class Complaint") filed April 14, 2016; and (2) *Jeannette Cooks, Alwena Frazier, and Audrey L. Brown, v. TNG GP, The News Group, Inc., The News Group, L.P., and Select Media Services, L.L.C.*, United States District Court Eastern District of California, Case No.: 2:16-cv-02113-KJM-AC (the "PAGA Complaint") filed on July 11, 2016.

## I.   DEFINITIONS

A.      "Action" collectively means the Class Complaint and the PAGA Complaint, which were consolidated on August 8, 2018 [Dkt. 43] and are pending before the Honorable Kimberly J. Mueller.

B.      "Agreement" or "Settlement Agreement" means this Joint Stipulation of Class Action and PAGA Settlement.

C.      "Class" or "Class Members" means all current and former hourly or non-exempt employees who worked for Defendants as merchandisers within the State of California at any time during the period from April 14, 2012 until October 3, 2019, which is one-hundred and twenty (120) days following the date the parties completed mediation on June 5, 2019.

D.      "Class Counsel" means Michael D. Singer, Jeff Geraci, Diana M. Khoury of Cohelan Khoury & Singer; Olivia Sanders of Law Office of Olivia Sanders; Catherine Starr; Daniel F. Gaines, Alex P. Katofsky, and Miriam L. Schimmel of Gaines & Gaines, APLC.

E.      "Class Counsel Award" means such award of fees and costs and expenses as the

EXHIBIT A, PAGE 3

Court may authorize to be paid to Class Counsel for the services they have rendered and will render to Plaintiffs and the Class in the Action. The Class Counsel Award will not exceed one-third of the Maximum Settlement Amount, which is One Million Two Hundred Fifty Thousand Dollars ($1,250,000.00), plus Class Counsel's actual costs and expenses as supported by declaration.

F. "Class Data" means information regarding Class Members that Defendants will in good faith compile from its records and provide to the Settlement Administrator. It shall be formatted as a Microsoft Excel spreadsheet and shall include each Class Member's: (1) full name; (2) employee number; (3) last known address; (4) last known home telephone number; (5) Social Security number; (6) start dates and end dates of employment with Defendants during the Class Period as defined herein, and, (7) number of shifts worked in the Class Period.

G. "Class Representatives" means Plaintiffs Jeannette Cooks, Alwena Frazier, and Audrey L. Brown.

H. "Class Representative Service Award" means the amount that the Court authorizes to be paid to each Named Plaintiff, Jeannette Cooks, Alwena Frazier, and Audrey L. Brown, in addition to their Individual Settlement Payment, in recognition of their efforts and risks in assisting with the prosecution of the Action, and in exchange for each providing the General Release of Defendants set forth in this Agreement.

I. "Compensable Workweeks." Using the Class Data, the Settlement Administrator will calculate the number of Compensable Workweeks by taking the number of shifts each Class Member worked during the Class Period, dividing by seven (7), and rounding up to the nearest whole number. Defendants have represented that, through October 3, 2019, there are an estimated 999,358 shifts worked by the Class during the Class Period.

J. "Complaints" jointly means the Class Complaint and the PAGA Complaint.

K. "Court" means the United States District Eastern District of California.

L. "Class Period" means the period from April 14, 2012 through October 3, 2019, which is a date that is 120 days after June 5, 2019.

M. "Defendants" means TNG GP, The News Group, Inc., The News Group, L.P., and

Select Media Services, L.L.C.

N.       "Defendant's Counsel" means Anthony J. DeCristoforo, Michael J. Nader of Ogletree, Deakins, Nash, Smoak & Stewart, P.C., and Jerome L. Rubins of Williams Kastner.

O.       "Effective Date" means: (i) if any timely objections are filed, the date of expiration of the time to file appeals regarding an Order granting final approval, or the resolution of any such appeals in a way that does not alter the terms of the settlement; or (ii) if no timely objections are filed, the date upon which the Court enters the Final Approval Order and Judgment.

P.       "Employer-side Payroll Taxes" means the employer's portion of FICA, FUTA, and all other state and federal payroll taxes, which shall be paid out of the Maximum Settlement Amount.

Q.       "Final Approval" means that the Final Approval Order and Judgment have been entered by the Court.

R.       "Final Approval Hearing" means the hearing on the Motion for Final Approval of the Settlement.

S.       "Final Approval Order and Judgment" means the Order and Judgment Granting Final Approval of the Class Settlement, which shall be submitted with the Motion for Final Approval of the Settlement.

T.       "Individual Settlement Payment" means the amount payable from the Net Settlement Amount to each Settlement Class Member without the need to return a claim form.

U.       "Maximum Settlement Amount" ("MSA") means the maximum amount of Three Million, Seven-Hundred and Fifty Thousand Dollars ($3,750,000) that Defendants will pay as a result of this Stipulation of Settlement, which shall cover everything, including all Individual Settlement Payments, Employer-side Payroll Taxes, the Class Representative Service Award, the Class Counsel Award, the LWDA Payment, and the Settlement Administration Costs.

V.       "Named Plaintiffs" means Jeannette Cooks, Alwena Frazier, and Audrey L. Brown.

W.       "Net Settlement Amount" or "NSA" means the Maximum Settlement Amount, less: (1) the Class Counsel Award; (2) the Class Representative Service Award; (3) the LWDA

Payment; (4) Employer-side Payroll Taxes; and (5) Settlement Administration Costs.

X.      "Notice" or "Class Notice" means the Notice of Class Action Settlement to be mailed to the Class Members, in a form substantially similar to the form attached as "**Exhibit 1,**" with the Notice of Change of Address form, in a form substantially similar to **"Exhibit "2,"** together with a pre-printed return envelope (collectively "Notice Packet").

Y.      "PAGA" means the California Labor Code Private Attorneys General Act of 2004.

Z.      "PAGA Payment" means the amount that is allocated from the Maximum Settlement Amount to pay all applicable civil penalties under PAGA to the Labor and Workforce Development Agency ("LWDA") as specified in Section III.L.5 herein.

AA.     "Parties" means Named Plaintiffs Jeannette Cooks, Alwena Frazier, and Audrey L. Brown, and Defendants TNG GP, The News Group, Inc., The News Group, L.P., and Select Media Services, L.L.C., collectively, and "Party" shall mean either Named Plaintiffs or Defendants, individually.

BB.     "Payment Ratio" means the respective Compensable Workweeks for each Settlement Class Member divided by the aggregate Compensable Workweeks for all Settlement Class Members.

CC.     "Preliminary Approval Date" means the date the Court enters an order granting preliminary approval of the Settlement.

DD.     "Released Claims" means all causes of action and factual or legal theories that were alleged in the operative Class and PAGA Complaints or reasonably could have been alleged based on the facts and legal theories contained in the operative complaint, including all of the following claims for relief: (a) failure to pay all regular wages, minimum wages and overtime wages due; (b) failure to provide proper meal periods, and to properly provide premium pay in lieu thereof; (c) failure to provide proper rest periods, and to properly provide premium pay in lieu thereof; (d) failure to reimburse business expenses; (e) failure to provide complete, accurate or properly formatted wage statements; (f) waiting time penalties that could have been premised on the claims, causes of action or legal theories of relief described above or any of the claims, causes of action or

legal theories of relief pleaded in the operative complaint; (g) unfair business practices that could have been premised on the claims, causes of action or legal theories of relief described above or any of the claims, causes of action or legal theories of relief pleaded in the operative complaint; (h) all claims under the California Labor Code Private Attorneys General Act of 2004 that could have been premised on the claims, causes of action or legal theories described above or any of the claims, causes of action or legal theories of relief pleaded in the operative complaint; (i) any other claims or penalties under the wage and hour laws pleaded in the Action; and (j) all damages, penalties, interest and other amounts recoverable under said claims, causes of action or legal theories of relief (collectively, the "Released Claims").  The period of the Release shall extend to the limits of the Covered Period.  The res judicata effect of the Judgment will be the same as that of the Release.  The definition of Released Claims shall not be limited in any way by the possibility that Plaintiffs or Settlement Class Members may discover new facts or legal theories or legal arguments not alleged in the operative complaint but which might serve as an alternative basis for pursuing the same claims, causes of action, or legal theories of relief falling within the definition of Released Claims.

      EE.   "Released Parties" means Defendants and their past, present and/or future, direct and/or indirect, officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers, and all persons acting under, by, through, or in concert with any of them, and each of them.

      FF.   "Response Deadline" means the date sixty (60) days after the Settlement Administrator mails the Notice to Class Members and the last date on which Class Members may postmark requests for exclusion, objections to the Settlement or disputes as to the number of their Compensable Workweeks.

      GG.   "Settlement" means the disposition of the Action pursuant to this Agreement.

      HH.   "Settlement Administration Costs" means the fees and expenses reasonably incurred by the Settlement Administrator as a result of the procedures and processes expressly required by

this Agreement, which are estimated to be Thirty-Six Thousand Five Hundred Dollars ($36,500).

II.     "Settlement Administrator" means CPT Group.

JJ.     "Settlement Class Members" or "Settlement Class" means all Class Members who do not submit timely and valid requests for exclusion as provided in this Agreement.

## II.     RECITALS

A.      Class Certification.  The Parties stipulate to provisional class certification of the Class for purposes of settlement only.  If the Court does not grant either preliminary or final approval of this settlement, this provisional class certification shall immediately be set aside and the Class immediately decertified (subject to further proceedings on motion of any party to certify or deny certification thereafter) and this Agreement shall not constitute or be used as evidence that class certification is appropriate.  If the Court does not grant either preliminary or final approval of this settlement, the Parties shall be returned to their respective statuses as of the date and time immediately prior to the execution of the Agreement, and the Parties shall proceed in all respects as if this Agreement had not been executed, except that any costs actually incurred by the Settlement Administrator shall be paid by equal apportionment among the Parties.

B.      Each Class Representative believes she has meritorious claims based on alleged violations of the California Labor Code, and that class certification is appropriate because the prerequisites for class certification can be satisfied in the Action, and that this Action is manageable as a PAGA representative action.

C.      Defendants deny any liability or wrongdoing of any kind associated with the claims alleged in the Action, disputes the damages and penalties claimed by the Class Representatives, and further contends that, for any purpose other than settlement, the Action is not appropriate for class or representative action treatment.  Defendants contend, among other things, that at all times it complied with the California Labor Code, and the Industrial Wage Commission Orders.

D.      On March 28, 2017 the Parties attended a day-long mediation with Lisa Klerman, Esq., a well-respected mediator. The case did not settle that day, but negotiations continued through Ms. Klerman for months afterward. Eventually the Parties agreed it was necessary to

litigate further before considering further negotiations.

E.      On May 30, 2019, the Parties attended a day-long mediation session with Lou Marlin, Esq., a well-respected mediator with significant experience in mediating wage and hour class actions, after which a mediator's proposal was presented to the Parties.  On June 5, 2019, the Parties accepted the proposal to resolve this Action in its entirety, and have since worked diligently and at arms'-length to negotiate all terms of the Settlement in a formal written agreement.

F.      The Parties believe that the Settlement is fair, reasonable and adequate. The Settlement was arrived at through arms'-length negotiations, taking into account all relevant factors. The Parties recognize the uncertainty, risk, expense and delay attendant to continuing the Action through trial and any appeal. Accordingly, the Parties desire to fully, finally, and forever settle, compromise and discharge all disputes and claims arising from or relating to the Action.

### III.      TERMS OF AGREEMENT

A.      Settlement Consideration.  Defendants shall pay up to the Maximum Settlement Amount.  The Parties agree that this is a non-reversionary Settlement and that no portion of the Maximum Settlement Amount shall revert to Defendants under any circumstances.  In no event shall Defendants be required to pay anything more than the Maximum Settlement Amount.

B.      Limited Release By All Settlement Class Members.  As of the Effective Date, in exchange for the consideration set forth in this Settlement Agreement, the Settlement Class Members, including the Class Representatives, will be deemed to have, and by operation of the Final Approval Order and Judgment, will have, expressly waived and released the Released Parties of the Released Claims (as defined above) to the fullest extent permitted by the law.  Plaintiff and the Class Representatives may hereafter discover facts or legal arguments in addition to or different from those they now know or currently believe to be true with respect to the claims, causes of action and legal theories of recovery in this Action. Regardless, the discovery of new facts or legal arguments shall in no way limit the scope or definition of the Released Claims, and by virtue of this Agreement, Plaintiff and the Settlement Class Members shall be deemed to have, and by operation of the final judgment approved by the Court, shall have, fully, finally, and forever settled

and released all of the Released Claims. The Parties understand and specifically agree that the scope of the release described in this Paragraph is a material part of the consideration for this Agreement; was critical in justifying the agreed upon economic value of this settlement; and without it Defendant would not have agreed to the consideration provided; and is narrowly drafted and necessary to ensure that Defendant is obtaining peace of mind regarding the resolution of claims that were or could have been alleged based on the facts, causes of action, and legal theories contained in Plaintiffs' Complaint.

        C.      <u>General Release By Named Plaintiffs</u>.  As of the Effective Date, in consideration for the consideration set forth in this Agreement, each of the Named Plaintiffs, for themselves and their heirs, successors and assigns, do hereby waives, releases, acquits and forever discharges the Released Parties, from any and all claims, actions, charges, complaints, grievances and causes of action, of whatever nature, whether known or unknown, which exist or may exist on behalf of each of the Named Plaintiffs as of the date of this Agreement, including but not limited to any and all tort claims, contract claims, wage claims, wrongful termination claims, disability claims, benefit claims, public policy claims, retaliation claims, statutory claims, personal injury claims, emotional distress claims, invasion of privacy claims, defamation claims, fraud claims, quantum meruit claims, and any and all claims arising under any federal, state or other governmental statute, law, regulation or ordinance, including, but not limited to claims for violation of the Fair Labor Standards Act, the California Labor Code, the Wage Orders of California's Industrial Welfare Commission, other state wage and hour laws, the Americans with Disabilities Act, the Employee Retirement Income Security Act, Title VII of the Civil Rights Act of 1964, the California Fair Employment and Housing Act, the California Family Rights Act, the Family Medical Leave Act, California's Whistleblower Protection Act, California Business & Professions Code Section 17200 *et seq*., the California Labor Code Private Attorneys General Act of 2004, California Labor Code Section 2699 *et seq*., and any and all claims arising under any federal, state or other governmental statute, law, regulation or ordinance.  Each of the Named Plaintiffs hereby expressly waives and relinquishes any and all claims, rights or benefits that he or she may have under California Civil

EXHIBIT A, PAGE 10

Code § 1542, which provides as follows: ***A general release does not extend to claims which the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.*** Named Plaintiffs may hereafter discover claims or facts in addition to, or different from, those which he or she now knows or believes to exist, but he or she expressly agrees to fully, finally and settle and release any and all claims against the Released Parties, known or unknown, suspected or unsuspected, which exist or may exist on behalf of or against the other at the time of execution of this Agreement, including, but not limited to, any and all claims relating to or arising from Named Plaintiffs' employment with Defendants.  The Parties further acknowledge, understand and agree that this representation and commitment is essential to the Agreement and that this Agreement would not have been entered into were it not for this representation and commitment.

    D.      ADEA Waiver by Plaintiffs. Without limiting the scope of this Agreement, Each Plaintiff agrees that this Agreement constitutes a knowing and voluntary waiver of any and all rights or claims that exist or that she may claim to have under the Age Discrimination in Employment Act ("ADEA"), as amended by the Older Workers' Benefit Protection Act of 1990 (29 U.S.C. §§ 621, et seq.). Each Plaintiff, Jeannette Cooks, Alwena Frazier, and Audrey L. Brown, acknowledges all of the following:

    1.      The consideration provided pursuant to this Agreement is in addition to any consideration that she would otherwise be entitled to receive;

    2.      Each Plaintiff has been and is advised in writing to consult with an attorney prior to signing this Agreement;

    3.      Each Plaintiff has been provided a full and ample opportunity to study this Agreement, including a period of at least twenty-one (21) calendar days within which to consider it;

    4.      To the extent that Each Plaintiff takes fewer than twenty-one (21) calendar days to consider this Agreement prior to signing it, she acknowledges that she had sufficient time

to consider this Agreement with legal counsel and that she expressly, voluntarily and knowingly waives any additional time;

5.    Each Plaintiff agrees that any changes made to the Agreement during the twenty-one (21) day period (whether material or immaterial) do not restart the running of the twenty-one (21) day period; and

6.    Each Plaintiff is aware of her right to revoke this waiver of claims under the ADEA any time within the seven (7) calendar-day period following the date she signs the Agreement and that the waiver of claims under the ADEA shall not become effective or enforceable until the seven (7) calendar-day revocation period expires. Notwithstanding each Plaintiffs' right to revoke the waiver of claims under the ADEA, the remainder of the terms of this Agreement shall become effective and enforceable as of the date that the Parties sign this Agreement.

7.    To be effective, timely notice of revocation of the waiver of ADEA claims must be made in writing and delivered to Defendants through its counsel, Michael Nader, Esq., at Ogletree Deakins Nash Smoak & Stewart, P.C., 2500 Capitol Mall, Suite 2500, Sacramento, California 95814, no later than the seventh (7th) day after each Plaintiff executes this Agreement. Each Plaintiff agrees to keep written documentation proving that she revoked this Agreement as provided in this section, either by keeping the documents attesting to the delivery of the revocation, or verification that the fax was, in fact, received.

E.    <u>Conditions Precedent</u>:  This Settlement will become final and effective only upon the occurrence of all of the following events:

1.    The Court enters an order granting preliminary approval of the Settlement;

2.    The Court enters a Final Approval Order and Judgment;

3.    The time for appeal of the Final Approval Order and Judgment expires; or, if an appeal is timely filed, there is a final resolution of any appeal from the Final Approval Order and Judgment; and

4.    Defendants do not invoke their right to revoke the Settlement as described in

EXHIBIT A, PAGE 12

Section III(N) herein.

      F.     <u>Nullification of Settlement Agreement</u>.  In the event that this Settlement Agreement is not preliminarily or finally approved by the Court, fails to become effective (as set forth in Section III.D) , or is reversed, withdrawn or modified by the Court, or in any way prevents or prohibits Defendants from obtaining a complete resolution of the claims as described herein:

      1.     This Settlement Agreement shall be void *ab initio* and of no force or effect, and shall not be admissible in any judicial, administrative or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural;

      2.     The conditional class certification (obtained for any purpose) shall be void *ab initio* and of no force or effect, and shall not be admissible in any judicial, administrative or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural; and

      3.     None of the Parties to this Settlement will be deemed to have waived any claims, objections, defenses or arguments in the Action, including with respect to the issue of class certification.

      G.     <u>Certification of the Class</u>.  The Parties stipulate to conditional class certification of the Class for the Class Period for purposes of settlement only.  In the event that this stipulation is not approved by the Court, fails to become effective, or is reversed, withdrawn or modified by the Court, or in any way prevents or prohibits Defendants from obtaining a complete resolution of the claims as described herein, the conditional class certification (obtained for settlement purposes) shall be void *ab initio* and of no force or effect, and shall not be admissible in any judicial, administrative or arbitral proceeding for any purpose or with respect to any issue, substantive or procedural.

      H.     <u>Tax Liability</u>.  The Parties make no representations as to the tax treatment or legal effect of the payments called for hereunder, and Settlement Class Members are not relying on any statement or representation by the Parties in this regard.  Settlement Class Members understand and agree that they will be responsible for the payment of any taxes and penalties assessed on the Individual Settlement Payments described herein, and will be solely responsible for any penalties or other

obligations resulting from their personal tax reporting of such payments.

       I.     <u>Circular 230 Disclaimer</u>.  Each Party to this Agreement (for purposes of this section, the "acknowledging party" and each Party to this Agreement other than the acknowledging party, an "other party") acknowledges and agrees that: (1) no provision of this Agreement, and no written communication or disclosure between or among the Parties or their attorneys and other advisers, is or was intended to be, nor shall any such communication or disclosure constitute or be construed or be relied upon as, tax advice within the meaning of United States Treasury Department circular 230 (31 CFR part 10, as amended); (2) the acknowledging party (a) has relied exclusively upon his, her or its own, independent legal and tax counsel for advice (including tax advice) in connection with this Agreement, (b) has not entered into this Agreement based upon the recommendation of any other Party or any attorney or advisor to any other Party, and (c) is not entitled to rely upon any communication or disclosure by any attorney or adviser to any other party to avoid any tax penalty that may be imposed on the acknowledging party, and (3) no attorney or adviser to any other Party has imposed any limitation that protects the confidentiality of any such attorney's or adviser's tax strategies (regardless of whether such limitation is legally binding) upon disclosure by the acknowledging party of the tax treatment or tax structure of any transaction, including any transaction contemplated by this Agreement.

       J.     <u>Preliminary Approval Motion</u>. At the earliest practicable time, Named Plaintiffs shall file with the Court a Motion for Preliminary Approval of the Settlement and supporting papers, which shall include this Settlement Agreement and a Proposed Order Granting Preliminary Approval of Class Action Settlement.   Class Counsel shall provide a copy of the draft Motion for Preliminary Approval of the Settlement to Defendants' Counsel for review three (3) business days before filing it with the Court.  Defendants shall timely file a Statement of Non-Opposition to the Motion for Preliminary Approval of the Settlement. The Parties and their counsel will cooperate with each other and use their best efforts to obtain the Court's approval of the Motion for Preliminary Approval of the Settlement.

       K.     Pursuant to California Labor Code Section 2699(l)(2), at the same time as filing the

Motion for Preliminary Approval of the Settlement, Plaintiffs shall submit this Settlement Agreement to the LWDA.

      L.     Settlement Administrator.

      1.     The Settlement Administrator shall be responsible for: (a) calculating Compensable Workweeks from the Class Data provided by Defendants; (b) printing and mailing the Notice to the Class Members as directed by the Court; (c) receiving and reporting the objections and requests for exclusion; (d) processing and mailing payments to the Class Representatives, Class Counsel, LWDA and Settlement Class Members; (e) distributing tax forms; (f) processing and mailing tax payments to the appropriate state and federal taxing authorities; (g) providing declaration(s) as necessary in support of preliminary and/or final approval of this Settlement; (h) establishing a static website to host the relevant documents concerning this Settlement; (i) preparing and mailing the CAFA Notice (as set forth below); and (j) other tasks as the Parties mutually agree and/or set forth in this Agreement, or the Court orders the Settlement Administrator to perform.  The Settlement Administrator shall keep the Parties timely apprised of the performance of all Settlement Administrator responsibilities.  Defendants and Defendants' Counsel shall have no responsibility for validating and ensuring the accuracy of the Settlement Administrator's work.  Named Plaintiffs, Class Counsel, Defendants and Defendants' Counsel shall not bear any responsibility for errors and omissions in the calculation or distribution of the Individual Settlement Payments or any other distribution of monies contemplated by this Agreement.

      M.     CAFA Notice.  Within ten (10) calendar days after the Named Plaintiffs file their motion for preliminary approval of the Settlement, the Settlement Administrator, on behalf of Defendant, will mail a notice of proposed settlement pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715 ("CAFA Notice") to the Attorney General of the United States, the Attorney General of the State of California, and the Attorney General of any state where a Class Member resides.

N.      Notice Procedure.

1.      Class Data.  No later than fourteen (14) calendar days after the Preliminary Approval Date, Defendants shall provide the Settlement Administrator with the Class Data for purposes of preparing and mailing the Notice to Class Members.  The Class Data shall be confidential.  The Settlement Administrator shall not provide the Class Data to Class Counsel or Named Plaintiffs, except as required to monitor the administration of the notice process and preparation of papers for submission to the Court, or any third party, or use the Class Data or any information contained therein for any purpose other than to administer this Settlement.

2.      Notice to Class Members.

a.      The Notice of Class Action Settlement in a form substantially similar to the form attached as **Exhibit 1**, shall inform Class Members that in order to receive an Individual Settlement Payment if the Court grants final approval of the Settlement, they do not need to do anything except to keep the Settlement Administrator apprised of their current mailing address.  The Notice of Class Action Settlement shall also set forth the release to be given by all members of the Class who do not request to be excluded from the Settlement.

b.      The Notice of Class Action Settlement shall also include the Class Member's starting and ending dates of employment, the number of Compensable Workweeks during the Class Period, and the estimated amount of his or her Individual Settlement Payment if he or she does not request to be excluded from the Settlement.  The Settlement Administrator shall use the Class Data to determine the dates of employment, calculate the number of Compensable Workweeks, calculate the estimated Individual Settlement Payment for each Class Member and calculate the Individual Settlement Payment for each Settlement Class Member.

3.      Notice By First Class U.S. Mail.  Upon receipt of the Class Data, the Settlement Administrator will perform a search of the National Change of Address Database to update and correct any known or identifiable address changes.  No later than twenty-one (21) calendar days after receiving the Class Data from Defendants as provided herein, the Settlement Administrator shall mail the Notice Packets to all Class Members via regular First Class U.S. Mail.

The Settlement Administrator shall exercise its best judgment to determine the current mailing address for each Class Member.  The address identified by the Settlement Administrator, or as provided by Class Counsel to the Settlement Administrator, as the current mailing address shall be presumed to be the best mailing address for each Class Member.

        4.      <u>Undeliverable Notices</u>.  Any Notice Packet returned to the Settlement Administrator as non-delivered on or before the Response Deadline shall be re-mailed to the forwarding address affixed t.  If no forwarding address is provided, the Settlement Administrator shall promptly attempt to determine a correct address by lawful use of skip-tracing, or other search using the name, address and/or Social Security number of the Class Member involved, and shall then promptly perform a re-mailing, if another mailing address is identified by the Settlement Administrator.  If the Class Member is currently employed, the Administrator will notify Counsel for Defendants.  Defendants (a) will request that the currently employed Class Member provide a corrected address, and (b) transmit to the Settlement Administrator any corrected address provided by the Class Member.  Class Members who received a re-mailed Notice Packet shall have their Response Deadline extended fifteen (15) calendar days from the original Response Deadline.

        5.      <u>Disputes Regarding Individual Settlement Payments</u>.  Class Members will have the opportunity, should they disagree with the number of Compensable Workweeks or dates of employment shown in their individualized Class Notice, to provide documentation and/or an explanation to show contrary employment dates and correct number of Compensable Workweeks.  Any such dispute must contain: (1) the Class Member's full name and address; (2) the case name and number; (3) a clear statement indicating that the Class Member wishes to dispute the dates of employment or the number of Compensable Workweeks attributed to him or her; and (4) the dates of employment or number of Compensable Workweeks the Class Member contends is correct, together with any supporting documents or information.  The Parties agree that disputes will not be rejected for technical failure to meet the requirements set forth herein, as long as the Class Member can be identified through Defendants' records.  The Settlement Administrator will consult with Defendants to determine whether the Class Member can be identified.  If there is a dispute, the

Settlement Administrator will consult with the Parties to determine whether an adjustment is warranted.  The Settlement Administrator shall determine the eligibility for, and the amounts of, any Individual Settlement Payments under the terms of this Agreement.  The Settlement Administrator's determination of the eligibility for and amount of any Individual Settlement Payment shall be binding upon the Settlement Class Member and the Parties.

6.     Disputes Regarding Administration of Settlement.  Any disputes not resolved by the Settlement Administrator concerning the administration of the Settlement will be resolved by the Court under the laws of the State of California.  Prior to any such involvement of the Court, counsel for the Parties will confer in good faith to resolve the disputes without the necessity of involving the Court.

7.     No Claim Form Required.  Class Members are not required to submit a claim form to receive an Individual Settlement Payment.  The Notice of Class Action Settlement shall state that Class Members who wish to receive Individual Settlement Payments need not do anything except to keep the Settlement Administrator apprised of a current mailing address in order to receive an Individual Settlement Payment check following the Effective Date of the Settlement.

8.     Exclusions.  The Notice of Class Action Settlement shall state that Class Members who wish to exclude themselves from the Settlement must postmark a written request for exclusion by the Response Deadline.  The written request for exclusion must: (1) contain the name, address, telephone number and the last four digits of the Social Security or the full employee ID number of the person requesting exclusion; (2) be signed by the Class Member or his or her legal representative; (3) be postmarked or fax stamped by the Response Deadline and returned to the Settlement Administrator at the specified address or fax telephone number; and (4) contain a typewritten or handwritten statement that the Class Member wishes to be excluded from the Settlement.  Notwithstanding the requirements set forth herein, the Parties agree that any timely requests for exclusion which unambiguously express the Class Member's intention to opt out will generally be honored.  However, requests for exclusion will not be valid if they are not timely submitted.  The date of the postmark or fax-stamp on the request for exclusion shall be the

exclusive means used to determine whether the request for exclusion was timely submitted. In the case of other technical deficiency, the Settlement Administrator will evaluate the request for exclusion and decide whether it is valid, and, if necessary, the Settlement Administrator will present it to the Court to decide.  Any Class Member who requests to be excluded from the Settlement will not be entitled to any recovery under the Settlement and will not be bound by the terms of the Settlement or have any right to object, appeal or comment thereon.  Class Members who fail to submit a valid and timely written request for exclusion on or before the Response Deadline shall be bound by all terms of the Settlement and any final judgment entered in this Action if the Settlement is approved by the Court.  No later than fourteen (14) calendar days after the Response Deadline, the Settlement Administrator shall provide counsel for the Parties with the final number of Class Members who have timely submitted written requests for exclusion.  At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage members of the Class to submit requests for exclusion from the Settlement.

        9.     <u>Objections</u>.  The Notice of Class Action Settlement shall state that Class Members who do not seek to exclude themselves from the Settlement (*i.e*. Settlement Class Members), and who wish to object to the Settlement must submit a written objection and supporting papers ("Notice of Objection") to the Settlement Administrator by U.S. Mail or by facsimile on or before the Response Deadline.  The exclusive means for determining that a Notice of Objection was submitted timely shall be the postmark or fax-stamp date.  The Notice of Objection must be signed by the Settlement Class Member or his or her legal representative and must contain:  (a) the full name of the Settlement Class Member; (b) the Settlement Class Member's address; (c) the last four digits of the Settlement Class Member's Social Security number and/or the Employee ID number; (d) the case name and number; (e) a clear statement indicating that the Settlement Class Member wishes to object to the Settlement; (f) the basis for the objection; and (g) if the Settlement Class Member intends to appear at the Final Approval Hearing. Settlement Class Members who submit a timely Notice of Objection will have a right to appear at the Final Approval Hearing in order to have their objections heard by the Court and may appear

through their own attorney at the Settlement Class Member's expense.   At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage Class Members to file written objections to the Settlement or appeal from the Final Approval Order and Judgment.  Class Members who submit a written request for exclusion are not entitled to object to the Settlement.

O.      Funding and Allocation of the Maximum Settlement Amount.  Defendants are required to pay the sum of the Individual Settlement Payments, the Class Representatives Service Awards, the Class Counsel Award, the LWDA Payment, Employer-Side Payroll Taxes, and the Settlement Administration Costs, as specified in this Agreement and as approved by the Court, up to the Maximum Settlement Amount and no more.

1.      Funding Due Date.  No later than ten (10) calendar days after the Effective Date, Defendants shall fund the Maximum Settlement Amount to the Settlement Administrator to fund the Settlement, as set forth in this Agreement.

2.      Individual Settlement Payments.  Individual Settlement Payments shall be paid from the Net Settlement Amount and shall be paid pursuant to the formula set forth herein.

a.      Calculation of Estimated Individual Settlement Payments.  Using the Class Data, the Settlement Administrator will calculate the total Compensable Workweeks for all Class Members.  The respective Compensable Workweeks for each Class Member will be divided by the aggregate Compensable Workweeks for all Settlement Class Members, resulting in the Payment Ratio for each Settlement Class Member.  Each Class Member's Payment Ratio will then be multiplied by the estimated Net Settlement Amount to calculate each Class Member's estimated Individual Settlement Payments.

b.      Calculation of Individual Settlement Payments.  Using the Class Data, or using the Compensable Workweeks calculated based on disputed and subsequently approved alternative employment dates (where dates of employment have been disputed by a Settlement Class Member in accordance with this Agreement), the Settlement Administrator will calculate the total Compensable Workweeks for all Settlement Class Members.  The respective Compensable Workweeks for each Settlement Class Member will be divided by the total

Compensable Workweeks for all Settlement Class Members, resulting in the Payment Ratio for each Settlement Class Member.  Each Settlement Class Member's Payment Ratio will then be multiplied by the Net Settlement Amount to calculate each Settlement Class Member's Individual Settlement Payment.

      c.    <u>Allocation</u>.  For tax purposes, Individual Settlement Payments shall be allocated and treated as follows: ten percent (10%) of each Individual Settlement Payment will be allocated to settlement of wage claims and subject to withholdings and taxes, twenty percent (20%) will be allocated to expense reimbursements, and thirty-five percent (35%) will be allocated to the settlement of claims for penalties, and the remaining thirty-five percent (35%) will be allocated to interest under the California Labor Code.  The portion allocated to wages in each Individual Settlement Payment will be reported on an IRS Form W-2 and the portions allocated to interest and penalties will be reported on an IRS Form-1099 by the Settlement Administrator.

      d.    <u>Mailing</u>.  All Individual Settlement Payment checks shall be mailed by regular First Class U.S. Mail to Settlement Class Members' last known mailing address no later than fourteen (14) calendar days after the Effective Date.

      e.    <u>Expiration</u>.  Any Individual Settlement Payment checks issued to Settlement Class Members shall remain valid and negotiable for one hundred and eighty (180) calendar days from the date of their issuance.  If a Settlement Class Member does not cash his or her settlement check within 90 days, the Settlement Administrator will send a letter to such persons, advising that the check will expire after the 180th day, and invite that Settlement Class Member to request reissuance in the event the check was destroyed, lost or misplaced.  In the event an Individual Settlement payment check has not been cashed within one hundred and eighty (180) days, all such checks shall be voided and funds associated with such voided checks plus any accrued interest that has not otherwise been distributed, shall be awarded 50% to No Kid Hungry, a non-profit organization providing child hunger relief programs, including school meals and after-school meals, and 50% to Legal Aid at Work, a California non-profit group providing legal counseling and representation to workers.

3.     Class Representative Service Award.  Defendants agree not to oppose or object to any application or motion by Named Plaintiffs for the Class Representative Service Award of up to Seven Thousand Five Hundred Dollars ($7,500.00) each in exchange for the Released Claims and the General Release by Named Plaintiffs for their time, effort and risk in bringing and prosecuting this matter.  The Settlement Administrator shall pay the Class Representative Service Award to Named Plaintiffs from the Maximum Settlement Fund no later than fourteen (14) calendar days after the Effective Date.  Any portion of the requested Class Representative Service Award that is not awarded to the Class Representative shall be part of the Net Settlement Amount and shall be distributed to Settlement Class Members as provided in this Agreement.  The Settlement Administrator shall issue an IRS Form 1099 — MISC to the Named Plaintiffs for their Class Representative Service Award, and shall hold harmless Defendants from any claim or liability for taxes, penalties, or interest arising as a result of the Class Representative Award.  Named Plaintiffs shall be solely and legally responsible to pay any and all applicable taxes on his Class Representative Service Award.   The Class Representative Service Award shall be in addition to the Named Plaintiffs' respective Individual Settlement Payment as a Settlement Class Member.  In the event that the Court reduces or does not approve the requested Class Representative Service Award, Plaintiffs shall not have the right to revoke the Settlement, and it will remain binding.

4.     Class Counsel Award.  Defendants agree not to oppose or object to any application or motion by Class Counsel for attorneys' fees not to exceed thirty-three and one-third percent (33-1/3%) of the Maximum Settlement Amount ($1,250,000.00 out of $3,750,000.00), plus actual costs and expenses estimated at $56,000 and supported by declaration, from the Maximum Settlement Amount.  Any portion of the requested Class Counsel Award that is not awarded to Class Counsel shall be part of the Net Settlement Amount and shall be distributed to Settlement Class Members as provided in this Agreement.  The Settlement Administrator shall pay the Class Counsel Award to Class Counsel from the Maximum Settlement Amount no later than fourteen (14) calendar days after the Effective Date.  Class Counsel shall be solely and legally responsible

to pay all applicable taxes on the payment made pursuant to this paragraph.  The Settlement Administrator shall issue an IRS Form 1099 — MISC to Class Counsel for the payments made pursuant to this paragraph.  In the event that the Court reduces or does not approve the requested Class Counsel Award, Named Plaintiffs and Class Counsel shall not have the right to revoke the Settlement, and it will remain binding.  A reduced Class Representative or Class Counsel Award may be appealed.

        5.     <u>PAGA Payment</u>.  Fifty Thousand dollars ($50,000.00) shall be allocated from the Maximum Settlement Amount for payment of alleged claims for civil penalties pursuant to the Labor Code Private Attorneys General Act of 2004.  The Settlement Administrator shall pay seventy-five percent (75%) of the PAGA Payment, or $37,500.00 to the California Labor and Workforce Development Agency ("LWDA Payment") no later than fourteen (14) calendar days after the Effective Date.  Twenty-five (25%), or $12,500.00, will be part of the Net Settlement Amount and distributed to Settlement Class Members as described in this Agreement.

        6.     <u>Settlement Administration Costs</u>.  The Settlement Administrator shall be paid for the costs of administration of the Settlement from the Maximum Settlement Amount, currently estimated at $36,500.  The Settlement Administrator shall be paid the Settlement Administration Costs no later than fourteen (14) calendar days after Defendants transmit the Maximum Settlement Amount to the Settlement Administrator for disbursement under this Agreement and as ordered by the Court.

        P.     <u>Final Approval Motion</u>. At the earliest practicable time following the expiration of the Response Deadline, and as ordered by the Court, Named Plaintiffs shall file with the Court a Motion for Order Granting Final Approval of Settlement and Entering Judgment, which motion shall request final approval of the Settlement and the amounts payable for the Class Representative Service Award, the Class Counsel Award, the LWDA Payment, the Settlement Administration Costs, and also seek entry of a Final Approval Order and Judgment.

        1.     <u>Review of Motion for Final Approval</u>.  Class Counsel will provide an opportunity for Defendants' Counsel to review the Motion for Final Approval of Settlement prior

to filing with the Court.  The Parties and their counsel will cooperate with each other and use their best efforts to obtain the Court's approval of the Motion for Final Approval of the Settlement.

        2.    <u>Declaration by Settlement Administrator</u>.  The Settlement Administrator shall submit a declaration in support of Named Plaintiffs' Motion for Final Approval of the Settlement detailing: (a) the number of Notices mailed and re-mailed to Class Members; (b) the number of undeliverable Notices; (c) the number of timely requests for exclusion; (d) the number of objections submitted; (e) the amount of the highest and average Individual Settlement Payments, the Settlement Administration Costs; and (f) any other information as the Parties mutually agree or the Court orders the Settlement Administrator to provide.

        Q.    <u>Defendants' Option to Terminate Settlement</u>.  If, after the Response Deadline and before the Final Approval Hearing, the number of Class Members who submitted timely and valid written requests for exclusion from the Settlement is at least five percent (5%) of all Class Members, Defendants shall have, in its sole discretion, the option to terminate this Settlement.  If Defendants exercise the option to terminate this Settlement, Defendants shall: (a) provide written notice to Class Counsel prior to the Final Approval Hearing and no later than seven (7) calendar days after receiving notice from the Settlement Administrator of the number of Class Members who have submitted timely and valid requests for exclusion; (b) pay all Settlement Administration Costs incurred up to the date or as a result of the termination; and (c) the Parties shall proceed in all respects as if this Agreement had not been executed.

        R.    <u>Dispute Resolution Concerning Enforcement of the Terms of This Settlement Agreement</u>.  Except as provided herein, all disputes concerning the interpretation, calculation or payment of settlement shares, or other disputes regarding compliance with this Settlement Agreement shall be resolved as follows: if Named Plaintiffs or Class Counsel (on behalf of Named Plaintiffs or any Class Member) or Defendants at any time contend that the other Party has breached or acted contrary to the Settlement Agreement, that Party shall notify the other Party in writing of the alleged violation.  Upon receiving notice of the alleged violation or dispute, the responding Party shall have ten (10) calendar days to correct the alleged violation and/or respond

to the initiating Party with the reasons why the Party disputes all or part of the allegation.  If the response does not address the alleged violation to the initiating Party's satisfaction, the Parties shall negotiate in good faith for up to ten (10) calendar days to resolve their differences and shall present any and all application(s) and/or stipulation(s) to the Court as may be necessary to effectuate their resolution and obtain the Court's approval.  If the Parties are unable to resolve their differences within thirty (30) calendar days after the writing which notified them of the alleged violation, either Party may elect to file (l) an appropriate motion for enforcement with the Court, or (2) take any other legal action to enforce this Settlement Agreement, including and not limited to, pursuant to the Court's continuing jurisdiction and as stated in Section Y herein.

S.    Cooperation.  The Parties and their counsel will cooperate with each other and use their best efforts to effect the implementation of the Settlement.

T.    Interim Stay of Proceedings.  The Parties agree to stay all proceedings in the Action, except such proceedings necessary to implement and complete the Settlement, pending the Final Approval Hearing to be conducted by the Court.

U.    Amendment or Modification.  This Agreement may be amended or modified only by a written instrument signed by counsel for all Parties or their successors-in-interest.

V.    Entire Agreement.  This Agreement and its exhibits constitute the entire Agreement among the Parties, and no oral or written representations, warranties or inducements have been made to any Party concerning this Agreement or its exhibits other than the representations, warranties and covenants contained and memorialized in the Agreement and its exhibits.

W.    Authorization to Enter Into Settlement Agreement.  Counsel for all Parties warrant and represent they are expressly authorized by the Parties whom they represent to negotiate this Agreement and to take all appropriate actions required or permitted to be taken by such Parties pursuant to this Agreement to effectuate its terms, and to execute any other documents required to effectuate the terms of this Agreement.  The person signing this Agreement on behalf of Defendants represent and warrant that they are authorized to sign this Agreement on behalf of Defendants.  Each Named Plaintiff represents and warrants that she is authorized to sign this

Agreement and that she has not assigned any claim, or part of a claim, covered by this Settlement to a third-party.

X.      Binding on Successors and Assigns.  This Agreement shall be binding upon, and inure to the benefit of, the successors or assigns of the Parties, as previously defined.

Y.      California Law Governs.  All terms of this Agreement and the Exhibits  and any disputes arising hereunder shall be governed by and interpreted according to the laws of the State of California.

Z.      Counterparts.  This Agreement may be executed in one or more counterparts.  All executed counterparts and each of them shall be deemed to be one and the same instrument provided that counsel for the Parties to this Agreement shall exchange among themselves copies or originals of the signed counterparts.

AA.    This Settlement Is Fair, Adequate and Reasonable.  The Parties believe this Settlement is a fair, adequate and reasonable settlement of this Action and have arrived at this Settlement after extensive arms-length negotiations, taking into account all relevant factors, present and potential.

BB.    Jurisdiction of the Court.  The Parties agree that the Court shall retain jurisdiction with respect to the interpretation, implementation and enforcement of the terms of this Agreement and all orders and judgments entered in connection therewith, and the Parties and their counsel submit to the jurisdiction of the Court for purposes of interpreting, implementing and enforcing the settlement embodied in this Agreement and all orders and judgments entered in connection therewith.

CC.    Invalidity of Any Provision.  Before declaring any provision of this Agreement invalid, the Court shall first attempt to construe the provisions valid to the fullest extent possible consistent with applicable precedents so as to define all provisions of this Agreement valid and enforceable.

DD.    Publicity.  Other than as necessary to implement the Settlement, neither Plaintiffs nor Class Counsel shall initiate any publicity, disclosure or contact with the media, or respond to

any inquiry from the media, regarding the Settlement other than to confirm that this Action has settled.  Any confirmation of Settlement shall remain confidential until Notice is mailed.

EE.    No Unalleged Claims.  Class Representatives and Class Counsel represent that, as of the date of execution of this Settlement, they do not currently intend to pursue any claims against Defendants, including, but not limited to, any and all claims relating to or arising from Plaintiff's employment with Defendants, and that Plaintiff's Counsel is not currently aware of any facts or legal theories upon which any claims or causes of action could be brought against Defendants, excepting those facts or legal theories alleged in the operative complaint in this Action.  The Parties further acknowledge, understand and agree that this representation is essential to the Agreement and that this Agreement would not have been entered into were it not for this representation.  Nothing in this Paragraph will be construed as a restraint on the right of any counsel to practice.

FF.    Waiver of Certain Appeals.  The Parties agree to stipulate to class certification for purposes of implementing this Settlement only and agree to waive all appeals from the Court's final approval of the Settlement, unless the Court modifies the Settlement, for example, by not awarding the requested Class Representative Service Payments or attorneys' fees.

GG.    No Admissions.  Named Plaintiffs have claimed and continue to claim that the Released Claims have merit and give rise to liability on the part of Defendants.  Defendants claim that the Released Claims have no merit and do not give rise to liability.  This Agreement is a compromise of disputed claims.  Nothing contained in this Agreement and no documents referred to herein and no action taken to carry out this Agreement may be construed or used as an admission by or against the Defendants or Named Plaintiffs or Class Counsel as to the merits or lack thereof of the claims asserted.

HH.    Notice of Settlement to LWDA.  Named Plaintiffs hereby represents that Named Plaintiffs will provide notice of this Agreement and proposed settlement to the Labor Workforce Development Agency ("LWDA") at the time the motion for preliminary approval is filed as required by Labor Code Section 2699(l)(2).

IN WITNESS WHEREOF, this Joint Stipulation of Class Action and PAGA Settlement is executed by and on behalf of the Settling Parties and their duly authorized attorneys, as of the day and year herein set forth.

DATED: October____, 2019

By: _____
Plaintiff, JEANNETTE COOKS

DATED: October ____, 2019

BY: _____
Plaintiff, ALWENA FRAZIER

October 28, 2019

DATED: October ____, 2019

BY: _____
Plaintiff, AUDREY L. BROWN

DATED: October ____, 2019

LAW OFFICE OF CATHERINE STARR

BY: _____
Catherine Starr
Attorneys for Plaintiffs and the Putative Class

DATED: October ___, 2019

LAW OFFICE OF OLIVIA SANDERS

By: _____
Olivia Sanders
Attorneys for Plaintiffs and the Putative Class

DATED: October _28_, 2019

COHELAN KHOURY & SINGER

By: _____
Michael D. Singer / Jeff Geraci
Attorneys for Plaintiffs and the Putative Class

*[Signatures, continued next page]*

1      IN WITNESS WHEREOF, this Joint Stipulation of Class Action and PAGA Settlement is

2  executed by and on behalf of the Settling Parties and their duly authorized attorneys, as of the day

3  and year herein set forth.

4

5  DATED: October___, 2019

By: _____
6                                         Plaintiff, JEANNETTE COOKS

7

8  DATED: October ___, 2019

BY: _____
                                        Plaintiff, ALWENA FRAZIER
9

10 DATED: October ___, 2019

BY: _____
11                                        Plaintiff, AUDREY L. BROWN

12

13 DATED:   October ___, 2019          LAW OFFICE OF CATHERINE STARR

14

BY: _____
15                                        Catherine Starr
                                        Attorneys for Plaintiffs and the Putative Class

16                                     LAW OFFICE OF OLIVIA SANDERS
   DATED: October 25 2019
17                                     By: _Olivia Sanders_ (signature)

18                                        Olivia Sanders
                                        Attorneys for Plaintiffs and the Putative Class

19
   DATED: October ___, 2019
20                                     COHELAN KHOURY & SINGER

21

22                                     By: _____
                                        Michael D. Singer / Jeff Geraci
23                                        Attorneys for Plaintiffs and the Putative Class

24                                          [*Signatures, continued next page*]

25

26

27

28

1   DATED: October _28_ 2019                GAINES & GAINES, APLC

2

3                                           By: _____
                                               Daniel F. Gaines / Alex P. Katofsky
4                                              Miriam L. Schimmel
                                               Attorneys for Plaintiffs and the Putative Class
5

6

7   DATED: October ___, 2019               TNG GP, THE NEWS GROUP, INC., THE NEWS
                                           GROUP, L.P., AND SELECT MEDIA SERVICES,
8                                          L.L.C

9
                                           By: _____
10                                             John Swider
                                               President, Select Media Services, L.L.C.
11                                             On behalf of all Defendants

12

13  DATED: October ___, 2019               OGLETREE, DEAKINS, NASH, SMOAK &
                                           STEWART, P.C.
14

15                                         By: _____
                                               Anthony J. DeCristoforo / Michael J. Nader
16                                             Attorneys for Defendant
                                               TNG GP, The News Group, Inc., The News
17                                             Group, L.P., and Select Media Services, L.L.C

18

19                                                                          38918346.1

20

21

22

23

24

25

26

27

28
                                        29
                    JOINT STIPULATION OF CLASS ACTION AND PAGA SETTLEMENT

EXHIBIT A, PAGE 30

# EXHIBIT 1

*Jeannette Cooks, et al v. The News Group, Select Media Services, et al*
U.S. District Court, Eastern District of California, Case No.: 2:16-CV-01160-KJM-AC / 2:16-CV-02113-KJM-AC
(Jointly referred to as "***Cooks v. TNG***")

## NOTICE OF CLASS ACTION SETTLEMENT

To:    **All persons employed by TNG GP, The News Group, Inc. and Select Media Services, LLC (collectively "TNG") as a non-exempt employee in the State of California as a merchandiser at any time during the period from April 14, 2012 through October 3, 2019.**

*A court authorized this Notice. This is not a solicitation.*
*This is not a lawsuit against you and you are not being sued.*
*However, your legal rights may be affected by a class action settlement.*

Your rights and each option, and related deadlines, are explained in this Notice.

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
| --- | --- |
| **YOU DO NOT NEED TO DO ANYTHING TO RECEIVE A SETTLEMENT PAYMENT** | The estimated amount of your Individual Settlement Payment is shown in Paragraph 8 of this Notice. Keep the Settlement Administrator informed of your current mailing address. Once the Court grants final approval of the Settlement, the Settlement Administrator will mail your check to the last known address on file for you. |
| **CHANGE CONTACT INFORMATION** | YOU MUST update your contact information with the Settlement Administrator to ensure that you receive your Individual Settlement Payment. |
| **EXCLUDE YOURSELF** Deadline: [**Response Deadline**] | You can exclude yourself from the Settlement if you do not wish to participate in the Settlement. This is the only option that allows you to pursue your own lawsuit against TNG about the legal claims in this case. If you exclude yourself, you will not receive an Individual Settlement Payment. |
| **OBJECT** Deadline: [**Response Deadline**] | If you think the Settlement is not fair, you can submit a written objection ("Notice of Objection") to the Settlement Administrator, and it will be considered by the Court. You may also ask to speak in Court about why you think the Settlement is not fair at the time of the Final Approval Hearing. If the Settlement is approved, you will be bound by the terms of the Settlement and releases described in this Notice. |
| **DO NOTHING** | If you do nothing (that is, if you do not submit a timely request for exclusion), you will be mailed an Individual Settlement Payment at the address listed above, and you will be bound by the terms of the Settlement and releases described in this Notice. |

| WHAT THIS NOTICE CONTAINS |
|---|

**BASIC INFORMATION**
1. Why did I get this notice? ...........................................................................Page 3
2. What is this Lawsuit about? ........................................................................Page 3
3. Why is this a class action? .........................................................................Page 3
4. Why is there a Settlement? .........................................................................Page 3
5. Who are the Parties in this Lawsuit.............................................................Page 3
6. Do I have a lawyer in this case?..................................................................Page 3

**THE TERMS OF THE SETTLEMENT**
7. What is the settlement amount and how will the Individual Settlement
   Payments be calculated? ...........................................................................Page 4
8. How much will my Individual Settlement Payment be?...............................Page 5
9. What do I do if my dates of employment are wrong? .................................Page 5

**HOW TO GET A PAYMENT**
10. How can I get my Individual Settlement Payment?.....................................Page 6
11. What am I giving up to get an Individual Settlement Payment?...................Page 6

**EXCLUDING YOURSELF FROM THE SETTLEMENT**
12. How do I exclude myself from the Settlement?...........................................Page 6
13. If I don't exclude myself, can I sue TNG for the same thing later?.............Page 7

**OBJECTING TO THE SETTLEMENT**
14. How do I tell the Court that I don't like the Settlement?.............................Page 7
15. What is the difference between objecting and being excluded? ...................Page 7

**THE COURT'S FINAL APPROVAL HEARING**
16. When and where will the Court decide whether to approve the Settlement? ..................Page 7
17. Do I have to come to the hearing? ...............................................................Page 8

**GETTING MORE INFORMATION**
18. Who may I contact if I have questions about the Settlement? ......................Page 8

**ADDITIONAL IMPORTANT INFORMATION**........................................................Page 8

| BASIC INFORMATION |
|---|

**1.      Why did I get this notice?**

The Court has preliminarily approved a settlement of the lawsuit *Jeannette Cooks, et al v. The News Group, Select Media Services, et al*, Case No. 2:16-CV-01160-KJM-AC / 2:16-CV-02113-KJM-AC (jointly referred as "*Cooks v. TNG*"), which is pending in the U.S. District Court for the Eastern District of California ("Action" or "Lawsuit"). The Settlement is on behalf of a proposed Class, defined as all current and former non-exempt employees of TNG who worked in the State of California as merchandisers during the period from April 14, 2012 through October 3, 2019.

You received this notice because TNG's records show that you worked for TNG as a non-exempt merchandiser in California at some time during the period from April 14, 2012 through October 3, 2019, and therefore, you may be a member of the Class ("Class Member").  This notice explains the Lawsuit, the settlement, your legal rights, the benefits available for you, your eligibility for benefits, and how you obtain them.

**2.      What is this Lawsuit about?**

Jeannette Cooks, Alwena Frazier, and Audrey Brown ("Plaintiffs") sued on behalf of themselves and other Merchandisers in California. Plaintiffs assert that Defendants owe them and other Merchandisers additional compensation for meal and rest breaks that were not provided, unpaid wages, unpaid overtime wages, unreimbursed business expenses, as well as penalties for inaccurate itemized wage statements, the late payment of final wages, and other related penalties. Plaintiffs seek damages for lost wages, interest, and penalties. They also seek attorneys' fees and expenses. Defendants strongly deny Plaintiffs' allegations and admit no wrongdoing. To avoid the costs of litigation, however, the Parties have agreed to settle this matter.

**3.      Why is this a class action?**

In a class action, one court resolves the issues for everyone in the class, except for those people who decide to exclude themselves from the class.  In this case, Plaintiffs Jeannette Cooks, Alwena Frazier, and Audrey Brown, sue on behalf of themselves and other merchandisers, and the group of merchandisers with similar claims is called a "Class." Each person included in the class definition is a "Class Member."

**4.      Why is there a Settlement?**

The Court has not decided in favor of either party, not the Plaintiffs or the Defendants. There was no trial. Instead, both sides agreed to a no-fault settlement of the Lawsuit ("Settlement"). That way, they avoid the cost of a trial and the Class Members can get compensation from the Settlement. Plaintiffs and Class Counsel think that the Settlement is best for the Class.

**5.      Who are the Parties in this Lawsuit?**

TNG employed Plaintiffs as non-exempt merchandisers in California.

TNG GP, The News Group, Inc. and Select Media Services, LLC are the named Defendants (collectively "Defendants" or "TNG").

**6.      Do I have a lawyer in this case?**

The Court has appointed Class Counsel listed below to represent your interests in this case.

| **Class Counsel** | **Defendants are represented by:** |
|:---:|:---:|
| Michael D. Singer | Anthony J. DeCristoforo |
| Jeff Geraci | Michael J. Nader |
| Diana M. Khoury | Ogletree, Deakins, Nash, |
| Cohelan Khoury & Singer | Smoak & Stewart, P.C. |
| 605 C Street, Suite 200 | 500 Capital Mall, Suite 2500 |
| San Diego, CA 92101 | Sacramento, CA 95814 |

EXHIBIT A, PAGE 34

Daniel F. Gaines
Alex Katofsky
Miriam L. Schimmel
Gaines & Gaines, APLC
27200 Agoura Road, Suite 101
Calabasas, CA 91301

Jerome L. Rubin
Williams Kastner
601 Union Street, Suite 4100
Seattle, WA 98101

Olivia Sanders
Law Offices of Olivia Sanders
3415 South Sepulveda Blvd, Suite 660
Los Angeles, CA 90034

Catherine Starr
5770 East Appaloosa Avenue
Clovis, CA 93619

If you have questions regarding this Settlement, you should contact Class Counsel, or the Settlement Administrator at 1-800-[telephone]. You may also view documents relating to the Settlement (including, but not limited to, the complaint, all papers filed in connection with the motion for preliminary approval of the Settlement, the order granting preliminary approval of the Settlement, and other documents) by visiting the following website:

*www.TNGClassActionSettlement.com.*

## THE TERMS OF THE SETTLEMENT

**7.      What is the settlement amount and how will the Individual Settlement Payment be calculated?**

Under the proposed Settlement, TNG will pay $3,750,000.00 (referred to as the "Maximum Settlement Amount" or "MSA") to fully and finally resolve all claims in the Lawsuit.

The "Net Settlement Amount" or "NSA" means the Maximum Settlement Amount, less all of the following amounts, which are subject to approval by the Court:

A. Attorneys' Fees and Costs: Class Counsel will apply to the Court for attorneys' fees of up to $1,250,000.00, and reimbursement of actual litigation costs and expenses estimated at $56,000.

B. Class Representative Service Award: Class Counsel will apply to the Court for a Service Award of up to $7,500 to each Plaintiff for their efforts in prosecuting this case. Plaintiff's Service Award will be in addition to any Individual Settlement Payment he receives as a Settlement Class Member.

C. LWDA Payment: Class Counsel will apply to the Court for an allocation of $50,000 towards the PAGA claims in the Lawsuit.  The Settlement Administrator shall pay $37,500 (75% of $50,000) to the California Labor and Workforce Development Agency) no later than fourteen (14) calendar days after the Effective Date.  The other 25%, the amount of $12,500, will be retained in the NSA and distributed to the Class Members.

D. Settlement Administration Costs:  The Settlement Administration Costs refer to the fees and expenses reasonably incurred by the Settlement Administrator to, among other things, distribute notice packets to Class Members, process requests for exclusion and Notices of Objection, and distribute payments under the Settlement.  Settlement Administration Costs are estimated to be $36,500.00.

E. Employer-side Payroll Taxes:  The employer's portion of FICA, FUTA, and all other state and federal payroll taxes, estimated to be $37,560.

If the Court grants final approval of the Settlement, the NSA will be paid out entirely, *automatically,* to all Class Members who do not request exclusion from the Settlement ("Settlement Class Members").  Any portion of the NSA that would have been paid to individuals who timely request exclusion from the Settlement will be paid to the

Settlement Class Members who participate in the Settlement. In other words, the entire NSA will be paid to Settlement Class Members, and no portion of the NSA will be returned to TNG under any circumstances.

Each Settlement Class Member's share of the NSA will be based on the number of Compensable Workweeks that he or she worked for TNG in California during the period from April 14, 2012 through October 3, 2019 ("Class Period"), using the following procedure:

- The Settlement Administrator will calculate the number of Compensable Workweeks by calculating the number of shifts each Class Member worked during the Class Period, and then dividing that number by seven (7), and rounding up that amount to the nearest whole number.

- The Settlement Administrator will determine the total, aggregate number of Compensable Workweeks worked by all Class Members.

- Each Class Member's Compensable Workweeks will be divided by the total Compensable Workweeks for all Class Members, resulting in the "Payment Ratio" for each Class Member.

- Each Class Member's Payment Ratio will then be multiplied by the Net Settlement Amount to calculate the gross amount of each Individual Settlement Payment.

Ten percent (10%) of each Individual Settlement Payment will be allocated to the settlement of claims for unpaid wages, and will have withholdings and taxes deducted at each Settlement Class Members' last-reported withholding status; twenty percent (20%) will be allocated to expense reimbursements; and thirty-five percent (35%) will be allocated to the settlement of claims for penalties; and, the remaining thirty-five percent (35%) will be allocated to interest under the California Labor Code. The portion allocated to wages in each Individual Settlement Payment will be reported on an IRS Form W-2, and the portions allocated to interest and penalties will be reported on an IRS Form-1099 by the Settlement Administrator.

## 8.    How much will my Individual Settlement Payment be?

TNG's records show that **you were employed by TNG as a Class Member from <<Start Date>> to <<End Date>> during the Class Period, and worked <<Compensable Workweeks>> Compensable Workweeks** during the Class Period. **Based on this information, your estimated gross Individual Settlement Payment is approximately $<<Estimated Individual Settlement Payment>>**.

This amount is only an estimate. The actual Individual Settlement Payment you receive may be slightly more or less than the estimated amount shown.

## 9.    What do I do if my dates of employment are wrong?

Your dates of employment, and the number of Compensable Workweeks as shown above, were determined based upon TNG's records. If you believe the dates of employment and/or the number of Compensable Workweeks attributed to you are not right, you may send a letter to the Settlement Administrator stating what you believe the right dates are. In order to be considered, you must mail your letter to the Settlement Administrator at the address listed below, in Paragraph 12 of this Notice, postmarked on or before [60 days after initial mailing], 2019. Your dispute must contain: (1) your full name and address; (2) the case name and number (*Jeannette Cooks, et al v. The News Group, Select Media Services, et al*, Case No. 2:16-CV-01160-KJM-AC / 2:16-CV-02113-KJM-AC); (3) a clear statement indicating you wish to dispute the dates of employment and/or number of Compensable Workweeks attributed to you; and (4) the dates of employment and/or number of Compensable Workweeks you contend are correct, together with any supporting documents or information. The Settlement Administrator will resolve any dispute regarding your dates of employment and/or number of Compensable Workweeks based on TNG's records and any information you provide.

## HOW TO GET A PAYMENT

**10.    How do I get my Individual Settlement Payment?**

You do not need to do anything -- you will automatically receive your Individual Settlement Payment after the Court approves the Settlement at a Final Approval Hearing. You must notify the Settlement Administrator of any change or correction in your contact information, or if the information shown in Paragraph 8 regarding your employment with Defendant is not correct. **It is your responsibility to keep the Settlement Administrator informed of any change in your address.  If final approval of the Settlement is granted, your Individual Settlement Payment installments will be mailed to the last known address on file with the Settlement Administrator.**

Settlement Class Members receiving an Individual Settlement Payment will be responsible for correctly characterizing this compensation for tax purposes and paying taxes due, if any.

**11.    What am I giving up to get an Individual Settlement Payment?**

Unless you exclude yourself, you remain in the Class, which means you will not be able to sue, continue to sue, or be part of any other lawsuit against Defendants for the same legal issues in this Action. Specifically, you will be giving up or "releasing" the claims described below:

**Release of Claims**: If the Court approves the Settlement, each Class Member who has not excluded themselves  from the Settlement will be bound by the Settlement, and thereby release Defendants, and their past, present and/or future, direct and/or indirect, officers, directors, members, managers, employees, agents, representatives, attorneys, insurers, partners, investors, shareholders, administrators, parent companies, subsidiaries, affiliates, divisions, predecessors, successors, assigns, and joint venturers, and all persons acting under, by, through, or in concert with any of them, and each of them (the "Released Parties"), from all claims, causes of action and factual or legal theories that were alleged in the Lawsuit, or reasonably could have been alleged based on the facts and legal theories contained in the Lawsuit, including all of the following claims for relief:  (a) failure to pay all regular wages, minimum wages and overtime wages due; (b) failure to provide proper meal periods, and to properly provide premium pay in lieu thereof; (c)  failure to provide proper rest periods, and to properly provide premium pay in lieu thereof; (d) failure to reimburse business expenses; (e) failure to provide complete, accurate or properly formatted wage statements; (f) waiting time penalties that could have been premised on the claims, causes of action or legal theories of relief described above or any of the claims, causes of action or legal theories of relief pleaded in the operative complaint; (g) unfair business practices that could have been premised on the claims, causes of action or legal theories of relief described above or any of the claims, causes of action or legal theories of relief pleaded in the operative complaint; (h) all claims under the California Labor Code Private Attorneys General Act of 2004 that could have been premised on the claims, causes of action or legal theories described above or any of the claims, causes of action or legal theories of relief pleaded in the operative complaint; (i) any other claims or penalties under the wage and hour laws pleaded in the Action; and (j) all damages, penalties, interest and other amounts recoverable under said claims, causes of action or legal theories of relief (collectively, the "Released Claims").   The period of the Release shall extend to the limits of the Covered Period.  The res judicata effect of the Judgment will be the same as that of the Release.  The definition of Released Claims shall not be limited in any way by the possibility that Plaintiffs or Settlement Class Members may discover new facts or legal theories or legal arguments not alleged in the operative complaint but which might serve as an alternative basis for pursuing the same claims, causes of action, or legal theories of relief falling within the definition of Released Claims.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

**12.    How do I exclude myself from the Settlement?**

If you want to retain the right to pursue claims related to this case against the Defendants and/or you do NOT want a payment from this Settlement, then you must exclude yourself. Excluding yourself is also referred to as "opting-out." If you exclude yourself, you will not receive money from this settlement.

The request for exclusion must contain: (1) your name, address, telephone number, and the last four digits of your Social Security Number or your full Employee ID Number; (2) your signature or the signature of your legal representative; (3) the case name and number (*Jeannette Cooks, et al v. The News Group, Select Media Services, et al*, Case No. 2:16-CV-01160-KJM-AC / 2:16-CV-02113-KJM-AC); and (4) a clear statement that you wish to exclude yourself from the Settlement.

To be timely, any request for exclusion must be mailed or faxed to the Settlement Administrator, postmarked or fax-stamped on or before [Response Deadline], to the following address or fax number:

TNG Class Action Settlement
[Settlement Administrator]
[Address]
[Fax Number]

Requests for exclusion which are postmarked or fax-stamped after the Response Deadline may not be accepted.

**13.    If I don't exclude myself, can I sue TNG for the same thing later?**

No. Unless you exclude yourself, you give up any right to sue TNG for the claims that this Settlement covers, for the period from April 14, 2012 through October 3, 2019. *If you have a pending lawsuit, speak to your lawyer in that case immediately*. You must exclude yourself from this Class to continue your own lawsuit.

**OBJECTING TO THE SETTLEMENT**

**14.    How do I tell the Court that I don't like the Settlement?**

If you do not think the Settlement is fair, you can object to the Settlement and tell the Court that you do not agree with the Settlement or some part of it. The Court will consider your views when deciding whether to grant final approval of the Settlement. This is the process to tell the Court if you think the Settlement as a whole is unfair.  If you only think your Settlement Payment was miscalculated, use the process in Paragraph 9 of this Notice.

To object to the Settlement, you may file a written objection with the Court or you may attend and speak at the Final Approval Hearing. The Court will consider all objections in deciding whether to approve the Settlement.  All written objections should (a) reference the case name and number (*Jeannette Cooks, et al v. The News Group, Select Media Services, et al*, Case No. 2:16-CV-01160-KJM-AC / 2:16-CV-02113-KJM-AC); (b) explain the basis for the objection, (c) include the last four digits of your Social Security number and/or Employee ID number (your Social Security number will be redacted before an objection becomes part of the public record); and (d) be signed by you. Written objections must be filed with the Clerk of the Court no later than [Response Deadline] at: Robert T. Matsui United States Courthouse, 501 I Street, Courtroom 3, 15th Floor, Sacramento, CA 95814.

**15.    What is the difference between objecting and being excluded?**

Objecting is telling the Court that you do not like something about the Settlement. You may only object if you remain a Settlement Class Member. Excluding yourself is telling the Court that you do not want to be a Settlement Class Member. If you exclude yourself, you cannot object.

**THE COURT'S FINAL APPROVAL HEARING**

**16.    When and where will the Court decide whether to approve the Settlement?**

The Court will hold a Final Approval Hearing before Judge Kimberly J. Mueller of the United States District Court Eastern District of California, Court Room 3, 15th Floor, 501 I Street, Sacramento, CA 95814 on [Date], at [Time]. At this hearing, the Court will determine whether the Settlement should be finally approved as fair, reasonable, and adequate. The Court will also be asked to approve Class Counsel's request for attorneys' fees and costs, the Class

EXHIBIT A, PAGE 38

Representative Service Award, the allocation for PAGA penalties, and the Settlement Administration Costs. The Court may reschedule the Final Approval Hearing without further notice to Class Members

**17.**    **Do I have to come to the hearing?**

You are not required to attend the Final Approval Hearing, but you or your lawyer may attend if you choose. If you are a participating class member and you wish to speak or have your lawyer speak for you, you may do so. Please visit http://www.caed.uscourts.gov/caednew/ and select the court calendar for Judge Mueller to see whether the Final Approval Hearing will be held on [scheduled date] or has been rescheduled to a new hearing date.

| GETTING MORE INFORMATION |
|---|

**18.**    **Who may I contact if I have questions about the Settlement?**

If you have any questions about the Settlement, you may contact Class Counsel at the address or telephone number listed in Paragraph 6 of this Notice. You may also contact the Settlement Administrator by calling toll free 1-[telephone number], or by writing to the Settlement Administrator at the address shown in Paragraph 12, above.

If you would like to review relevant documents, including the settlement agreement and other Court-filed documents, please visit the website *www.TNGClassActionSettlement.com*. Documents may also be reviewed during regular office hours, 9:00 a.m. to 4:00 p.m., Monday through Friday, at the Office of the Clerk, Room 4-200, at the address shown in Paragraph 16.

**PLEASE <u>DO NOT</u> CONTACT THE CLERK OF THE COURT, THE JUDGE, OR TNG MANAGERS, SUPERVISORS, OR THEIR ATTORNEYS FOR INFORMATION.** (<u>Note</u>: You may contact the attorneys identified as "Class Counsel" in Paragraph 6 of this Notice).

| ADDITIONAL IMPORTANT INFORMATION |
|---|

**19.**    **TNG supports the Settlement and will not retaliate in any manner whatsoever** against any Class Member, whether they choose to stay in the Class as a Settlement Class Member and receive an Individual Settlement Payment, or request to be excluded from the Settlement, or object to the Settlement.

**20.**    **It is your responsibility to ensure that the Settlement Administrator has your current mailing address and telephone number on file,** as this will be the address to which your Individual Settlement Payment installments will be sent.

**21.**    **Individual Settlement Payment checks must be cashed soon after receipt**.  Individual Settlement Payment checks that remain uncashed 180 calendar days after the date of issuance will be voided, and the funds represented by any such uncashed checks shall be distributed 50% to No Kid Hungry, a non-profit providing child hunger relief programs and 50% to Legal Aid at Work, a non-profit group providing legal advice and representation to workers.  If your check is lost or misplaced, you should contact the Settlement Administrator immediately to request a replacement.

# EXHIBIT 2

*Cooks, et al., v. TNG, GP, et al.*
United States District Court, Eastern District of California
Case No. 2:16: CV-01160-KJM-AC

## <u>CHANGE OF ADDRESS FORM</u>

«BarcodeString»
SIMID  «SIMID»
**ATTN:** «FirstName» «LastName»
«Address1» «Address2»
«City» «Abbrev»  «Zip»

*If the contact information that is listed here for you needs to be updated or corrected, please inform the Settlement Administrator immediately.*

I wish to change my name and/or mailing address and/or other contact information to the following:

Name:_____

Former Name (if applicable):_____

Street and Apt. No., if any:_____

City, State and Zip Code:_____

Telephone(s): (Home):_____; (Cell):_____

Email:_____

I understand all future correspondence in this Lawsuit, including important notices or Settlement Payments, will be sent to the address shown above and not to the address previously used.  I hereby request and consent to the use of the address listed above for these purposes.

Submitted by:

DATED: _____, 201__          Print Name:  _____

Signature:  _____

## PLEASE RETURN THIS FORM IN THE ENVELOPE PROVIDED
## VIA UNITED STATES FIRST-CLASS MAIL TO:

TNG, GP Class Action Settlement Administrator
c/o CPT Group, Inc.
P. O. Box ___
Irvine, California ____

EXHIBIT A, PAGE 41

# EXHIBIT B

# COHELAN KHOURY & SINGER

A PARTNERSHIP OF PROFESSIONAL LAW CORPORATIONS

TIMOTHY D. COHELAN, * APLC
ISAM C. KHOURY, APC
DIANA M. KHOURY, APC
MICHAEL D. SINGER, •APLC

(*Also admitted in the District of Columbia)
(•Also admitted in Colorado)

ATTORNEYS AT LAW

605 "C" STREET, SUITE 200
SAN DIEGO, CALIFORNIA 92101-5305
Telephone: (619) 595-3001
Facsimile: (619) 595-3000
www.ckslaw.com

JEFF GERACI Δ
J. JASON HILL†
MARTA MANUS
KRISTINA DE LA ROSA

(† Also admitted in Illinois)
(Δ Of Counsel)

**TIMOTHY D. COHELAN** and **ISAM C. KHOURY** are the founding partners of **COHELAN KHOURY & SINGER**, a civil litigation firm established in 1981. Since 1987, Cohelan Khoury & Singer has specialized in class action cases and has been certified as class counsel and lead counsel in numerous state and federal court cases throughout the United States. The firm has successfully prosecuted well over 150 class action cases representing diverse groups of victims, including urban homeless entitled to emergency shelter; victims of a national health insurance fraud scheme; retirees entitled to pension benefits; defrauded investors; consumers; and workers entitled to back wages. Cohelan Khoury & Singer's diverse practice currently includes representation of, among others, employees contesting wage and hour violations as well as consumers battling unfair business practices.

Cohelan Khoury & Singer has a broad array of experience in prosecuting class action cases. The firm has successfully achieved a landmark California Supreme Court reversal of a court of appeal reversal of a trial court grant of certification affecting over 100,000 workers in *Brinker Restaurant Corp. v. Super. Ct.* (2012) 53 Cal.4th 1004, as well as a groundbreaking reversal of a class certification denial in *Hicks v. Kaufman and Broad* (2001) 89 Cal.App.4th 908. Cohelan Khoury & Singer has also achieved statewide recognition for pro bono public interest work including successful cases prosecuted on behalf of homeless persons in *Hoffmaster v. City of San Diego* (1997) 55 Cal.App.4th 1098.

Cohelan Khoury & Singer's public interest work has been recognized in numerous cases including that of United States District Court Judge Milton Pollack, a Senior United States District Court Judge for the Southern District of New York, who has publicly stated that he had "seen no similar indication of a public service rendered by any group of lawyers in all the years I have practiced law myself, which is for 38, or the 27 years that I have been on the bench." Judge Pollack's comments came in connection with a class action case brought on behalf of thousands of victims of health insurance fraud across the nation.

The firm has substantial trial experience in class action, representative, and complex litigation, as well as individual matters. Cohelan Khoury & Singer is one of a handful of firms to have tried class action wage and hour cases, including an independent contractor misclassification action on behalf of newspaper carriers against the Orange County Register and an action for unpaid wages, wage deductions, and expense

EXHIBIT B, PAGE 1

reimbursements on behalf of a certified class of truckers and appliance installation helpers. The firm also tried to judgment a certified case against the State of Hawaii Child Support Enforcement Agency for wrongful retention of child support monies. The agency was ordered to conduct an accounting and pay the funds to the custodial parents. The firm has also represented large numbers of individuals collectively for construction defect claims and major investment frauds, recovering monies related to cracked slab foundations and defrauded investors of Ponzi schemes.

Cohelan Khoury & Singer has certified classes in heavily contested hearings against the following entities:

1. Atlantic Richfield Corporation, Chevron Corporation, Exxon Corporation, Mobil Oil Corporation, Shell Oil Company, Texaco, Inc., Tosco Corporation, Ultramar Corporation, and Unocal Corporation
2. Empire Blue Cross/Blue Shield
3. Pioneer Mortgage
4. Liebert Corporation
5. PaineWebber, Inc.
6. Dayton Hudson Corp.
7. Chartwell Financial
8. Cal Fed, Inc.
9. Jones, American Thrift
10. Service Technicians, Inc.
11. Kaufman & Broad
12. Washington Mutual Bank
13. Albertson's, Inc.
14. Wells Fargo Home Mortgage, Inc.
15. Brinker Restaurant Corporation
16. FedEx Ground Package System
17. Ethan Allen, Inc.
18. State of Hawaii Child Support Enforcement Agency
19. Victoria Apartments
20. AT&T Wireless Services, Inc.
21. Farmers Insurance Company
22. City of San Diego
23. Lewis Homes of California
24. Freedom Communications, Inc. d/b/a The Orange County Register
25. California Pizza Kitchen
26. Raytheon Company
27. Les Schwab Tire Centers of California, Inc.
28. Catholic Healthcare West
29. Kaiser Foundation Hospitals
30. Penske Logistics and Penske Truck Leasing
31. Conair
32. Container Connection of Southern California
33. Ashley Furniture/Stoneledge Furniture
34. Save Mart Supermarkets
35. PICO Enterprises, Inc. dba Phyle Inventory Control Specialist and PICS
36. Certified Class Counsel well over 100 settlement classes

2

Cohelan Khoury & Singer has obtained numerous verdicts, judgments, or settlements since September 1993. Listed below are examples of cases the firm has played a central role in the resolution of and which have received final approval by the Court:

- *Bennett v. Countrywide*, San Diego Superior Court, Case No. GIC840981 [expense reimbursement claim by commission employees];
- *Evans v. Washington Mutual Bank*, Orange County Superior Court Case No. 02CC15415 [expense reimbursement and wage deduction claim by commission employees];
- *Gonzalez, et al. v. Freedom Communications, Inc. d/b/a The Orange County Register*, Orange County Superior Court Case No. 03CC08756 [home delivery carriers misclassified as "independent contractors"];
- *Aravena v. Cisco Systems, Inc.*, Orange County Superior Court Case No. 07CC01367 [OT misclassification claim by IT employees];
- *Venturini v. Genentech, Inc.*, San Francisco Superior Court Case No. CGC-09-492494 [OT misclassification claim by IT employees];
- *Durrani v. Western Digital Corporation, et al.*, Orange County Superior Court Case No. 30-2009-00268212 [OT misclassification claim by IT Employees];
- *Watson v. Raytheon Company*, United States District Court, Southern District of California Case No. 10CV0634 [Ot misclassification claim by IT employees];
- *Bills v. Sutter Health*, Alameda Superior Court Case No. RG09465894 [Ot misclassification claim by IT employees];
- *Smith v. California Pizza Kitchen*, San Diego Superior Court Case No. 37-2008-00083992 [OT misclassification claims by managers and assistant managers];
- *Dunn v. The Kroger Company, et al.*, Los Angeles Superior Court Case No. Case No. BC323252 [meal and rest break claims];
- *Gallen v. Gambro Healthcare, Inc.*, Orange County Superior Court Case No. 04CC00571 [OT claims by nurses];
- *Hohnbaum, et al. v. Brinker Restaurant Corp.*, San Diego Superior Court Case No. GIC834348 [meal and rest break claims];
- *Liberty Mutual Overtime Cases*, Los Angeles Superior Court Case No. J.C.C.P. 4234 [OT misclassification of Insurance Claims Handlers];
- *Leisinger-Reed, et al. v. Equinox Holdings, Inc., et al*., Los Angeles Superior Court Case No. BC481860 [unpaid wages, and meal and rest break claims by massage therapists, estheticians, and nail technicians];
- *Rite Aid Wage and Hour Cases*, Los Angeles Superior Court Case No. J.C.C.P. 4583 [OT, Meal and Rest Period Claims by Pharmacists]
- *Djukich v. Carwell, LLC*, Unites States District Court, Central District of California Case No. 13CV4455 BRO [unpaid wages claims by automotive technicians];

3

- *Laureano, Jr. et al. v. The Art of Shaving-FL, LLC*, Los Angeles Superior Court Case No. BC550093 [meal and rest break and overtime claims by non-exempt employees];
- *Martinez v. Alameda Health System*, Alameda Superior Court Case No. RG14719205 [unpaid wages by non-exempt employees];
- *Freeman v. Coast to Coast Manpower, LLC*, Los Angeles Superior Court Case No. BC543709 [unpaid wages, meal and rest break, and vacation pay claims by truck drivers];
- *Morales v. The Los Angeles Country Club*, Los Angeles Superior Court Case No. BC566493 [unpaid wages, meal and rest break, reporting and split shift pay, expense reimbursement and improper wage deductions claims by non-exempt employees];
- *Bradley v. Safe Haven Security Services, Inc.*, San Diego Superior Court Case No. 37-2015-00019576-CU-OE-CTL [expense reimbursement and wage statement claims by Sales Representatives]; and
- *Czuchaj, et al. v. Conair Corporation,* United States District Court, Southern District of California Case No. 13CV1901 BEN (RBB) [implied warranty of merchantability of certain models of hair dryers], among others.

**TIMOTHY D. COHELAN**, Founding Partner, author of *Cohelan on California Class Actions* (Thomson Reuters, 1997-2019, updated annually), is the son of the late Jeffery Cohelan, former California Congressman. He is a 1974 graduate of California Western School of Law, where he was a law review editor. Mr. Cohelan served as an Officer in the U.S. Navy from 1968 to 1971 and received a B.A. from the University of Arizona in 1967. Mr. Cohelan was admitted to the State Bar of California in 1974, and was admitted to the Bar in the District of Columbia in 1996. He also served as the Chairman of the San Diego Coast Regional Commission from 1978 to 1981. From 1982 to 2006, Mr. Cohelan served the San Diego Superior Court as a Judge Pro Tem, hearing and ruling on hundreds of matters during his service.

Timothy Cohelan was named a "California Lawyer of the Year" by California Lawyer Magazine (Clay Award) in 1996. Mr. Cohelan's memberships include former member of the Board of Governors of the Association of Business Trial Lawyers for San Diego County, member of the American Bar Association and the Consumer Attorneys of California and San Diego County Bar Association. His main areas of practice include class action, civil, wage and hour and antitrust cases.

Mr. Cohelan served as the Chair of San Diego Volunteer Lawyer Program, a non-profit successor of Legal Aid, from 2015 through 2018 and currently sits on the Board as past Chair. As an advocate for the homeless, Mr. Cohelan received San Diego County Bar Association honors for community service in connection with his work on behalf of SDVLP on an important class action case impacting homeless shelter locations.

4

**ISAM C. KHOURY,** Founding Partner, is a 1970 graduate of the University of California at San Diego and received a law degree from Hastings School of Law in 1973. Mr. Khoury is a member of the State Bar of California, admitted in 1974, the San Diego County Bar Association, Consumer Attorneys of San Diego and Consumer Attorneys of California. He has successfully litigated numerous complex civil matters to verdict, jury and non-jury. His main areas of practice include civil tort litigation, personal injury, business torts, antitrust and class action cases.

In recent years, Mr. Khoury has emphasized wage and hour class action matters having assisted in the litigation to judgement or settlement of over 150 wage and hour class actions. The Southern California Super Lawyers Magazine has selected Mr. Khoury as a southern California/San Diego Super lawyer for the years 2011 through 2017. He has been approved as a CLE lecturer and has participated in seminars on class action wage and hour issues, the complexities of mediation, and the procedural requirements involved in class action settlements. He has argued appeals and been co-counsel in several matters of major import including California Supreme Court decisions including the *Brinker* decision clarifying California meal and rest break requirements and *Harris v Liberty Mutual* which defined parameters for the use of the administrative exemption.

**MICHAEL D. SINGER**, Managing Partner, is a 1984 graduate of U.C. Hastings Law School. He graduated magna cum laude from San Francisco State University in 1980 with a B.A. in English. He was admitted to the State Bar of California in 1984 and the State Bar of Colorado in 2001. For over thirteen years, he served as co-chair and liaison to the California Employment Lawyers Association (CELA). He is a member of the San Diego County Bar Association. He is the author of the opening chapter overview on California wage and hour law and PAGA Claim chapter in *California Wage and Hour Law: Compliance and Litigation* (CEB 2010-2019). He was named to the Daily Journal 2012, 2013 and 2018 list of the Top California Labor and Employment Attorneys. Mr. Singer serves on the Legal Aid at Work Board of Directors. His main areas of practice include employment wage and hour, consumer, and unfair competition class actions and appellate practice.

Mr. Singer regularly contributes amicus curiae briefs on class action and employment issues in the California Supreme Court and Courts of Appeal. In his capacity as Amicus lesion for CELA, he coordinated, drafted or co-drafted amicus letters and briefs on a wide range of labor law issues in the rapidly developing decisional law, supporting Review in the Supreme Court, and publication or depublication of Court of Appeal decisions in the following cases since January 1, 2008: *Chindarah v. Pick up Stix*, 171 Cal. App. 4th 796 (2009), California Superior Court Case No. S171864 [regarding propriety under Labor Code section 206.5 and California Rules of Court of settling with absent class members without court supervision prior to class certification] (Supporting Petition for Review; Review Denied); *Lu v Hawaiian Gardens Casino*, California Supreme Court Case No. S171442 [whether a private cause of action exists under the Labor Code for tip pooling

violations](Review Granted); *Brinkley v Public Storage*, 198 P.3d 1087 (2009), California Supreme Court Case No. S168806 [denying class certification of rest and meal period claims](Review Granted); *Estrada v. Fedex Ground Package System*, 154 Cal. App. 4th 1 (2007), California Supreme Court Case No. S156595 [judgment finding drivers entitled to expense reimbursement] (supporting opposition to Review; Review denied); *Group Brewer v Premier Golf*, 168 Cal. App. 4th 1243 (2008), California Supreme Court Case No. 169666 [holding punitive damages unavailable in connection with wage claims] (supporting Petition for Review; Review Denied); *Christler v. Express Messenger*, California Supreme Court Case No. S171439 [jury verdict finding employees independent contractors] (supporting Petition for Review; Review Denied); *Watkins v. Wachovia*, 172 Cal. App. 4th 1576 (2009), California Court of Appeal Case No. B199982 [affirming dismissal of appeal following denial of class certification based on employee severance agreement resolving claims] (depublication request pending); *Ghazaryan v. Diva Limousine*, 169 Cal. App. 4th 1524 (2008), California Court of Appeal Case No. B201509 [reversing class certification denial] (publication request granted); *Bufil v Dollar Financial Group*, 162 Cal. App. 4th 1193 (2008), California Court of Appeal Case No. A118143 [reversing certification denial of meal period claims applying collateral estoppels] (publication request granted); *Kurian v. U.S. Mortgage Capital*, California Court of Appeal Case No. B201013 [regarding propriety of wage compromises under Labor Code section 206.5] (publication request denied); *BCBG Overtime Cases*, 163 Cal. App. 4th 1293 (2008), California Supreme Court Case No. S165348 [propriety of defendant bringing preemptive motion to deny class certification] (depublication request denied); *Kenny v Supercuts*, 252 F.R.D. 641 (2008), United State District Court Case No. C 06-07521 CRB; *Salazar v Avis*, 251 F.R.D. 529 (2008), United State District Court Case No. 07-CV-0064-IEG-WMC [denying certification of rest and meal period claims] (request that 9th Circuit Court of Appeals certify question to the California Supreme Court denied); and *Methodist Hospital v Superior Court*, California Court of Appeal Case No. B208295 [ruling a private right of action exists for rest and meal period claims under Labor Code section 226.7] (supporting opposition to Petition for Writ; Writ denied), among many others.

Mr. Singer is a contributor to the Los Angeles Daily Journal, having authored articles on the California Court of Appeal decision in *Parris v. Superior Court* regarding communications with absent class members (May, 2003), SB 796 (Dunn, D-Garden Grove), California's Private Attorneys General Law providing employees a private right of action against employers for civil penalties under the Labor Code (October 2003), the California Court of Appeal decision in *Bell v. Farmers Ins. Exch.* and its guidance for the use of statistical sampling and extrapolation to prove aggregate class-wide damages (February 2004), and the then-pending Supreme Court decision regarding Sav-On and Overtime Class Suits.

He is an MCLE lecturer on class action procedure and wage and hour issues and has argued appeals in the Second, Third, and Ninth Federal Circuit Courts of Appeals, as

well as the Second and Fourth California District Courts of Appeal. Published decisions include *Hicks v. Kaufman and Broad Home Corp.* (2001) 89 Cal.App.4th 908 (reversing the denial of certification of a class of home buyers for construction defects); *Hicks v. Superior Court* (2004) 115 Cal.App.4th 77 (challenging implied construction warranty disclaimers); *Federal Home Loan Mortgage Corp. v. La Conchita Ranch Co.* (1998) 68 Cal.App.4th 856 (defending challenge to attorney disqualification); and *Save Our NTC, Inc. v. City of San Diego* (2003) 105 Cal.App.4th 285 (challenging private development of former naval training center). He also contributed to the briefing of *Aguilar v. Atlantic Richfield, et al.* (2001) 25 Cal.4th 826 (summary judgment of antitrust claim of certified class of 20 million California drivers). He is one of the very few attorneys in the State of California to have tried a wage and hour class action involving contested procedures regarding the use of sampled and statistical evidence.

**DIANA M. KHOURY,** Partner, received a law degree from Western State University in 1986 and is a graduate of San Diego State University, where she received her Bachelors of Science degree in 1975. She is a member of the State Bar of California, admitted in 1987. Since admission to the bar, Ms. Khoury has been a member of the San Diego County Bar Association, Consumer Attorneys of San Diego, Consumer Attorneys of California, American Bar Association and the American Association of Justice. From 2010 through 2016, Ms. Khoury served on the Board of Directors for Consumer Attorneys of San Diego. Since 2013, Ms. Khoury has served on the Board of Directors for the San Diego County Bar Foundation, ("SDCBF"), the 501(c) (3) charitable arm of the San Diego County Bar Association. Ms. Khoury has been selected by her peers based on ethics, experience and reputation as a "Super Lawyer" in Civil Litigation from 2010 through the present by the Southern California Super Lawyers Magazine, and is also AV-Preeminent rated by Martindale –Hubbell, the highest possible rating for a lawyer.

Upon being admitted to the State Bar of California, a major focus of Ms. Khoury's practice has been on consumer rights litigation, and has included civil tort litigation, personal injury, and business torts. Throughout her career, she has taken numerous jury trials to verdict. She has been a lecturer for Mandatory Continuing Legal Education regarding class actions. Ms. Khoury currently represents employees in wage and hour class actions, where her recognized specialty is class action resolution.

**JEFF GERACI,** Partner, is a 1982 graduate of Pitzer College with a degree in Sociology. He is a 1990 graduate of the University of San Diego School of Law, and has practiced employment law for over seventeen years. He has handled matters in California state and federal trial and appellate courts, and before many administrative agencies, including the California Division of Labor Standards Enforcement, the Department of Fair Employment and Housing, the Equal Employment Opportunity Commission, the California State Personnel Board, the California Board of Psychology, and the California State Commission for Teacher Credentialing.

EXHIBIT B, PAGE 7

Mr. Geraci has provided counseling and representation in all areas of employment law, including wrongful termination, employment discrimination, sexual harassment, and wage and hour laws. His practice is now focused on class actions, including wage and hour class action litigation and consumer actions.

Mr. Geraci's published decisions include *McAlindin v. County of San Diego* (1999) 192 F.3d 1226 [reversing summary judgment in a disability discrimination case] and *Araiza v. National Steel and Shipbuilding* (S.D. Cal. 1997) 973 F. Supp. 963 [denying mandatory arbitration of employment claims under a collective arbitration agreement].

Mr. Geraci is a member of the Labor and Employment Law sections of the California and San Diego County Bar Associations, and has served as Editor of the Employment Law column for the Consumer Attorneys of San Diego monthly publication, *Trial Bar News*. He is a past recipient of the Wiley W. Manuel Award for Pro Bono Service.

**J. JASON HILL**, Partner, is a 1992 graduate of the University of Illinois at Urbana-Champaign and holds a B.A. in Philosophy, Political Science and Communications. In 1995, he received his J.D. degree from California Western School of Law, where he was a member of the Law Review an International Law Journal, as well as editor of the Telecommunications Law Forum. Currently, Mr. Hill is admitted to the bar in both California and Illinois, and is a broker licensed by the California Department of Real Estate. He maintains memberships not only with the San Diego County Bar Association, but also the National Association of Realtors, the California Association of Realtors and the San Diego Association of Realtors.

Prior to joining Cohelan Khoury & Singer, Hill represented large institutional clients in a variety of civil litigation settings, including insurance coverage, employment law, health care law, general and professional liability, as well as, premises and product liability claims. He has particular emphasis on all aspects of professional liability claims in a healthcare setting, as well as claims brought pursuant to the Emergency Medical Treatment and Active Labor Act (EMTALA) and the Elder Abuse and Dependent Adult Civil Protections Act (EADACPA). Mr. Hill is also an accomplished appellate practitioner and has briefed and/or argued over 40 matters in both state and federal courts of appeal, yielding several published decisions on a range of legal issues.

**MARTA MANUS**, Attorney, is a 2008 graduate of California Western School of Law. She graduated with honors and received a Bachelor of Arts in Psychology from California State University Northridge. Ms. Manus has been a member of the State Bar of California since her admission in December 2008. She has practiced before all District Courts in the state of California as well as the Fourth District Court of Appeal and the U.S. Court of Appeals for the Ninth Circuit.

Ms. Manus has been successfully litigating employment law cases for nearly a decade, representing employees in all aspects of labor and employment law matters, including employment discrimination, wrongful termination, retaliation, and wage and hour class action lawsuits. Her practice focuses primarily on employee-side wage and hour class actions. Ms. Manus is a member of the Labor and Employment Law sections of the California and San Diego Bar Associations as well as the Federal Bar Association. Ms. Manus was recognized by San Diego Super Lawyers as a Rising Star in 2015, 2016, and 2017.

**KRISTINA DE LA ROSA**, Attorney, was born and raised in San Diego. She graduated from UC San Diego in 2006 with a B.A. in Psychology, where she was also a 4- year member of the Women's NCAA intercollegiate soccer team. She received her law degree from Santa Clara Law School in 2011 and was admitted to the California State Bar in the same year.

During law school, she interned for Equal Rights Advocates, the ACLU of Southern California, and externed for the Hon. John F. Herlihy (Ret.). She volunteered for the Katherine and George Alexander Community Law Center Workers' Rights workshops and earned the Witkin Award for Excellence and the Richard S. Rosenberg Prize for Excellence in Labor Law. Immediately after passing the bar, she began representing employees in class action wage and hour litigation. She also volunteered for the California Rural Legal Assistance, Inc., assisting farm workers with filing wage and worker's compensation claims. Ms. De La Rosa remains committed to protecting employee rights and represents employees and consumers in class and collective actions across California, helping them recover millions of dollars in unpaid wages, restitution and penalties. Ms. De La Rosa is a member of CELA.

EXHIBIT B, PAGE 9