1
2
3
4
5
6
7
8                    UNITED STATES DISTRICT COURT

9               FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JEANNETTE COOKS, et al.,                    No.  2:16–cv–01160-KJM-AC

12                      Plaintiffs,              No.  2:16–cv–02113-KJM-AC

13          v.                                   ORDER

14   TNG GP, et al.,

15                      Defendants.

16

17

18          On February 7, 2020, the court heard argument on plaintiffs' unopposed motion

19   for an order preliminarily approving a class settlement and provisionally certifying the settlement

20   class.  ECF No. 68.  Jeff Geraci appeared for plaintiffs.  Michael Nader appeared for defendants.

21   After carefully considering the parties' submissions and the applicable law, the court GRANTS

22   plaintiffs' motion for the reasons set forth below.

23   I.      BACKGROUND

24          A.  Factual and Procedural Background

25          This lawsuit arises out of defendants' alleged failure to "pay for all hours worked

26   resulting in failure to pay all hourly and overtime wages owed, failure to provide accurate

27   itemized wage statements, failure to timely pay all wages to separated employees, failure to

28   /////

                                          1

1  reimburse for all business-related expenses, and failure to provide compliant meal and rest

2  periods or compensation in lieu of missed breaks."  First Am. Compl. ("FAC") ¶ 1, ECF No. 45.

3           Defendants TNG GP, The News Group, Inc., The News Group, L.P., and Select

4  Media Services, LLC provide merchandising services to California retailers such as Best Buy,

5  CVS, Target and Wal-Mart.  *Id.* ¶ 16.  Plaintiffs Jeanette Cooks, Alwena Frazier and Audrey

6  Brown were non-exempt, hourly paid employees of defendants who provided such merchandising

7  services.  Decl. of Jeannette Cooks ("Cooks Decl.") ¶¶ 3–4, ECF No. 63-6; Decl. of Alwena

8  Frazier ("Frazier Decl.") ¶ 3, ECF No. 63-7; Decl. of Audrey Brown ("Brown Decl.") ¶ 1, ECF

9  No. 63-8.  Their duties included setting up promotional displays and restocking products such as

10  greeting cards, books, magazines, candy and snacks.  Mem P. & A. at 1, ECF No. 63-1.  The

11  complaint alleges TNG[1] required merchandisers to clock out from work when leaving one store,

12  drive to the next store, and clock back in at the next store.  FAC ¶ 19.  Merchandisers were

13  allegedly not paid for this time driving between stores.  *Id.*  TNG also required merchandisers to

14  complete online surveys relating to the stores they serviced, use their personal cell phones to

15  document their work and communicate with TNG about their assignments while clocked out, all

16  uncompensated.  *Id.* ¶ 20.

17           Jeannette Cooks and Alwena Frazier filed a class action complaint against TNG

18  and the related corporate entities in Solano County Superior Court in 2016 for failure to (1) pay

19  hourly and overtime wages, (2) reimburse business expenses, (3) provide accurate and itemized

20  wage statements, (4) timely pay all wages due at termination, and (5) for violations of the

21  California Unfair Competition Law.  *Cooks v. TNG GP et al.*, Solano Cty. Sup. Ct. Case No.

22  FCS046906 (April 14, 2016); Not. Removal, ECF No. 1.  Cooks and Frazier also filed a separate

23  Private Attorneys General Act ("PAGA") complaint based on the same claims in Solano County

24  Superior Court.  Defendant TNG removed both claims to federal court based on diversity of

25  citizenship.  Not. Removal, ECF No. 1; Not. Removal, No. 2:16-cv-2113-KJM-AC, ECF No. 1.

26

---

27  [1] At hearing, counsel agreed the proper defendant was Select Media Services, LLC.  The court refers to defendants collectively in this motion as TNG in accordance with the parties'

28  convention.

2

1           The parties identified a case with similar class claims by Audrey Brown against

2    TNG that had been filed in Sacramento County Superior Court, *Brown v. Select Media Services.*

3    *et al.*  TNG removed that case as well.  No. 2:16-cv-03036-KJM-AC.

4           The court deemed all three cases related and consolidated under the above caption.

5    ECF Nos. 37, 43.  On August 8, 2018, the parties filed the First Amended Complaint adding

6    Brown as a plaintiff and claims for meal and rest period violations.  *See generally* FAC.  The

7    separate *Brown* case was dismissed and Brown joined with plaintiffs in this case.

8           The putative class is all current and former hourly non-exempt employees who

9    worked for TNG as merchandisers in California any time from April 12, 2012 to October 3, 2019.

10   Declaration of Michael D. Singer ("Singer Decl.") ¶ 22, ECF No. 63-2.  After the *Cooks* cases

11   were removed to this court, the parties exchanged extensive written discovery and engaged in

12   document production allowing plaintiffs to prepare a damages model.  Singer Decl. ¶ 18.  The

13   parties attended a full day mediation on March 28, 2017, but were unable to resolve the case.

14   They exchanged demands and offers for seven months thereafter but ultimately decided to litigate

15   further.  *Id.*

16          After further discovery, including plaintiffs' deposition of defendant Select Media

17   Services' Regional Vice President, the parties again participated in mediation on May 30, 2019.

18   The mediator was Louis M. Marlin, a JAMS mediator with extensive wage and hour class action

19   experience. *Id.* ¶ 19.  The parties still did not reach agreement by the end of the mediation but

20   continued to work with the mediator and came to an agreement on June 6, 2019.  *Id.*  After

21   reaching an agreement in principle, the parties negotiated the terms of the written settlement

22   agreement until finalizing it in October 2019.  *Id.* ¶ 20; *see also* Joint Stipulation of Class Action

23   and PAGA Settlement ("Settlement"), Singer Decl., ECF No. 63-2, Ex. A.  Plaintiffs' counsel

24   declares the negotiations "were prolonged and intense and, at all times at arm's length."  Singer

25   Decl. ¶ 20.

26   /////

27   /////

28   /////

3

B. <u>Settlement Agreement</u>

1. <u>Proposed Class</u>

Plaintiffs' proposed class is defined as all current and former hourly non-exempt employees who worked for one of the named defendants as merchandisers in California at any time from April 14, 2012 through October 3, 2019.  Mem. P. & A. at 1; Singer Decl. ¶ 22; Settlement § I.C.  At hearing, counsel confirmed all class members were employed by Select Media Services, LLC.  The complaint also seeks certification of several subclasses.  *See* FAC ¶ 22.  At hearing, the court inquired why the plaintiffs were not moving for certification of these subclasses and ordered supplemental briefing on this point.  Counsel provided supplemental briefing, clarifying that class members were employed in a single position subject to identical policies.  Suppl. Br., ECF No. 70.  Plaintiffs' counsel represents there are 4,347 putative class members who worked an aggregate 999,358 shifts during the applicable period.  Singer Decl. ¶ 22, 36.

2. <u>Proposed Settlement Amount and Distribution</u>

Under the Agreement, defendants will pay up to a Maximum Settlement Amount ("MSA") of $3,750,000.  Mem. P. & A. at 4; Singer Decl. ¶ 21; Settlement § I.U.  No part of the settlement reverts to defendants under any circumstances.  Settlement § III.A.  The settlement proposes the following deductions from the MSA: (a) attorney's fees of up to $1,250,000, no more than one-third of the actual settlement; (b) class counsel litigation expenses, estimated at $56,000; (c) payments of $7,500 to each of the three named plaintiffs; (d) an estimated $36,500 in administration fees to the settlement administrator; (e) employer-side payroll taxes estimated at $37,500; and (f) payment to the California Labor and Workplace Development Agency of $37,500 (75% of $50,000) for PAGA civil penalties.  Singer Decl. ¶ 21; Settlement ¶¶ I.E., I.P., I.U. and II.O.

Plaintiffs estimate the remaining Net Settlement Amount ("NSA") at $2,309,940.  The NSA will be distributed to participating class members based on the number of compensable workweeks each class member worked.  Singer Decl. ¶ 23.  The total compensable workweeks is calculated by taking the number of shifts each class member worked during the applicable period,

4

dividing by seven, and rounding up to the nearest whole number.  Settlement ¶ I.I.  Movants state the total number of shifts each class member worked is readily available from TNG's records.  Singer Decl. ¶ 24.

Following final approval, each class member who did not request exclusion will be mailed their share of the NSA, without the need to submit a claim form.  *Id.* ¶ 25.  As noted, the settlement is non-reversionary.  Settlement § III.A.  Movants propose that after 180 days, 50 percent of uncashed settlement payments be sent to Legal Aid at Work, a California non-profit group providing legal aid to workers in California, and 50 percent be sent to No Kid Hungry, a non-profit organization providing child hunger relief programs.  Singer Decl. ¶ 26; Settlement ¶ III.O.2.e.

### 3.  Proposed Class Notice

The movants propose using a third-party settlement administrator, CPT Group, Inc. ("CPT"), who will update addresses of class members using the National Change of Address database, then mail a Notice of Class Action Settlement ("Notice"), change of address form and a pre-printed return envelope to each member of the class.  Singer Decl. ¶ 27.

The proposed Notice advises the members of the class of the right, manner and timing to: (1) participate in the settlement without submitting a claim; (2) exclude themselves from the settlement; (3) object to the settlement; and (4) dispute the information upon which their individual settlement payment is based.  Singer Decl., Ex. 1, Proposed Notice.  The Notice informs each class member of the estimated amount of their individual payment, that the administrator must have a current address to send the payment, the release of claims to be given, the date set for a final approval hearing and how to obtain additional information, including through CPT's toll-free number and website.  *Id.*

II.     STANDARDS AND PROCESS FOR CLASS SETTLEMENT APPROVAL

"Courts have long recognized that 'settlement class actions present unique due process concerns for absent class members.'"  *In re Bluetooth Headset Prods. Liab. Litig. (Bluetooth)*, 654 F.3d 935, 946 (9th Cir. 2011) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).  In settlement classes, the class's motivations may not perfectly square

with those of its attorneys. *See id.* An attorney representing a settlement class may be tempted to accept an inferior settlement in return for a higher fee. *Knisley v. Network Associates, Inc.*, 312 F.3d 1123, 1125 (9th Cir. 2002). Likewise, defense counsel may be happy to pay his counterpart a bit more if the overall deal is better for his client. *See id.*; *see also In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Products Liab. Litig.*, 55 F.3d 768, 778 (3d Cir. 1995) (noting criticism that settlement class "is a vehicle for collusive settlements that primarily serve the interests of defendants—by granting expansive protection from law suits—and of plaintiffs' counsel—by generating large fees gladly paid by defendants as a quid pro quo for finally disposing of many troublesome claims."). In addition, if the settlement agreement is negotiated before the class is certified, as it was in this case, the potential for an attorney's breach of fiduciary duty looms larger still. *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1168 (9th Cir. 2013).

To protect absent class members' due process rights, Rule 23(e) of the Federal Rules of Civil Procedure permits a class action to be settled "only with the court's approval" "after a hearing and on a finding" that the agreement is "fair, reasonable, and adequate." Each of these words must have meaning: a fair settlement treats all class members equitably; a reasonable settlement has its basis in analysis; and an adequate settlement compensates class members for the wrongs they suffered. *See Bluetooth*, 654 F.3d at 946 (listing facets of court's fairness assessment and describing motivations for court's inquiry). When settlement is hashed out before class certification, a motion for class certification "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts." *Id.* (citations omitted). "Judicial review must be exacting and thorough." Manual for Complex Litigation, Fourth (MCL) § 21.61 (2004).

As the Ninth Circuit has recognized, however, the "governing principles may be clear, but their application is painstakingly fact-specific," and the court normally stands as only a spectator to the parties' bargaining. *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). "Judicial review also takes place in the shadow of the reality that rejection of a settlement creates not only delay but also a state of uncertainty on all sides, with whatever gains were potentially achieved for the putative class put at risk." *Id.* Federal courts have long recognized "[a] strong

judicial policy favors settlement of class actions." *Adoma v. Univ. of Phoenix, Inc.*, 913 F. Supp. 2d 964, 972 (E.D. Cal. 2012) (citing *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

As a functional matter, a "[r]eview of a proposed class action settlement generally involves two hearings." MCL § 21.632. First, the parties submit the proposed terms of the settlement so the court can make "a preliminary fairness evaluation," and if the parties move "for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined." *Id.* Then, "[t]he judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and the date of the final fairness hearing." *Id.* Notification is the most important consequence of preliminary approval. *See* Newberg on Class Actions (Newberg) § 13:13 (5th ed. 2011). After the initial certification and notice to the class, the court conducts a second fairness hearing before finally approving any proposed settlement. *Narouz v. Charter Commc'ns, LLC*, 591 F.3d 1261, 1267 (9th Cir. 2010). Here, the court undertakes the first, preliminary step only. Rule 23 provides no guidance, and actually foresees no such procedure, but federal courts have generally adopted some version of the following test: "Preliminary approval of a settlement and notice to the proposed class is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls with the range of possible approval.'" *Lounibos v. Keypoint Gov't Solutions Inc.*, No. 12-00636, 2014 WL 558675, at *5 (N.D. Cal. Feb. 10, 2014) (quoting *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007)); *accord* Newberg § 13:13; MCL § 21.632 & n.976.

III.    DISCUSSION

A. Class Certification

Plaintiffs seek preliminary certification of the proposed class for settlement purposes and preliminary settlement approval under Rule 23. Mot. at 18–19. Federal Rule of Civil Procedure 23 governs the requirements for class certification. A court owes "undiluted,

even heightened, attention" to class certification requirements when preliminary certification is sought in connection to a proposed class settlement. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). The court reviews each Rule 23 requirement in turn below.

### 1.  Rule 23(a)(1) – Numerosity

The class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, there are 4,347 putative class members. Singer Decl. ¶ 22. Joinder of individual suits for each putative member would not only be impracticable, but essentially impossible. The numerosity requirement is satisfied.

### 2.  Rule 23(a)(2) – Commonality

A proposed class satisfies the commonality requirement when there are "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The "claims must depend on a common contention" that is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The court considers "the capacity of [the] classwide proceeding to generate common answers" and takes note of "[d]issimilarities within the proposed class [] [that] have the potential to impede the generation of common answers." *See Millan v. Cascade Water Servs., Inc.*, 310 F.R.D. 593, 604 (E.D. Cal. 2015) (quoting *Dukes*, 564 U.S. at 350).

"Commonality is generally satisfied where . . . 'the lawsuit challenges a system-wide practice or policy that affects all of the putative class members.'" *Franco v. Ruiz Food Prods., Inc.*, No. CV 10-02354 SKO, 2012 WL 5941801, at *5 (E.D. Cal. Nov. 27, 2012) (quoting *Armstrong v. Davis*, 275 F. 3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504–05 (2005)).

The suit alleges TNG required merchandisers to use their personal cell phones or computers to communicate with TNG about assignments as a matter of policy. FAC ¶ 18. TNG also allegedly required merchandisers to clock out from work before driving from one store to the next, leaving drive time uncompensated. *Id.* ¶ 19. These practices are alleged to be a policy applied to all merchandisers with TNG. *Id.* ¶ 20. Thus, plaintiffs argue the suit presents several

common questions, including "whether TNG's policies can fully reimburse a single position with uniform duties, merchandisers, for cell phone use and mileage, or fully compensate for time spent driving between stores or on administrative work." Mot. at 18.

The court agrees. The court could determine in a single case whether TNG's challenged policies were lawful as applied to all proposed class members, regardless of facts specific to each plaintiff. In the language of *Dukes*, these claims are susceptible to resolution "in one stroke." 564 U.S. at 350. Thus, the commonality requirement is met.

### 3. Rule 23(a)(3) – Typicality

The typicality requirement is satisfied if "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Measures of typicality include 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)). Under this "permissive" requirement, "representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical." *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998), *overruled on other grounds by Dukes,* 564 U.S. 338.).

The named plaintiffs allege that they, along with the absent class members, were subject to the same blanket TNG policies regarding their compensation for travel between stores and the use of personal cell phones and computers to complete administrative tasks. FAC ¶¶ 18–20; Mot. at 18–19. Because the factual predicates are the same, the claims of the named plaintiffs and the absent class members are "based on identical legal theories." Mot. at 19. Nothing indicates the named plaintiffs' claims differ from those of the class. Accordingly, these claims would be subject to the same defenses. It appears at this time the typicality requirement is satisfied.

/////

9

1            4.  Rule 23(a)(4) – Adequacy

2            The adequacy requirement is satisfied only if the representative plaintiffs "will

3  fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a)(4).  Courts must

4  consider whether "(1) [] the named plaintiffs and their counsel have any conflicts of interest with

5  other class members and (2) [] the named plaintiff and their counsel [will] prosecute the action

6  vigorously on behalf of the class[.]"  *Hanlon*, 150 F.3d at 1020.  "Serious conflicts of interest can

7  impair adequate representation by the named plaintiffs, yet leave absent class members bound to

8  the final judgment, thereby violating due process."  *In re Volkswagen 'Clean Diesel' Mktg., Sales*

9  *Practices, & Prod. Liab. Litig.*, 895 F.3d 597, 607 (9th Cir. 2018).

10            Nothing in the record before the court suggests the named plaintiffs' interests

11  conflict with those of the putative class members.  Plaintiffs have participated in the litigation

12  process by providing documents to their attorneys, helping respond to discovery and gathering

13  information about the putative class.  *See* Cooks Decl. ¶¶ 7–11; Frazier Decl. ¶¶ 7–11; Brown

14  Decl. ¶¶ 4–8.  The named plaintiffs state they have put the interests of the class ahead of their

15  own by investing time and energy and risking reputational harm to obtain recourse for the class.

16  Cooks Decl. ¶ 13; Frazier Decl. ¶ 14; Brown Decl. ¶ 10.  Plaintiffs' interests appear to be aligned

17  with those of the class.  Their proposed incentive payments of $7,500 each are higher than most

18  other incentive payments the court has approved in the past.  *See, e.g. Ogbuehi v. Comcast of*

19  *Calif./Colo./Fla./Ore., Inc.*, 303 F.R.D. 337, 352 (E.D. Cal. Oct. 2, 2014) (preliminarily

20  approving $5,000 award). While the incentive payments are not a barrier to preliminary approval,

21  the court requires further documentation and justification before it will finally certify such an

22  award.

23            Additionally, plaintiffs' counsel indicate substantial effort has gone into the case

24  thus far.  *See* Singer Decl. ¶¶ 9–11, 17–20 (describing several rounds of discovery, deposition of

25  defendant's Person Most Knowledgeable, and successive mediations).  Counsel Catherine Starr

26  and Olivia Sanders represented Alwena Frazier and Jeannette Cooks initially.  Declaration of

27  Catherine Starr, ECF No. 63-4 ¶ 2; Declaration of Olivia Sanders, ECF No. 63-3 ¶ 3.  Although

28  both Starr and Sanders have experience in employment litigation, they later associated the office

of Colehan Khoury & Singer, which specializes in complex employment litigation, including class actions. Singer Decl. ¶¶ 2–8; Singer Decl. Ex. B ("Firm Resume").  The court is satisfied counsel have prosecuted the action vigorously on behalf of the class, and it appears they will continue to do so.

### 5.   Rule 23(b)(3) – Predominance & Superiority

#### a.   Predominance

To certify the class, the court must find "that the questions of law or fact common to class members predominate over any questions affecting only individual members[.]" Fed. R. Civ. P. 23(b)(3).  "The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation and internal quotation marks omitted); *Amchem*, 521 U.S. at 623 ("The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.") (citation omitted).  Thus, the court considers "the relationship between the common and individual issues." *Hanlon*, 150 F.3d at 1022.

The primary questions in this case turn on policies and procedures that appear to have been applied uniformly by TNG to all proposed class members.  The court may not "rely on uniform policies 'to the near exclusion of other relevant factors touching on predominance.'" *Abdullah v. U.S. Sec. Assocs., Inc.*, 731 F. 3d 952, 965 (9th Cir. 2013) (quoting *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F. 3d 953, 955 (9th Cir. 2009)).  However, there is little else in the record to suggest the case requires extensive fact-intensive inquiry into the circumstances of individual plaintiffs.  With little to weigh at this stage, the court finds questions common to the class predominate.

#### b.   Superiority

The court must also be satisfied "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).  "The superiority inquiry under Rule 23(b)(3) requires determination of whether the objectives of the particular class action procedure will be achieved in the particular case," which "necessarily

involves a comparative evaluation of alternative mechanisms of dispute resolution." *Hanlon*, 150 F.3d at 1023 (citation omitted).

Here, as noted above, individual resolution of the class members' disputes would require 4,347 individual suits. Plaintiffs estimate the average recovery of each class member as $531; even if class members were to recover substantially more in individual actions, the expense of trial would likely outstrip their recovery, making such suits undesirable. At present, this consolidated suit is the only one known by the court to address this dispute, meaning "the extent and nature of any litigation concerning the controversy already begun by . . . class members" weighs in favor of the class action. Fed. R. Civ. P. 23(b)(3)(B). Here, it appears a class action is the superior vehicle for resolution of the dispute.

### 6. Appointment of Class Counsel

Under Rule 23(g), "a court that certifies a class must appoint class counsel." Fed. R. Civ. P. 23(g)(1). As discussed above, plaintiffs' counsel have extensive experience in litigating similar employment class actions and the court therefore appoints them as class counsel.

### 7. Subclasses

"When appropriate, a class may be divided into subclasses that are each treated as a class under this rule." Fed. R. Civ. P. 23(c)(5). The First Amended Complaint proposes several subclasses based on the particular claims of the class members. FAC ¶ 22 (A–G). The motion, however, does not address and does not appear to request certification of these subclasses. As noted, counsel for plaintiffs confirmed at hearing they do not seek certification of any subclasses.

The court requested additional briefing on whether the certification of subclasses was necessary prior to class notice. On March 27, 2020, plaintiffs submitted supplemental briefing confirming subclass certification is unnecessary. ECF No. 70. The court is satisfied subclasses are not necessary in this case; the plaintiffs were employed in the same positions and were uniformly subject to the same policies.

### B. Preliminary Settlement Approval

Under Rule 23(e), a class action may be settled "only with the court's approval," and the court may provide such approval "only after a hearing and only on finding that it is fair

1  reasonable, and adequate . . . ." Fed. R. Civ. P. 23(e).  To assess the fairness of a proposed

2  settlement, courts consider several factors, including:

> (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and view of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members of the proposed settlement.

8  *In re Online DVD-Rental Antitrust Litig.*, 779 F. 3d 934, 944 (9th Cir. 2015) (quoting *Churchill*

9  *Vill., LLC v. Gen. Elec.*, 361 F. 3d 566, 575 (9th Cir. 2004)).  While class action settlements

10  always "present unique due process concerns for absent class members" and the "inherent risk []

11  that class counsel may collude with the defendants," settlements negotiated prior to class

12  certification present "an even greater potential for a breach of fiduciary duty owed the class

13  during settlement." *In re Bluetooth*, 654 F. 3d at 946 (citations and internal quotation marks

14  omitted).  Such settlements "must withstand an even higher level of scrutiny for evidence of

15  collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing

16  the court's approval as fair." *Id.* (citing *Hanlon*, 150 F. 3d at 1026).  Should the court find the

17  settlement deficient, it "may suggest changes" but cannot rewrite a settlement agreement.  M.C.L.

18  § 13.14 (footnotes omitted); *Hanlon*, 150 F. 3d at 1026 (court reviews "settlement taken as a

19  whole, . . . for overall fairness"; "settlement must stand or fall in its entirety" (citing *Officers for*

20  *Justice v. Civil Serv. Comm'n of San Francisco*, 688 F. 2d 615, 628 (9th Cir. 1982)).

21       At the preliminary approval stage, courts often consider only whether the proposed

22  settlement "(1) appears to be the product of serious, informed, non-collusive negotiations; (2) has

23  no obvious deficiencies; (3) does not improperly grant preferential treatment to class

24  representatives or segments of the class; and (4) falls within the range of possible approval."

25  *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 319 (C.D. Cal. 2016) (citations omitted).

26       This court has agreed that "the idea that district courts should conduct a more lax

27  inquiry at the preliminary approval stage seems wrong." *Cotter v. Lyft, Inc.*, 193 F. Supp. 3d

28  1030, 1036 (N.D. Cal. 2016).  Therefore, this court "review[s] class action settlements just as

1   carefully at the initial stage as [it] do[es] at the final stage." *Id.* at 1037; *see also Smothers v.*

2   *Northstar Alarm Servs., LLC*, No. 2:17-cv-00548-KJM-KJN, 2019 WL 280294 (E. D. Cal.

3   Jan. 22, 2019).  Here, having conducted an exacting review, despite the presence of "obvious

4   deficiencies," the court will preliminary approve the settlement while noting the deficiencies that

5   must be corrected before final approval.

6                               1.  Attorney's Fees

7                A disproportionate award to counsel is a "subtle sign that class counsel have

8   allowed pursuit of their own self-interests and that of certain class members to infect the

9   negotiations." *In re Bluetooth*, 654 F. 3d at 947 (citations omitted).  The proposed settlement

10  includes an award of attorneys' fees up to one third of the gross award.  Mot. at 4; Singer Decl.

11  ¶ 21.  The benchmark for attorney's fees in the Ninth Circuit is 25 percent.  *See In re Easysaver*

12  *Rewards Litig.*, 906 F. 3d 747, 754 (9th Cir. 2018).  The court does not deny the motion on this

13  basis at this time, but notes that the proposed upward departure from this benchmark will require

14  full support at the final approval phase to be approved, as also discussed further below.  *Powers v.*

15  *Eichen*, 229 F. 3d 1249, 1256–57 (9th Cir. 2000).

16                              2.  Clear Sailing Provision

17                The settlement provides, "Defendants agree not to oppose or object to any

18  application or motion by Class Counsel for attorneys' fees not to exceed thirty-three and one-third

19  percent (33-1/3%) of the Maximum Settlement Amount[.]"  Settlement § O.4.  Such a clear

20  sailing provision raises a red flag as its benefit accrues primarily to counsel as opposed to the

21  class.  While this does not preclude preliminary approval, the court ultimately will conduct a

22  "lodestar cross-check" in the final fairness hearing to determine whether the request is reasonable.

23  *See Ogbuehi*, 303 F.R.D. at 352.  Regardless of any opposition or lack thereof, the court will

24  require any application for attorney's fees to be accompanied by detailed descriptions of counsel's

25  tasks completed, hours spent on each task, who performed the task, and their hourly rates and

26  total hours worked.

27  /////

28  /////

1          3.  *Cy Pres* Award

2          The settlement provides that 180 days after the distribution of funds to class

3   members, 50 percent of uncashed settlement payments will be sent to Legal Aid at Work, a

4   California nonprofit providing employment legal aid to workers in California, and 50 percent will

5   be sent to No Kid Hungry, a non-profit organization providing child hunger relief programs.  Mot.

6   at 5; Singer Decl. ¶ 26.  Based on the record currently before the court, a *cy pres* distribution to

7   No Kid Hungry is not supported, as explained below.

8          When a settlement proposes "distribution of unclaimed funds to indirectly benefit

9   the entire class" it may be approved.  *Six Mexican Workers v. Ariz. Citrus Growers*, 904 F. 2d

10  1301, 1305 (9th Cir. 1990).  "To ensure that the settlement retains some connection to the plaintiff

11  class and the underlying claims, however, a *cy pres* award must qualify as 'the next best

12  distribution' to giving the funds directly to class members."  *Dennis v. Kellogg Co.*, 697 F. 3d

13  858, 865 (9th Cir. 2012) (citing *Six Mexican Workers*, 904 F. 2d at 1308)).  Selection of *cy pres*

14  beneficiaries must be guided by (1) the objectives of the underlying statute(s) and (2) the interests

15  of the silent class members.  *Nachshin v. AOL, LLC*, 663 F. 3d 1034, 1039 (9th Cir. 2011) (citing

16  *Six Mexican Workers*, 904 F. 2d at 1307).

17         The proposed distribution of unclaimed funds to Legal Aid at Work satisfies these

18  guiding principles.  This distribution benefits California workers in need of legal advice relating

19  to employment disputes, precisely the class of plaintiffs and type of claims in the instant suit.   As

20  the court noted at hearing, however, No Kid Hungry, while apparently a viable charity, does not

21  satisfy the required nexus with either of the statutory goals underlying the claims at issue or the

22  plaintiff class.  Unless the parties can cure the record in this respect, the court cannot ultimately

23  approve the proposed *cy pres* distribution to No Kid Hungry.  Nevertheless, the court

24  preliminarily approves the settlement with the cautionary note that the *cy pres* award provisions

25  may need to be amended to conform to the guiding principles.

26         C.  Private Attorneys General Act (PAGA)

27         The court must also consider whether the proposed PAGA settlement is adequate

28  to serve the public interest.  When plaintiffs bring a PAGA action, they do so as the "proxy or

1    agent of the state's labor law enforcement agencies, . . . who are real parties in interest." *Sakkab*

2    *v. Luxottica Retail N. Am. Inc.*, 803 F. 3d 425, 435 (9th Cir. 2015).  Any PAGA judgment binds

3    not only members of the class, but similarly situated workers who opt out of the class and the

4    state's labor law enforcement agencies.  *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2014).

5    "[W]here plaintiffs bring a PAGA representative claim, they take on a special responsibility to

6    their fellow aggrieved workers who are effectively bound by any judgment."  *O'Connor v. Uber*

7    *Technologies, Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citing *Iskanian v. CLS Transp.*

8    *Los Angeles, LLC*, 59 Cal. 4th 348, 381 (2014)).

9            Parties seeking approval of a PAGA settlement must submit the proposed

10   settlement to the California Labor and Workforce Development Agency ("LWDA") for comment

11   at the same time they submit their motion for preliminary approval of the settlement.  *Ramirez v.*

12   *Benito Valley Farms, LLC*, No. 16-CV-04708-LHK, 2017 WL 3670794 at *2 (N.D. Cal. Aug. 25,

13   2017);  Cal. Lab. Code  § 2699(l)(2) ("The proposed settlement shall be submitted to the agency

14   at the same time that it is submitted to the court.").  Plaintiffs served the proposed settlement on

15   the LWDA on November 20, 2019.  Decl. of Service, ECF No. 64-1.  The LWDA has not filed a

16   response to date.

17           A court analyzing the compromise of a PAGA claim must consider whether the

18   settlement is "'fundamentally fair, reasonable, and adequate' with reference to the public policies

19   underlying the PAGA."  *O'Connor*, 201 F. Supp. 3d at 1133 (citation omitted); *Haralson v. U.S.*

20   *Aviation Servs. Corp.*, 383 F. Supp. 3d 959, 979 (N.D. Cal. 2019).  In so doing, the court may

21   apply a sliding scale test to the Rule 23 class settlement compared to the PAGA settlement; where

22   "the settlement for the Rule 23 class is robust, the purposes of PAGA may be concurrently

23   fulfilled."  *O'Connor*, 201 F. Supp. 3d at 1134.  "By providing fair compensation to the class

24   members as employees and substantial monetary relief, a settlement not only vindicates the rights

25   of the class members as employees, but may have a deterrent effect upon the defendant employer

26   and other employers, an objective of PAGA."  *Id.*  However, where the compensation to the class

27   is modest compared to the verdict value, non-monetary relief is of limited benefit to the class, and

28   the settlement does not clarify the rights and obligations of the employees prospectively, the

1    settlement of the non-PAGA claims may not vindicate the interests of PAGA.  *Id.* at 1135.  "In

2    these circumstances, the adequacy of settlement as a whole turns in large part on whether the

3    PAGA aspect of the settlement can stand on its own."  *Id.*

4            Here, the proposed PAGA settlement appears similar in proportion to the one the

5    court rejected in *O'Connor*.  In *O'Connor*, plaintiffs and the LWDA agreed the possible value of

6    a PAGA penalty exceeded $1 billion, but plaintiffs attempted to compromise the claim for

7    $1 million.  *Id.* at 1133.  Even accounting for the possibility of reducing the verdict as "unjust,

8    arbitrary and oppressive, or confiscatory," as provided in California Labor Code section

9    2699(e)(2), the court found no analysis supporting settling the PAGA claim for 0.1 percent of its

10   estimated value and rejected it.  *Id.*  At the same time, courts in the Eastern District have approved

11   of settlements compromising PAGA penalties for single digit percentages of their maximum

12   value.  *See Ahmed v. Beverly Health and Rehabilitation Servs., Inc.*, No. 2:16-1747 WBS KJN,

13   2018 WL 746393 at *10 (E. D. Cal. Feb. 6, 2018) (approving 1 percent of gross settlement as

14   PAGA settlement); *Rodriguez v. RCO Reforesting, Inc.*, No. 2:16-cv-2523 WBS DMC, 2019 WL

15   331159 (E. D. Cal. Jan. 24, 2019) (6 percent of total settlement as PAGA penalties).

16           Here, plaintiffs' counsel estimates the maximum recoverable PAGA penalties in

17   the suit to be $31,551,250.  Singer Decl. ¶ 53.  He also states "[p]laintiffs discounted the value of

18   the PAGA penalties for settlement purposes by 90% to 3,155,125," without explaining why or

19   how they arrived at that discount.  *Id.*  The proposed PAGA compromise of $50,000 represents

20   1.3 percent of the MSA, but only roughly 0.158 percent of the maximum recoverable penalties.

21   Plaintiffs' motion is entirely silent as to the justification for a PAGA penalty in such small

22   proportion to the maximum exposure at trial.

23           At hearing, when pressed, plaintiffs' counsel did not adequately explain the

24   connection between the proposed penalty settlement and the statutory goals of PAGA.  Although

25   this is not a reason to withhold approval at this stage, counsel must address how the proposed

26   settlement serves the purposes of PAGA in much greater detail before final approval.

27   /////

28   /////

                                            17

D. <u>Proposed Class Notice</u>

Federal Rule of Civil Procedure 23(e) requires that prior to settlement of a class action, the court must "direct notice in a reasonable manner to all class members who would be bound by the proposal." Where a class is certified under Rule 23(b)(3), the notice must meet the requirements of Rule 23(c)(2)(B). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F. 3d at 1025.

Notice must be the "best notice . . . practicable under the circumstances" and must provide individual notice "to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

The notice must clearly and concisely state in plain, easily understood language:

(i)     the nature of the action;

(ii)    the definition of the class certified;

(iii)   the class claims, issues, or defenses;

(iv)   that a class member may enter an appearance through an attorney if the member so desires;

(v)    that the court will exclude from the class any member who requests exclusion;

(vi)   the time and manner for requesting exclusion; and

(vii)  the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.*

"Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Churchill Vill., LLC*, 361 F. 3d at 575.

Here, the proposed settlement administrator, CPT Group, Inc. ("CPT") will send a notice packet by first class mail to class members. The proposed notice explains the nature of the lawsuit in a section headered "BASIC INFORMATION," which contains subheaders such as "Why did I get this notice?"; "What is this Lawsuit about?"; "Why is this a class action?"; and

"Why is there a Settlement?"  Settlement, Ex. 1 ("Proposed Notice").[2]  This includes the definition of the proposed class.  *Id.*  The specific class claims are listed in both the "What is this Lawsuit about?" subheader and in the list of claims to be released.  *Id.*

The notice only mentions class members' right to enter an appearance through an attorney once.  The notice answers the question, "Do I have a lawyer in this case?," by stating "The Court has appointed Class Counsel listed below to represent your interests in this case."  *Id.*  In the subheader "Do I have to come to the [final approval] hearing?," it states, "You are not required to attend the Final Approval Hearing, but you or your lawyer may attend if you choose."  *Id.*  These provisions in tandem could give lay class members the impression they could only be represented by an independent attorney at the final approval hearing.  As a result, the court finds the notice deficient in this respect.

The notice describes the procedure and time for exclusion from the settlement in a section titled, "EXCLUDING YOURSELF FROM THE SETTLEMENT."  *Id.*  It also lists deadlines for both exclusion and objecting on the front page of the notice.  *Id.*  Finally, in a subheader called, "If I don't exclude myself, can I sue TNG for the same thing later?," the notice is clear that the settlement is binding on class members in accordance with Federal Rule of Civil Procedure 23(c)(3).

The proposed notice is reasonable and adequate in all respects except for clarifying class members' ability to appear, with or without an attorney.  Because this deficiency is easily correctable, the court will GRANT approval of the form of notice, contingent on the filing within fourteen days of a corrected notice.

IV.   <u>CONCLUSION</u>

For the foregoing reasons, the court HEREBY MAKES THE FOLLOWING DETERMINATIONS AND ORDERS:

1.     The court finds, on a preliminary basis, that the Settlement Agreement incorporated in full by this reference and made a part of this order granting preliminary approval

---

[2] The settlement agreement is Exhibit A to the Declaration of Michael Singer but itself has numbered exhibits.

1 has no obvious deficiencies which could not be corrected by the time of final approval, does not

2 improperly grant preferential treatment to the class representatives or segments of the class, and

3 appears to be within the range of reasonableness of a settlement that could ultimately be given

4 final approval by this court.  The court notes defendants agreed to pay the non-reversionary

5 maximum settlement amount of $3,750,000 in full satisfaction of the claims as more specifically

6 described in the settlement agreement.

7   2. The court also finds that, on a preliminary basis, the Settlement is fair, just,

8 adequate, and reasonable to all members of the Class when balanced against the probable outcome of

9 further litigation relating to class action certification, liability and damages issues, and potential

10 appeals of rulings.  Good cause appearing, the motion for preliminary approval of class action

11 settlement is GRANTED.

12   3. As part of preliminary approval, the court finds for settlement purposes only,

13 that the class meets the requirements of Rules 23(a) and (b)(3) of the Federal Rules of Civil

14 Procedure, and conditionally certifies the class for the purposes of settlement as:

15  All current and former hourly or non-exempt employees who worked

16  for defendants as merchandisers within the State of California at any time during the period from April 14, 2012 through October 3, 2019.

17   4. The court approves and appoints plaintiffs Jeannette Cooks, Alwena

18 Frazier and Audrey L. Brown as the class representatives.

19   5. The court approves and appoints Cohelan, Khoury & Singer, Law Office of

20 Oliva Sanders and Law Office of Catherine Starr and Gaines & Gaines as Class Counsel.

21   6. The court approves and appoints CPT Group, Inc. as the settlement

22 administrator to administer the settlement according to the terms of the settlement agreement.

23   7. The court finds the proposed class notice and the proposed method of

24 dissemination reasonably and adequately advises the class of the information required by Federal

25 Rule of Civil Procedure 23(c)(2)(B), with the exception of the need to clarify class members'

26 right to make an appearance, as discussed above.  The court APPROVES the proposed class

27 notice CONTINGENT ON the filing within fourteen days of an updated proposed notice

28 correcting this deficiency.

1          8.      The court finds the mailing to the class members' present and last known

2 address, with safeguards to perform reasonable skip traces of returned as undeliverable Notice

3 Packets, constitutes an effective method of notifying class members of their rights with respect to

4 the proposed settlement.  Accordingly, it is hereby ORDERED that:

5          a.      No later than fourteen days from the court's issuance of a minute

6 order confirming the court's acceptance of the updated notice required in (7) above as satisfying

7 the contingency and resulting approval of the proposed class notice, defendants shall forward to

8 the appointed administrator the class data as provided for by the terms of the settlement

9 agreement.

10          b.      No later than 21 days after receipt of the class data, the

11 administrator shall mail the Notice Packets to each class member, by first class United States

12 mail, postage pre-paid.  The exterior of the mailing envelope shall include the following language

13 below the administrator's address:

14        Important Legal Document:
You may get Money from a Class Action
15        Settlement; your prompt reply to correct a
Bad address is required
16

17     9.     IT IS FURTHER ORDERED that:

18         a.    Requests for Exclusion.  Requests for exclusion from the settlement

19 must be mailed to the administrator at the address provided for in the class notice, postmarked no

20 later than 60 days from the initial mailing of the Notice Packets to the class.  If the notice

21 response deadline falls on a Saturday or federal holiday, it will be extended to the next day which

22 the U.S. Postal Service is open.

23         b. Objections.  Notices of objection to the settlement may be mailed

24 to the settlement administrator at the address shown in the class notice, by first class U.S. mail on

25 or before the notice response deadline.  Any written notice of objection should be signed by the

26 class member and/or his or her representative; including the objecting class member's name,

27 address, telephone number, the last four digits of his/her Social Security number or full employee

28 ID number, the case name and number as shown in the class notice, the basis for each objection,

1  and whether or not the class member intends to appear at the final approval hearing.  Class

2  members may also appear at the time of the final approval hearing to make any objections they

3  may have.

4        10.    IT IS FURTHER ORDERED that within fourteen days of the notice

5  response deadline, class counsel shall file their application for awards of reasonable attorneys'

6  fees and litigation expenses, the class representative service payments, and the administrator's

7  expenses.

8        11.    IT IS FURTHER ORDERED that all papers in support of the Motion for

9  Order Granting Final Approval of the Class Action Settlement shall be filed at least twenty-eight

10  calendar days before the final fairness/final approval hearing.

11        12.    The final approval hearing shall be held before the undersigned at a date to

12  be noticed in the motion for final approval.

13        13.    IT IS FURTHER ORDERED that if, for any reason, the court does not

14  execute and file an order granting final approval and judgment, or if the effective date, as defined

15  by the settlement agreement, does not occur for any reason whatsoever, the settlement agreement

16  and the proposed settlement subject of this order and all evidence and proceedings had in

17  connection therewith, shall be null and void and without prejudice to the *status quo ante* rights of

18  the parties to this litigation as more specifically set forth in the settlement agreement.

19        14.    IT IS FURTHER ORDERED that pending further order of this court, all

20  proceedings in this matter except those contemplated by this order and in the settlement

21  agreement are STAYED.

22        15.    The court expressly reserves the right to adjourn or to continue the final

23  approval hearing from time-to-time without further notice to class members, except that a notice

24  of continuance shall be provided to all class members who submit a notice of objection.  In the

25  event the settlement does not become final for any reason, this preliminary approval order shall be

26  of no further force or effect and the fact that the parties were willing to stipulate to class

27  /////

28  /////

certification as part of the settlement shall have no bearing on, and not be admissible in connection with, the issue of whether a class should be certified in a non-settlement conference.

IT IS SO ORDERED.

DATED:  September 15, 2020.

_____
CHIEF UNITED STATES DISTRICT JUDGE