UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jannette Cooks, et al., | No. 2:16-cv-01160-KJM-AC |
| Plaintiffs, | No. 2:16-cv-02113-KJM-AC |
| v. | ORDER |
| TNG GP, et al., | |
| Defendants. | |

The court preliminarily approved settlement of this wage and hour class action. In separate motions, plaintiffs Jeannette Cooks, Alwena Frazier, and Audrey L. Brown now move for (1) final approval of the class action settlement, Mot. Final Approval, ECF No. 76; Mem. Final Approval ECF No. 76-1, and (2) an award of attorneys' fees and costs, Mot. Att'ys Fees, ECF. No. 75; Mem. Att'ys Fees, ECF No. 75-1. The court held the final approval hearing on May 7, 2021, attended by plaintiffs' counsel, Jeff Geraci, Olivia Sanders and Alex Katofsky, and defendants' counsel Jerome Rubin, PHV. As explained below, the court **grants** both motions.

**I.    BACKGROUND**

Plaintiffs Jeannette Cooks and Alwena Frazier filed a class action against defendants TNG GP, the News Group, Inc., the News Group, L.P., and Select Media Services, LLC in state court. Not. of Removal ¶ 1, ECF No. 1. Plaintiffs also filed separate a Private Attorneys General Act (PAGA) complaint. Prev. Order (Sept. 15, 2020) at 2, ECF No. 71. Audrey Brown filed a similar

class action in state court against TNG. *Id.* at 3. TNG removed all three matters and the court consolidated them. Order Consolidating Actions, ECF No. 43. Plaintiffs filed an amended complaint, bringing several wage related causes of action, including failure to 1) pay hourly and overtime wages, 2) provide accurate wage statements, 3) timely pay wages to separated employees, 4) reimburse for business-related expenses, 5) and provide meal and rest periods or compensation in lieu of breaks. *See generally* First Am. Compl. (FAC), ECF No. 45. The plaintiffs also allege a violation of the unfair competition law. *Id.*

"As a functional matter, a review of a proposed class action settlement generally involves two hearings: (1) an initial hearing to determine whether certification and preliminary approval of the settlement is justified and, (2) after notice has been provided to the class, a final fairness hearing to determine whether final approval is appropriate." *Greer v. Dick's Sporting Goods, Inc.*, No. 15-01063, 2020 WL 5535399, at *2 (E.D. Cal. Sept. 15, 2020) (citing Manual for Complex Litig., § 21.632 (4th ed. 2004)). On February 7, 2020, the court held the preliminary approval hearing. *See* Hr'g Mins., ECF No. 68. On September 15, 2020, the court granted plaintiffs' unopposed motion for class certification, certifying as a class: "all current and former hourly non-exempt employees who worked for TNG as merchandisers in California any time from April 12, 2012 to October 3, 2019." Prev. Order at 3. The court preliminarily approved a maximum settlement amount of $3,750,000. *Id.* at 4. From that amount, the parties have agreed upon deductions, which the court tentatively approved. The deductions are as follows, with the cost of litigation and administrative expenses updated since preliminary approval was granted:

1) up to $1,250,000 for attorneys' fees;
2) $42,493.22[1] for class counsel litigation expenses;
3) $7,500 for each of the three named plaintiffs for incentive fees;
4) $33,500[2] in administration costs;

---

[1] The parties agreed on up to $56,000 in litigation costs, Prev. Order at 4, but plaintiffs now seek only $42,493.22, Mem. Att'ys Fees at 1.

[2] The parties agreed to, and the court approved, administrative costs up to $36,500. Prev. Order at 4. At hearing, plaintiffs' counsel informed the court that the actual administrative cost

|   |   |
|---|---|
| | 5) employer-side payroll taxes estimated at $37,500; and |
| | 6) payment to the California Labor and Workplace Development Agency of $37,500 (75% of $50,000) for PAGA civil penalties. |

*Id.*; Suppl. Cofinco Decl., ECF No. 80-1.  The net settlement amount is $2,334,159.77.  Suppl. Cofinco Decl. at 3.  The court preliminarily approved distribution of the net settlement amount to participating class members, estimated to include 4,347 individuals, "based on the number of compensable workweeks each class member worked."  Prev. Order at 4.  Any remaining uncashed funds will be distributed to Legal Aid at Work as the *cy pres* recipient.  *Id.* at 5; Not. of Submission of Revised Not. at 1, ECF No. 72.

The court granted preliminary approval subject to several modifications; two have been addressed.  First, the court found the proposed notice needed to be amended to clarify class members could appear at the final approval hearing with or without an attorney.  *See* Prev. Order at 19.  The parties made the appropriate revisions, *see* Not. of Submission of Revised Not., and the court approved the notice, Min. Order, ECF No. 74.  Second, the proposed *cy pres* award of 50 percent of uncashed settlement funds to No Kid Hungry required further support or amendment.  Prev. Order at 15.  In response, the parties withdrew No Kid Hungry as a *cy pres* recipient, Notice of Submission of Revised Notice at 1, so any uncashed fund will be distributed to Legal Aid at Work, *id*.

With these two issues resolved, four issues remain.  Specifically, the court directed the parties to provide additional justification for: (1) the proposed incentive payments to plaintiffs, Prev. Order at 10, (2) the proposed PAGA compromise, *id.* at 17, (3) the proposed attorneys' fee award, and (4) the clear sailing provision, *id.* at 14.  The court addresses each of these below in the context of reviewing the overall suitability of final approval.

**II.    LEGAL STANDARD**

A class action may be settled only with the court's approval.  Fed. R. Civ. P. 23(e).  When, as here, a settlement agreement would bind absent class members, "the court may approve

---

was only $33,500 and they have provided an invoice to support this amount.  Suppl. Cofinco Decl.  Thus, only $33,500 will be deducted to calculate the net settlement amount.

3

it only after a hearing and only on finding that it is fair, reasonable, and adequate after considering whether:"

    (A) the class representatives and class counsel have adequately represented the class;

    (B) the proposal was negotiated at arm's length;

    (C) the relief provided for the class is adequate, taking into account:

        (i) the costs, risks, and delay of trial and appeal;

        (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

        (iii) the terms of any proposed award of attorney's fees, including timing of payment; and

        (iv) any agreement required to be identified under Rule 23(e)(3); and

    (D) the proposal treats class members equitably relative to each other.

Fed R. Civ. P. 23(e)(2).

Before these provisions were adopted into Rule 23(e), the Ninth Circuit and other courts used similar factors to decide whether settlement agreements in class actions were "fair, reasonable, and adequate." *See* Fed. R. Civ. P. 23(e) Advisory Committee's Notes to 2018 Amendments. Those factors remain relevant. Courts consider:

    (1) the strength of the plaintiff's case;

    (2) the risk, expense, complexity, and likely duration of further litigation;

    (3) the risk of maintaining class action status throughout the trial;

    (4) the amount offered in settlement;

    (5) the extent of discovery completed and the stage of the proceedings;

    (6) the experience and view of counsel;

    (7) the presence of a governmental participant; and

    (8) the reaction of the class members of the proposed settlement.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (line breaks added for readability) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)).

### III. ANALYSIS

#### A. Final Approval

For the reasons articulated below, the court finds the parties' proposal to resolve the case is fair, reasonable and adequate. *See* Fed. R. Civ. P. 23(e)(2)(A)−(D).

##### 1. Class Representatives and Class Counsel Have Adequately Represented Class

The court previously concluded class counsel were adequate representatives. Prev. Order at 10–11 (noting counsel's substantial effort including their work conducting several rounds of discovery and mediations); Fed. R. Civ. P. 23(e)(2)(A). The current and prior record provides no reason to revisit that conclusion as nothing suggests the named plaintiffs' interests' conflict with those of the putative class members. *See id.* at 10. While the class representatives' interests align with those of the class, as noted, the court previously expressed concerns regarding the settlement's proposed incentive award.

A settlement agreement should "not improperly grant preferential treatment to class representatives or segments of the class . . . ." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078,1080 (N.D. Cal. 2007). Representative plaintiffs may receive reasonable incentive payments, *Staton v. Boeing Co.*, 327 F.3d 938, 977 (9th Cir. 2003), and authorization of payments is within the court's discretion, *Adams v. City & Cty. of Honolulu*, No. 12-667, 2017 WL 3880651, at *1 (D. Haw. Sept. 5, 2017). In evaluating the suitability of an incentive payment courts may consider:

> (1) the risk to the class representative in commencing suit, both financial and otherwise; (2) the notoriety and personal difficulties encountered by the class representative; (3) the amount of time and effort spent by the class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof, enjoyed by the class representative as a result of the litigation.

*Greer*, 2020 WL 5535399, at *3 (citing *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995)). To determine the amount of time and effort spent by a class representative the court will examine "evidence demonstrating the quality of plaintiff's representative service, such as substantial efforts taken as class representative to justify the discrepancy between [his] award and those of the unnamed plaintiffs." *Flores v. ADT LLC*, No. 16-29, 2018 WL 6981043, at *1

(E.D. Cal. Mar. 19, 2018) (citation and internal quotation marks omitted; alteration in original). The court also considers the "proportion of the [representative] payment[s] relative to the settlement amount, and the size of each payment." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 947.

Here, all but one of the factors weigh in favor of approval. The first factor weighs in favor of approval because plaintiffs assumed risk in commencing the suit given their risk of loss of future employment opportunities as prospective employers may conduct background checks and be deterred by plaintiffs' having filed a lawsuit against a former employer. Mem. Att'ys Fees at 18. The second factor weighs against approval as the record does not indicate the case resulted in notoriety or personal difficulties for the plaintiffs. The third factor weighs in favor of approval: Each named plaintiff spent time assisting with the litigation by gathering documents, attending meetings, and explaining documents, company policies, and other relevant facts to class counsel. *Id.*; Cooks Decl. ¶¶ 3–8, ECF No. 75-8; Frazier Decl. ¶¶ 6–11, ECF No. 75-9; Brown Decl. ¶¶ 6–9, ECF No. 75-10. The fourth factor, duration, weighs in favor of approval as plaintiffs first filed their then-separate lawsuits in state court in 2016, Not. of Removal ¶ 1; Not. of Related Cases at 1, ECF No. 35, and did not file their motion for preliminary approval until 2019, ECF No 63. The fifth factor also weighs in favor of approval because plaintiffs will derive only a modest personal benefit in comparison to the other class members for the financial risk they faced in filing the action and for agreeing to a general release of all claims. Mem. Att'ys at 18. In sum, the *Van Vranken* factors support granting the three named plaintiffs' request for a $7,500 incentive award each.

### 2.     Negotiated at Arm's Length

"The court may approve [a settlement] . . . only on finding that it is fair, reasonable, and adequate after considering whether [...] the proposal was negotiated at arm's length." Fed. R. Civ. P. 23(e)(2)(B); *see also In re Tableware Antitrust Litig.*, 484 F. Supp. 2d at 1080 (considering whether "proposed settlement appears to be the product of serious, informed, non-collusive negotiations"). The parties' participation in mediation "tends to support the conclusion that the settlement process was not collusive." *Villegas v. J.P. Morgan Chase & Co.*, No. 09-261,

2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012); *see* Prev. Order at 3 (noting parties' prolonged efforts in negotiations). This factor continues to weigh in favor of final approval.

### 3. Relief Provided for Class Is Adequate

To determine whether the proposed relief is adequate the court considers, among other factors, "the costs, risks, and delay of trial and appeal." Fed. R. Civ. P. 23(e)(2)(C)(i); *see also Churchill Vill., LLC*, 361 F.3d at 575. Courts also consider the "effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims," Fed. R. Civ. P. 23(e)(2)(C)(ii), and proposed attorneys' fees, Fed. R. Civ. P. 23(e)(2)(C)(iii). Attorneys' fees are discussed below and are not a barrier to approval.

Here class members will receive an estimated average $537.21, with the highest payment of $4,484.55. Suppl. Cofinco Decl. ¶ 4. When the court preliminary approved the settlement, the court considered whether the proposed relief was "fair, just, adequate, and reasonable to all members of the Class when balanced against the probable outcome of further litigation relating to class action certification, liability and damages issues, and potential appeals of rulings." Prev. Order at 20. Though the court had reservations regarding the lack of justification for some deductions, these reservations are now sufficiently addressed as noted in this order. With this issue cured, the court finds no basis to doubt the adequacy of the settlement or otherwise revisit its preliminary conclusions.

Furthermore, the fact that no class member has objected to the proposed settlement and only two have opted out supports the conclusion the amount of settlement and method of distribution to individual class members is adequate. Mem. Final Approval at 6; *Martin v. AmeriPride Servs.*, No. 08-440, 2011 U.S. Dist. Lexis 61796, at *21 (S.D. Cal. June 9, 2011).

### 4. Proposal Treats Class Members Equitably Relative to Each Other

The settlement also treats class members fairly. Fed. R. Civ. P. 23(e)(2)(D). The settlement includes "all current and former hourly non-exempt employees who worked for TNG as merchandisers in California any time from April 12, 2012 to October 3, 2019." Prev. Order at 3. Aside from the class representatives, who will receive higher amounts due to the enhancement payment reviewed above, every class member's share of the common fund will be calculated the

7

same way. The members' respective shares will be allocated on a pro-rata basis based on the number of compensable workweeks each member worked. *Id.* at 4. Calculating respective shares in this manner is fair and treats class members equitably. The class members' responses and lack of objections bolsters the conclusion the settlement treats all members equitably. *See Greer*, 2020 WL 5535399, at *7.

### 5.  Conclusion

For these reasons the court finds the settlement is "fair, reasonable, and adequate." Fed. R. Civ. P. 23(e).

## B.  Request for Attorneys' Fees

As noted, the plaintiffs request attorneys' fees of $1,250,000, and reimbursement of $42,493.22 in costs. Mem. Att'ys Fees at 1. "The court may award reasonable attorney's fees . . . that are authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). Even if the parties have agreed to the amount, the court must still ensure the award is reasonable. *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Awards above the benchmark may be appropriate "when counsel achieves exceptional results for the class, undertakes extremely risky litigation, generates benefits for the class beyond simply the cash settlement fund, or handles the case on a contingency basis." *Seguin v. County of Tulare*, No. 16-01262, 2018 WL 1919823, at *6 (E.D. Cal. Apr. 24, 2018) (quotation marks omitted) (citing *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048–50 (9th Cir. 2002)).

### 1.  Ninth Circuit Benchmark

The Ninth Circuit has set the benchmark for attorneys' fees at 25 percent of the maximum settlement amount. S*ee In re Easysaver Rewards Litig.*, 906 F. 3d 747, 754 (9th Cir. 2018). "[C]ourts may adjust this figure upwards or downwards if the record shows special circumstances justifying a departure." *Ontiveros v. Zamora*, 303 F.R.D. 356, 372 (E.D. Cal. 2014) (internal quotation marks omitted) (citing *In re Bluetooth*, 654 F.3d at 942). The court may conduct a lodestar cross-check to evaluate whether the percentage recovery from a common fund is reasonable. *Vizcaino*, 290 F.3d at 1050.

The proposed award for attorneys' fees equal 33 percent of the maximum settlement amount of $3,750,000. Mem. Att'ys Fees at 4; Singer Decl. ¶ 22, ECF No. 75-3. Courts have granted upwards of 33 percent attorneys' fees awards in wage and hour class actions. *Romero v. Producers Dairy Foods, Inc.*, No. 05-0484, 2007 U.S. Dist. Lexis 86270 (E.D. Cal. Nov. 2007) ("[F]ee awards in class actions average around one-third of the recovery."). Nonetheless, the court conducts a lodestar cross-check to evaluate the award request here, rather than simply serve as a rubber stamp.

### 2. Lodestar Cross-Check

A lodestar cross-check objectifies the determination of the reasonableness of attorneys' fees. In conducting a lodestar cross-check, a court "must start by determining how many hours were reasonably expended on the litigation, and then multiply those hours by the prevailing local rate for an attorney of the skill required to perform the litigation." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008) (citation omitted). "This amount may be increased or decreased by a multiplier that reflects any factors not subsumed within the calculation, such as 'the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment.'" W*ilson v. Metals USA, Inc.*, No. 12-568, 2021 WL 516585, at *8 (E.D. Cal. Feb. 11, 2021) (quoting *In re Bluetooth*, 654 F.3d at 941–42 (citation omitted). "Foremost among these considerations, however, is the benefit obtained for the class." *In re Bluetooth*, 654 F.3d at 942.

#### a)   Lodestar Amount

Class counsel, comprising attorneys from five different firms, requests the total fee award of $1,250,000. Class counsel provided a breakdown of their time on this case, 912.66 hours, along with their hourly rates. The hourly rates range from $325 per hour to $900 per hour. *See generally* Summ. of Time and Costs, Singer Decl. Ex. 2, ECF No. 75-3. The court finds the number of hours counsel spent on the case reasonable given the case was filed in 2016, and following removal to this court there have been two mediations and some minimal motion practice. Plaintiffs filed a First Amended Complaint, ECF No. 45, and the unopposed motions for preliminary approval and final approval.

The court turns to whether the attorneys' rates are reasonable. Courts in the Eastern District have accepted hourly rates between $370 and $495 for associates, though it is common practice to approve lower rates, particularly for attorneys with less experience. *Milburn v. PetSmart, Inc.*, No. 18-535, 2019 WL 5566313, at *8 (E.D. Cal. Oct. 29, 2019). Associates with ten to twenty years of experience have been awarded rates between $550 to $575. *Z.F. v. Ripon Unified Sch. Dist.*, No. 10-523, 2017 WL 1064679, at *3 (E.D. Cal. Mar. 21, 2017) ("[p]revailing hourly rates in the Eastern District of California are in the $350–$550/hour range for experienced attorneys with over 15 years of experience in civil rights and class action litigation." (citation omitted)). The rates requested for senior counsel and partners with over twenty years' experience, ranging from $700 to $900, *see* Summ. Of Time and Costs at 1–2, are well above those typically approved in this district. *See Smothers v. NorthStar Alarm Services LLC*, No. 17-548, 2020 WL 1532058, at *9 (E.D. Cal. Mar. 31, 2020) (applying $695 per hour to lodestar calculation for attorney with nearly 30 years' experience); *Franco v. Ruiz Food Products, Inc.*, 10-2354, 2012 WL 5941801, at *20 (E.D. Cal. Nov. 27, 2012) ("[P]revailing rates in the Eastern District of California are in the $400 range, with rates of up to $650 to $675 approved for partners and senior associates with significant years of experience.").

The court finds the hourly rates requested reasonable, except for the following attorneys: Timothy D. Cohelan, Isam C. Khoury, Michael D. Singer, Diana M. Khoury, Jeff Geraci, Alex P. Katofsky and Miriam L. Schimmel. Each of these attorneys seeks hourly rates ranging from $700 to $900, well beyond those regularly approved in this district. Summ. of Time and Costs. at 1–2; *see Milburn*, 2019 WL 5566313, at *9. While recognizing these attorneys each have extensive experience, ranging from twenty-two and forty-seven years, the court finds the upper range of hourly rates previously found to be reasonable in this district are appropriate for the lodestar analysis here. *See Milburn*, 2019 WL 5566313, at *9 (reducing Attorney Hollis's then-$700 hourly rate to $695 per hour, "the upper range of hourly rates previously found to be reasonable in this district . . . in calculating attorney Hollis's lodestar"). Specifically, the court follows its previous reasoning and applies a $695 rate for the attorneys with thirty years' experience: Timothy D. Cohelan, Isam C. Khoury, Michael D. Singer, Diana M. Khoury and Jeff Geraci. *See*

*Smothers*, 2020 WL 1532058, at *9; *Greer*, 2020 WL 5535399, at *10.  For those attorneys with between twenty and thirty years of experience, Alex P. Katofsky and Miriam L. Schimmel, the court finds a $660 hourly rate reasonable.  *See, e.g., Smothers*, 2020 WL 1532058, at *9; *Franco*, 2012 WL 5941801, at *20.  Class counsel also anticipated spending twenty-five hours, at a blended rate of $500 to complete the final approval process.  *See* Summary of Time and Costs at 2.  The court approves this blended rate.

With the hourly rate adjustments outlined above, the resulting lodestar amount based on the reasonable number of hours expended and the reasonable rates of class counsel is $590,127.50.[3]  Comparing the lodestar against the requested fee amount of $1,250,000 would

---

[3]

| Name | Rate | Hours | Total |
|---|---|---|---|
| Cohelan | $ 695.00 | 22.3 | $ 15,498.50 |
| I Khoury | $ 695.00 | 44.2 | $ 30,719.00 |
| Singer | $ 695.00 | 96 | $ 66,720.00 |
| D. Khoury | $ 695.00 | 97.6 | $ 67,832.00 |
| Geraci | $ 695.00 | 307.5 | $ 213,712.50 |
| Wordern | $ 200.00 | 16.7 | $ 3,340.00 |
| Atlas | $ 170.00 | 28 | $ 4,760.00 |
| Sanders | $ 660.00 | 90.8 | $ 59,928.00 |
| Starr | $ 650.00 | 85.86 | $ 55,809.00 |
| D. Gaines | $ 650.00 | 4.1 | $ 2,665.00 |
| E. Gaines | $ 550.00 | 12 | $ 6,600.00 |
| Katofsky | $ 660.00 | 22.6 | $ 14,916.00 |
| Ardestani | $ 550.00 | 2.3 | $ 1,265.00 |
| Schimmel | $ 660.00 | 9.7 | $ 6,402.00 |
| Carver | $ 625.00 | 42.2 | $ 26,375.00 |
| Lund | $ 325.00 | 1.9 | $ 617.50 |
| Paralegals | $ 120.00 | 3.9 | $ 468.00 |
| Final Approval | $ 500.00 | 25 | $ 12,500.00 |
|  |  |  | $ 590,127.50 |

result in a multiplier of 2.12. The Ninth Circuit has accepted multipliers within this range. *See, e.g., Vizcaino*, 290 F.3d at 1050–51, 1051 n.6 ("[M]ultipl[iers] ranging from one to four are frequently awarded in common fund cases when the lodestar method is applied" (internal quotation marks and citation omitted)). The court assesses the *Bluetooth* factors to determine whether the lodestar multiplier is justified in this case. *In re Bluetooth*, 654 F.3d at 941 (citing relevant factors as "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment") (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026, *overruled on other grounds by Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)).

b) *Bluetooth* Factors

Counsel represented the class through discovery, motions, and negotiations. The quality of representation in these litigation matters suggests a positive multiplier to the lodestar amount is acceptable. *See In re Bluetooth*, 654 F.3d at 942.

The foremost consideration is the benefit obtained for the class. *Id*. Counsel successfully negotiated a maximum settlement amount of $3,750,000. With approval of the proposed deductions, class members will receive an average estimated payment of $537.21, with a highest payment of $4,484.55. Suppl. Cofinco Decl. ¶ 10. The reaction to the settlement has been overwhelmingly positive with only two members opting out. This factor supports applying a positive multiplier. *See Emmons v. Quest Diagnostics Clinical Lab'ys, Inc.*, No. 13-00474, 2017 WL 749018, at *7 (E.D. Cal. Feb. 27, 2017).

Nothing in the record or the pending motion suggests the claims here were novel or complicated for counsel; thus, this third *Bluetooth* factor does not support a positive multiplier.

Counsel undertook the litigation on a contingent fee basis, Mem. Att'ys Fees at 11, taking on the significant risk they could litigate this case for a prolonged period and never be paid. This factor justifies a positive multiplier. *See In re Washington Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("It is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases.").

In keeping with the district court's "special duty to protect the interests of the class" the court has "closely scrutinized" the proposed attorney's fees and found the factors justify a positive lodestar multiplier. *Staton v. Boeing Co.*, 327 F.3d 938, 970 (9th Cir. 2003). However, the court finds the resulting multiplier of 2.12 to be too high given the totality of the record here. *See Rodriguez v. Kraft Foods Grp., Inc.*, No. 1:14-1137, 2016 WL 5844378, at *13 (E.D. Cal. Oct. 5, 2016) (finding a "2.39 multiplier to be too high" and applying a 1.84 multiplier); *compare In re TFT-LCD (Flat Panel) Antitrust Litigation*, No. 07-1827-SI, 2012 WL 13209696, at *8 (N.D. Cal. Nov. 9, 2012), *supplemented sub nom. In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-1827-SI, 2012 WL 12918720 (N.D. Cal. Dec. 18, 2012) ("Case law supports the reasonableness of a multiplier in the 2.4-2.6 range" in case with large, $1 billion settlement fund). While class counsel took this case on a contingency basis and won a favorable outcome for the class, there is little to suggest the victory was particularly hard fought in comparison to other class settlements. "[T]here is no evidence presented that the discovery was particularly onerous, and . . . the only pre-trial motions that were required were the motions for preliminary approval and final approval of the class settlement." *Rodriguez*, 2016 WL 5844378, at *14. Class counsel originally requested a lower multiplier of 1.97, Mem. Att'ys Fees at 14–15, and the court finds this multiplier reasonable and applies it to the fees as adjusted by the court above. Specifically, applying the 1.97 multiplier to the $590,127.50 lodestar figure, reasonable attorneys' fees equal $1,162,551.18. *See Rodriguez*, 2016 WL 5844378, at *14.

Accordingly, the court approves attorneys' fees in the amount of $1,162,551.18.

### 3.   Request for Costs

The court must also determine whether the proposed award of costs and expenses is appropriate. Fed. R. Civ. P. 23(h). "[I]n evaluating the reasonableness of costs, the judge has to step in and play surrogate client." *Ross v. Bar None Enters., Inc.*, No. 13-234, 2015 WL 1046117, at *11 (E.D. Cal. Mar. 10, 2015) (internal quotation marks, citation omitted). "In keeping with this role, the court must examine prevailing rates and practices in the legal marketplace to assess the reasonableness of the costs sought." *Id*. (internal quotation marks, citation omitted). Class counsel seeks $42,493.32 in litigation costs and $33,500 in settlement

administration fees to be reimbursed from the common fund. Mem. Att'ys Fees at 17; Suppl. Cofinco Decl. ¶ 9. Review of the itemized lists provided by counsel reveals they seek reimbursement for cost of filing fees, postage, travel, mediation and claims administrator fees. Litig. Costs, Singer Decl. Ex. 5, ECF No. 75-3; Sanders Decl. Ex 2, ECF No. 75-4; Starr Decl. ¶ 16, ECF No. 75-5; Gaines Decl. Ex. C, ECF No. 75-6; Carver Decl. Ex. B, ECF No. 75-7. These costs are reasonable and are the type courts routinely approve for reimbursement. *See Fontes v. Heritage Operating, L.P.*, No. 14-1413, 2016 WL 1465158, at *6 (S.D. Cal. Apr. 14, 2016) (approving costs for "court filing fees, research costs, mediation-related expenses, attorney services costs, and travel expenses").

### 4. The Proposed PAGA Allocation is Reasonable and Should be Approved

In its previous order, the court required plaintiffs explain the "justification for a PAGA penalty in such small proportion to the maximum exposure at trial . . . [and] how the proposed settlement serves the purposes of PAGA." Prev. Order at 17. "[W]here plaintiffs bring a PAGA representative claim, they take on a special responsibility to their fellow aggrieved workers who are effectively bound by any judgment." *O'Connor v. Uber Technologies, Inc.*, 201 F. Supp. 3d 1110, 1133 (N.D. Cal. 2016) (citing *Iskanian v. CLS Transp. Los Angeles, LLC*, 59 Cal. 4th 348, 381 (2014)). "An employee bringing a PAGA action does so as the proxy or agent of the state's labor law enforcement agencies, . . .who are the real parties in interest." *Sakkab v. Luxottica Retail N. Am. Inc.*, 803 F.3d 425, 435 (9th Cir. 2015) (internal citations omitted). Any PAGA judgment binds not only members of the class, but similarly situated workers who opt out of the class and the state's labor law enforcement agencies. *Arias v. Superior Court*, 46 Cal. 4th 969, 986 (2014). A court analyzing the compromise of a PAGA claim must consider whether the settlement is "'fundamentally fair, reasonable, and adequate' with reference to the public policies underlying the PAGA." *O'Connor*, 201 F. Supp. 3d at 1133. (citation omitted). However, neither the PAGA nor the California state court has established any specific standard for evaluating PAGA settlements. *See Ramirez v. Benito Valley Farms, LLC*, No. 16-04708, 2017 WL 3670794, at *3 (N.D. Cal. Aug. 25, 2017).

The court, as it has done in the past, refers to the factors in *Hanlon*, 150 F.3d at 1026, to evaluate the PAGA settlement. *Pena v. Taylor Farms Pac., Inc.,* No. 13-01282, 2021 WL 916257, at *7–8 (E.D. Cal. Mar. 10, 2021); *Decker v. AllStates Consulting Servs., LLC*, No. 18-03216, 2020 WL 7769842, at *2 (E.D. Cal. Dec. 30, 2020). The *Hanlon* factors, designed for use in evaluating class action settlements, include (1) the strength of a plaintiff's case; (2) the risk, expense, complexity and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed; (6) the expertise and views of counsel; (7) the presence of government participation; and (8) the reaction of class members to the proposed settlement. *See Hanlon*, 150 F.3d at 1026.

The settlement allocates $50,000 to PAGA civil penalties, a $37,500 payment to the California Labor and Workforce Development Agency (the LWDA). The LWDA has not objected to the settlement. Mem. Final Approval at 6. The proposed PAGA compromise represents 1.3 percent of the maximum settlement amount, but only roughly 0.158 percent of the maximum recoverable PAGA penalties. Prev. Order at 17. Single digit PAGA allocations have been approved in this district, *id.* (citing *Ahmed v. Beverly Health and Rehabilitation Servs., Inc.*, No. 2:16-1747, 2018 WL 746393, at *10 (E. D. Cal. Feb. 6, 2018) (approving 1 percent of gross settlement as PAGA settlement and identifying it as within the range approved by other courts) (collecting cases)); *Wise v. Ulta Salon, Cosmetics & Fragrance, Inc.*, No. 17-853, 2020 WL 1492672, at *5 (E.D. Cal. Mar. 27, 2020) (approving PAGA penalty equaling approximately 2 percent of the gross settlement); *Garcia v. Gordon Trucking, Inc.*, No. 10-324, 2012 WL 5364575, at *7 (E.D. Cal. Oct. 31, 2012) (approving PAGA penalty approximately 0.27 percent the gross settlement). Plaintiffs have provided further justification for the PAGA deductions based on the risk further litigation would present. Mem. Final Approval at 6–9. On balance, the court finds the *Harlan* factors favor approval of the settlement agreement. The penalties are based on four wage violations and the class counsel identified "great risk" the claims would not be successful if the case went to trial. Mem. Final Approval at 8. As the court has already noted, class counsel has extensive experience and obtained an adequate maximum settlement amount following discovery. Therefore, the court approves the PAGA penalties payment.

## IV.     CONCLUSION

For the reasons set forth above, plaintiffs' motion for attorneys' fees, costs and expenses and a class representative enhancement payment, ECF No. 75, and motion for final approval of the class settlement, ECF No. 76, both are **granted except that** the court **awards attorneys' fees in the amount of $1,162,551.18, with any funds that otherwise would have been paid to class counsel distributed instead to the class.**

Without affecting the finality of this order, the court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation and enforcement of this order and the Settlement until all settlement funds are distributed.  The parties **shall notify the court within seven days of distribution of the settlement fund becoming final.**

This order resolves ECF Nos. 75, 76, 81.

IT IS SO ORDERED.

DATED:  November 4, 2021.

_____
CHIEF UNITED STATES DISTRICT JUDGE